## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03161-SKC

DENNIS CLIFTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS, REGINALD KAPTEYN, ALICIA SYRETT, GREGORY GOULD, CHUCK ENCE, CARL AURE, KEVIN MANION, ED BRENNAN, AMY KUZDOWICZ, GREG FEA, and CRAIG THIBODEAU,

Defendants.

_____

Civil Action No. 1:23-cv-00127-RMR-STV

DANIEL TAYLOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS, REGINALD KAPTEYN, ALICIA SYRETT, GREGORY GOULD, CHUCK ENCE, CARL AURE, KEVIN MANION, ED BRENNAN, AMY KUZDOWICZ, GREG FEA, and CRAIG THIBODEAU,

Defendants.

_____

### MOTION OF DAMIAN BETEBENNER AND CIGDEM BETEBENNER FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

_____

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 2

FACTUAL BACKGROUND ..................................................................................... 3

ARGUMENT .............................................................................................................. 6

I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..................... 6

II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS ........ 8

        A.      The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff ....... 8

        B.      Under The PSLRA, Movants Should Be Appointed Lead Plaintiffs ..................... 9

                1.      Movants Filed a Timely Motion ................................................................. 9

                2.      Movants Have the Largest Financial Interest in the Relief Sought by
                        the Class ................................................................................................. 10

                3.      Movants Meet Rule 23's Typicality and Adequacy Requirements .......... 11

III.    MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
        SHOULD BE APPROVED ............................................................................................ 13

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Crocs, Inc. Sec. Litig.*,
    No. 07-cv-02351-REB-KLM, 2008 WL 4298316 (D. Colo. Sept. 17, 2008) .........8, 10, 11, 12

*Faris v. Longtop Fin. Techs. Ltd.*,
    No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ....................................9

*In re GE Sec. Litig.*,
    No. 09 Civ. 1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ....................................7

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004) .....................................11

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................7

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    No. 09-cv-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009) ...........................8

*Medina v. Clovis Oncology, Inc.*,
    No. 15-cv-2546-RM-MEH, 2016 WL 660133 (D. Colo. Feb. 18, 2016) .................................7

*Mishkin v. Zynex, Inc.*,
    No. 09-cv-00780-REB-KLM, 2010 WL 749864 (D. Colo. Mar. 3, 2010).....................8, 9, 12

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
    No. 19-CV-124-WJM-SKC, 2019 WL 3714798 (D. Colo. Aug. 7, 2019)...............................7

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............................10

*Query v. Maxim Integrated Prods., Inc.*,
    558 F. Supp. 2d 969 (N.D. Cal. 2008) .................................................................................10

*Reitan v. China Mobile Games & Entm't Grp.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014 ....................................................................................13

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
    192 F.R.D. 656 (D. Colo. 2000) .....................................................................................10, 11

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)................................10

*Takara Trust v. Molex, Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005)........................................................................................10, 11

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ...............................................................................................14

**Statutes**

15 U.S.C. § 78u-4(a) ....................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 6(a)(1)(C) ......................................................................................................9

Fed. R. Civ. P. 23(a) ......................................................................................................11, 12

Fed. R. Civ. P. 42(a) ........................................................................................................2, 7

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
    Law360 (July 16, 2020) .......................................................................................................16

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
    Bloomberg Law (July 30, 2020) ..........................................................................................16

Damian Betebenner and Cigdem Betebenner (the "Movants") hereby move this Honorable Court for an order: (1) consolidating the above-captioned actions ("Actions");[1] pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), for the entry of an order appointing Movants as Lead Plaintiffs for the Action (defined below) and approving Movants' selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

Movants have timely filed their motion and are the "most adequate plaintiff" under the rules of the PSLRA. Moreover, Movants meet the requirements of Rule 23 of the Federal Rules of Civil Procedure for the purposes of this motion as its claims are typical of the other purported class members' claims and it will fairly and adequately represent the putative class. Movants also seek the Court's approval of their selection of the Faruqi Firm, a law firm with substantial experience in

---

[1]    The following two Actions are pending before this Court: (1) *Clifton v. Willis, et al.*, No. 1:22-cv-03161-SKC ("*Clifton*"), which was filed on December 7, 2022; and (2) *Taylor v. Willis, et al.*, No. 1:23-cv-00127-RMR-STV ("*Taylor*"), which was filed on January 17, 2023. The *Clifton* Action is brought on behalf of "all persons other than defendants who purchased the securities of NewAge for the time period January 18, 2018 through and including October 18, 2022 . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and pursue remedies under the Securities Exchange Act of 1934[.]" *Clifton*, Pl.'s Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Clifton* Compl."). The *Taylor* Action is brought on behalf of "all persons other than defendants who purchased the securities of NewAge for the time period January 18, 2018 through and including October 18, 2022 . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and pursue remedies under the Securities Exchange Act of 1934[.]" *Taylor*, Pl.'s Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Taylor* Compl.").

[2]    Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. in Support of Movants' Motion for: (1) Consolidation of Related Actions; (2) Appointment as Lead Plaintiffs; and (3) Approval of Lead Plaintiffs' Selection of Lead Counsel filed herewith.

1

prosecuting securities fraud class actions, as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## PRELIMINARY STATEMENT

The Actions presently pending before this Court are brought on behalf of those who purchased NewAge, Inc. ("NewAge" or the "Company") securities between January 18, 2018 and October 18, 2022, both dates inclusive (the "Class Period"), which seek to recover damages caused by Defendants'[3] violations of the Exchange Act.

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies

---

[3]    "Defendants" are Brent Willis, Fred Cooper, Tim Haas, Reginald Kapteyn, Alicia Syrett, Gregory Gould, Chuck Ence, Carl Aure, Kevin Manion, Ed Brennan, Amy Kuzdowicz, Greg Fea, and Craig Thibodeau.

2

Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $494,549.53, Movants, to the best of counsel's knowledge, have the largest financial interest in the litigation of any movant. Movants also satisfy Rule 23's typicality and adequacy requirements. Movants' claims are typical of the Class's claims because they suffered losses on their NewAge investment as a result of Defendants' false and misleading statements. Further, Movants have no conflict with the Class and will adequately protect the Class's interests given their significant stake in the litigation and their conduct to date in prosecuting the litigation, including their submission of the requisite certifications and selection of experienced class counsel. Accordingly, Movants are the presumptive Lead Plaintiffs.

Lastly, if appointed Lead Plaintiffs, Movants are entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movants' motion should be granted in its entirety.

## FACTUAL BACKGROUND[4]

Non-party NewAge Inc. is a Delaware corporation with its principal executive offices located in Midvale, UT. ¶ 25. The company was previously incorporated in Washington State, and

---

[4]    This information comes from the *Clifton* Complaint, but the *Taylor* Complaint contains substantially similar information.

3

its principal place of business was in Denver, Colorado. *Id*. The company was known as New Age

Beverages Corporation until July 29, 2020, and from then on as NewAge, Inc. *Id*. NewAge puports

to be an "organic and healthy products company intending to become the world's leading social

selling and distribution company." ¶ 26.

On January 18, 2018, the Defendants issued a press release announcing that NewAge had a

"new distribution agreement" with the U.S. Military. ¶ 34. The release also claimed that "[t]he new

distribution agreement is expected to have a material impact on the financial results of NewAge."

*Id*.

On February 1, 2018, Defendants issued a press release announcing that NewAge had

"begun shipments of its Coco-Libre and Bucha Live Kombucha brands in expanded distribution

throughout Loblaws and Sobeys, the largest retailers across Canada" and "is now expanding to all

banners within Loblaws and expanding throughout both Sobeys and Safeway." ¶ 38. The

Defendants followed up on these statements on February 13, 2018, announcing that its Bucha Live

Kombucha brand had "recently expanded to all major retailers throughout Canada . . . ." ¶ 39.

During a September 5, 2018 investor presentation, Defendant Willis claimed that NewAge

had been testing a CBD beverage over the last six months. ¶ 48. Then, on September 19, 2018,

Defendants issued a press release stating that NewAge had tested and developed a portfolio of

CBD-infused beverages it planned to unveil at the National Association of Convenience Stores

("NACS") trade show in Las Vegas, Nevada in October 2018. ¶ 49.

On April 19, 2019, Defendants issued a press release announcing the "first national

distribution" of its products via an expanded distribution of its Marley beverage line with Walmart;

that the Company had "now begun shipments to Walmart distribution centers across the United

States"; and that each of NewAge's three Marley Mate flavors would be available at all Walmart stores in the beginning of April 2019. ¶ 66.

In December 2020, NewAge completed its acquisition of Arrix. ¶ 70. The Company quickly developed concerns that Ariix had violated the Foreign Corrupt Practices Act ("FCPA") and in August 2021, made a voluntary self-disclosure of suspected FCPA issues to the U.S. Department of Justice and the SEC. *Id*. Despite this, throughout the Class Period, NewAge affirmed that it had adequate internal controls, or alternatively, disclosed weaknesses in internal controls that were wholly unrelated to the false statements at issue in this matter. ¶ 71.

The complaints in the Actions allege that defendants knowingly and/or recklessly made false and/or misleading statements and/or failed to disclose that: (1) the Company and Defendants had no relationship with the military or FamilyMart; (2) the Company and Defendants overstated business agreements they did not have; (3) the Company and Defendants never produced or sold a proprietary CBD beverage; (4) the Company lacked adequate internal controls; (5) as a result the Company had a heightened risk of regulatory scrutiny and ultimately subject to an SEC investigation and action; and (6) as a result of the foregoing, Defendants' statements about its business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times. ¶ 108.

The truth was revealed over time beginning on January 10, 2022, when NewAge filed an 8-K announcing that the Board and Defendant Willis agreed that he would "resign as [CEO], Director, and employee of the Company, effective immediately." ¶ 110. On this news, the Company's stock price fell 6% on each of the following trading days, January 11 and 12, 2022. *Id*. On May 17, 2022, the Company announced that it had received a late notice from Nasdaq regarding

5

the filing of its Form 10-Q. ¶ 111. The next day, the Company's stock price fell 8%. On June 8,

2022, the Company announced that it was undertaking a review of "strategic alternatives" including

"available financing alternatives, a potential financial restructuring, merger, sale or other strategic

transaction." ¶ 112. The next day, the Company's stock price fell 12%, continuing to fall over the

next three days. *Id*. On August 30, 2022, NewAge announced that it was filing for Chapter 11

bankruptcy relief. ¶ 113. The next day, the Company's stock price fell 39%, falling another 27% the

next trading day. *Id*. On September 2, 2022, NewAge filed an 8-K announcing that it had received

written notice from The Nasdaq Stock Market LLC ("Nasdaq") that, as aresult of its filing for

protection under Chapter 11, Nasdaq had determined that NewAge securities would be delisted. ¶

114. On this news, the Company's share price fell 9%.

Finally, on October 19, 2022, the SEC announced that it had instituted cease-and-desist

proceeding against NewAge. ¶ 116. The next day, the Company's stock price plummeted 93%. *Id*.

Through the Actions, Movants seeks to recover for themselves and absent Class members

the substantial losses that were suffered as a result of Defendants' false and misleading statements.

**ARGUMENT**

**I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting

substantially the same claim or claims arising under this chapter has been filed," the court shall

not determine the most adequate plaintiff "until after the decision on the motion to consolidate is

rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision

regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as

practicable after [the consolidation] decision is rendered[.]" *Id.*).

6

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-CV-124-WJM-SKC, 2019 WL 3714798, at *2 (D. Colo. Aug. 7, 2019) (consolidating securities class actions); *Medina v. Clovis Oncology, Inc.*, No. 15-cv-2546-RM-MEH, 2016 WL 660133, at *2 (D. Colo. Feb. 18, 2016) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig*., No. 09 Civ. 1951(DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements that artificially inflated the price of NewAge securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct." (internal quotation marks omitted)).

7

## II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS

### A.    The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a Lead Plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), (3).  It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of publication, for appointment as Lead Plaintiff. *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *1 (D. Colo. May 4, 2009) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as Lead Plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members[.]"  Thus, step two involves establishing a rebuttable presumption that the "most adequate plaintiff" is the person who: (1) has filed the complaint or made a timely motion for lead plaintiff; (2) possesses the largest financial interest in the litigation; and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2010 WL 749864, at *1-2 (D. Colo. Mar. 3, 2010) (describing the PSLRA's three-step competitive process for determining the "most adequate plaintiff"); *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-REB-KLM, 2008 WL 4298316, at *1-2 (D. Colo. Sept. 17, 2008) (same).

Once it is determined who among the movants seeking appointment as Lead Plaintiff is the presumptive Lead Plaintiff, the presumption can be rebutted only upon proof by a class member

8

that the presumptive Lead Plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Mishkin*, 2010 WL 749864, at *2.

### B.    Under The PSLRA, Movants Should Be Appointed Lead Plaintiffs

As discussed below, Movants should be appointed Lead Plaintiffs because all of the PSLRA's procedural hurdles have been satisfied, Movants hold the largest financial interest of any movant, and they otherwise satisfy Rule 23's typicality and adequacy requirements.

#### 1.    Movants Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint was required to publish notice of the complaint within twenty (20) days of its filing.  Dennis Clifton filed the first action on December 7, 2022, and his counsel published notice of the lead plaintiff deadline via *Business Wire* that same day.  *See* Ex. A; *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (finding publication in Business Wire sufficient to satisfy the PSLRA's notice requirement).  Consequently, any member of the proposed Class was required to seek to be appointed Lead Plaintiff within 60 days after publication of the notice (*i.e.*, on or before February 6, 2023).[5]  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Thus, Movants' motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movants timely signed and submitted the requisite certifications, identifying all of their relevant transactions in NewAge

---

[5]    Given that the 60th day fell on a Sunday, February 5, 2023, Fed. R. Civ. P. 6(a)(1)(C) extends the deadline to Monday, February 6, 2023.

securities during the Class Period, and detailing their suitability to serve as Lead Plaintiffs in this case.  *See* Ex. B.  Therefore, the PSLRA's procedural requirements have been met.

### 2.    Movants Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit and nationwide typically look to four factors in the inquiry: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *See In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 660-61 (D. Colo. 2000); *Query v. Maxim Integrated Prods., Inc.*, 558 F. Supp. 2d 969, 973 (N.D. Cal. 2008); *see also In re Crocs, Inc.*, 2008 WL 4298316, at *2 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  Courts have placed the most emphasis on the last of the four factors: the approximate losses suffered by the movant.  *See Pace v. Quintanilla*, No. SACV 14-2067-DOC (RNBx), 2014 WL 4180766, at *2 (C.D. Cal. Aug. 19, 2014) ("The PSLRA does not specify how to calculate the 'largest financial interest,' but the approximate losses suffered are the most determinative."); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) ("[C]ourts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss."); *Takara Trust v. Molex,*

*Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead

plaintiff has suffered the greatest total losses.").

Overall, during the Class Period, Movants acquired 71,000 net shares and 71,000 total

shares of NewAge common stock, expended $494,646.25 in net funds, and suffered losses of

$494,549.53, when calculated using a last in, first out methodology.  *See* Ex. B.  Movants are

unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.        Movants Meet Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that in addition to possessing the largest financial interest in the

outcome of the litigation, the Lead Plaintiff must satisfy the requirements of Federal Rule of Civil

Procedure 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  When assessing a potential Lead

Plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *See, In re Crocs,

Inc.*, 2008 WL 4298316, at *2 ("As for the requirement that the lead plaintiff otherwise satisfy the

requirements of Rule 23, only two of the four requirements of Rule 23(a)—typicality and

adequacy—impact the analysis of the lead plaintiff issue.").

The "typicality requirement" is satisfied when "the claims or defenses of the representative

parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  Typicality

exists where the "injury and the conduct are sufficiently similar."  *In re Crocs, Inc.*, 2008 WL

4298316, at *2.  Although different plaintiffs may invoke different factual circumstances, typicality

is present "so long as the claims of the class representative and class members are based upon the

same legal or remedial theory."  *Id*; *In re Heritage Bond Litig*., No. 02-ML-1475 DT, 2004 WL

1638201, at *7 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named

11

plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

Movants' claims are clearly typical of the Class's claims. Movants acquired NewAge securities during the Class Period, suffered damages as a result of the false and misleading statements made by Defendants, and possesses claims against Defendants under the federal securities laws. Because the factual and legal bases of Movants' claims are similar to those of the Class's claims, they necessarily satisfy the typicality requirements. *See In re Ribozyme*, 192 F.R.D. at 658 (finding plaintiff group typical where it: (1) purchased defendant stock during the relevant time period; (2) at prices alleged to be artificially inflated by the false and misleading statements issued by defendants; (3) causing damages).

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement of adequacy is satisfied on proof of (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Crocs, Inc.*, 2008 WL 4298316, at *2.

As evidenced by the representations in Movants' certifications, their interests are perfectly aligned with—and by no means antagonistic to—the interests of the Class. *See Mishkin*, 2010 WL 749864, at *2 (movants' certifications evidenced adequacy to serve as lead plaintiff).

Further, Damian Betebenner and Cigdem Betebenner, a married couple, have submitted with their joint declaration additional information about themselves, their educational and work background and experience investing, clearly demonstrating their adequacy to represent class

members. *See* Exhibit C. Mr. Betebenner has two doctoral degrees and has been investing in the

stock market since approximately 1995. *Id.* ¶¶ 4, 6. Mrs. Betebenner has an M.A. in psychology, is

a licensed mental health counselor and psychotherapist, and has been investing in the stock market

since approximately 2012. *Id*. ¶¶ 9-11.

Movants have also selected and retained highly competent counsel to litigate the claims on

behalf of himself and the Class.  As explained below in Section III, the Faruqi Firm is highly

regarded for their experience, knowledge, and ability to conduct complex securities class action

litigation.  *See* Ex. D.  Consequently, Movants are more than adequate to represent the Class and

has every incentive to maximize the Class's recovery.

In light of the foregoing, Movants respectfully submits that they are the presumptive Lead

Plaintiffs and should be appointed Lead Plaintiffs for the Action.

III.    **MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
        SHOULD BE APPROVED**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and

retain Lead Counsel for the Class, subject to the Court's approval. Movants have selected the

Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-

owned law firm, and, as reflected in the firm's resume, possesses extensive experience

successfully litigating complex class actions on behalf of plaintiffs, including securities class

actions. *See* Ex. D; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390,

401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi &

Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's

resume indicates that it has litigated more than ten prominent securities class actions since its

founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For

example, the Faruqi Firm has previously obtained significant recoveries for injured investors.

*See, e.g., Rudani v. Ideanomics, Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole

lead counsel, the firm obtained preliminary approval of $5 million settlement); *In re: Revolution*

*Lighting Technologies, Inc. Securities Litigation*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as

sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v.*

*Sonim Techs., Inc*., No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm

obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW

(N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million

settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018)

(appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel

state action, obtained final approval of a $13 million global settlement); *In re Geron Corp., Sec.*

*Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm

obtained final approval of a $6.25 million settlement); *McIntyre v. Chelsea Therapeutics Int'l,*

*LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi

Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see*

*Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval

of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP)

(S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement);

*In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm,

as sole lead counsel for the class, secured a $6.5 million settlement); *In re United Health Grp.*

*Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-

lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and

negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency).; *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members) and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (appointed as sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[6] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its

---

[6]     *See* Ex. E (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business) (renewal pending).

excellence. Not only does the firm have the experience and expertise necessary to obtain

significant successes for its clients, it has a demonstrated commitment to diversity and inclusion

that clients and judges increasingly seek from the bar.[7] Class members in securities class actions

have diverse backgrounds, and that diversity should be reflected in class counsel. Currently,

approximately 40% of the firm's partnership positions are held by women and minorities, and

the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com

/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal

professionals and strongly believes that its clients are better served because of it.

**CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court consolidate the

related actions; appoint them as Lead Plaintiffs for the Action; approve their selection of the Faruqi

Firm as Lead Counsel for the Action; and grant such other relief as the Court may deem just and

proper.

Dated:  February 6, 2023                      Respectfully submitted,

By: s/ James M. Wilson, Jr.


James M. Wilson, Jr.
Robert W. Killorin (application for admission
forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

---

[7]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

E-mail: jwilson@faruqilaw.com
E-mail: rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiffs Damian
Betebenner and Cigdem Betebenner and [Proposed] Lead
Counsel and Local Counsel for the Class*

17

## CERTIFICATE OF SERVICE

I, James M. Wilson, Jr., hereby certify that on February 6, 2023, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.
