**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

**Civil Action No**.: 1:22-cv-03161-SKC

DENNIS CLIFTON, Individually and on Behalf
of All Others Similarly Situated,

                                   Plaintiff,

                   v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

                                   Defendants.

---

**Civil Action No**.: 1:23-cv-00127-RMR-STV


DANIEL TAYLOR, Individually and on Behalf
of All Others Similarly Situated,

                                   Plaintiff,

                   v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

                                   Defendants.

---

**NOTICE OF MOTION AND MOTION OF LUKE JOSEPH WODIUK FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .......................................................................................1

CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a) AND § F.1 OF THIS COURT'S
PRACTICE STANDARDS FOR CIVIL CASES ............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................2

PRELIMINARY STATEMENT .....................................................................................................2

STATEMENT OF FACTS ..............................................................................................................3

ARGUMENT...................................................................................................................................7

      A.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
            PURPOSES...................................................................................................................7

      B.     WODIUK SHOULD BE APPOINTED LEAD PLAINTIFF.................................8

            1.     Wodiuk Is Willing to Serve as Class Representative...................................9

            2.     Wodiuk Has the "Largest Financial Interest" ...........................................10

            3.     Wodiuk Otherwise Satisfies the Requirements of Rule 23 of the Federal
                 Rules of Civil Procedure..........................................................................11

            4.     Wodiuk Will Fairly and Adequately Represent the Interests of the Class
                 and Is Not Subject to Unique Defenses ....................................................13

      C.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
            APPROVED ................................................................................................14

CONCLUSION..............................................................................................................................15

CERTIFICATE OF SERVICE .....................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ...............................................................................8

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)....................................................................................12

*Cooke v. Equal Energy Ltd.*,
No. CIV-14-0047-C, 2014 WL 3819159 (W.D. Okla. May 8, 2014) .......................7

*Darwin v. Taylor*,
No. 12-CV-01038-CMA-CBS, 2012 WL 5250400 (D. Colo. Oct. 23, 2012)........................10

*Friedman v. Quest Energy Ptnrs. LP*,
261 F.R.D. 607 (W.D. Okla. 2009)..........................................................................10

*In re Comverse Tech., Inc., Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ........................10

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ................................7, 8

*In re NPS Pharm., Inc. Sec. Litig.*,
No. 2:06-CV-00570-PGCPMW, 2006 WL 6627948 (D. Utah Nov. 17, 2006) ................10, 11

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................10

*Lane v. Page*,
250 F.R.D. 634 (D.N.M. 2007).........................................................................11, 14

*Lax v. First Merch. Acceptance Corp.*,
Nos. 97 C 2715 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ...................................10

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993).......................................................................................7

*Meyer v. Paradigm Med. Indus.*,
225 F.R.D. 678 (D. Utah 2004) .........................................................................12, 13

ii

*Scuderi v. Mammoth Energy Servs., Inc.*,
    No. CIV-19-522-SLP, 2019 WL 4397340 (W.D. Okla. Sept. 13, 2019) ..................................7

**Statutes**

15 U.S.C. § 78u–4........................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

**Rules**

Fed. R. Civ. P. 23............................................................................................................ *passim*

Fed. R. of Civ. P. 42.............................................................................................................1, 2

## NOTICE OF MOTION AND MOTION

**TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Luke Joseph Wodiuk ("Wodiuk"), by and through his counsel, will and does hereby move this Court, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42"), and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u–4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Wodiuk as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons other than the above-captioned defendants ("Defendants") who purchased the securities of NewAge, Inc. ("NewAge" or the "Company") for the time period January 18, 2018 through and including October 18, 2022 (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.  This motion is supported by the memorandum of points and authorities submitted herewith, the Declaration of Jeremy A. Lieberman ("Lieberman Decl."), and all exhibits thereto.

### CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a) AND § F.1 OF THIS COURT'S PRACTICE STANDARDS FOR CIVIL CASES

Pursuant to D.C.COLO.LCivR 7.1(a) and § F.1 of this Court's Practice Standards for Civil Cases, counsel for Wodiuk state that they were not able to confer with counsel for the opposing movants prior to filing the instant motion.  The statutory framework of the PSLRA requires all motions seeking Lead Plaintiff appointment to be filed within 60 days of the publication of the notice of pendency of the action.  *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II).  No such motions were filed meaningfully in advance of Wodiuk's motion, and it was not possible to

1

confer with counsel for the other movants to determine whether the instant motion would be opposed or to attempt to resolve the issues raised by the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

The complaints in the Related Actions allege that Defendants defrauded investors in violation of the Exchange Act.  NewAge investors, including Wodiuk, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of NewAge securities to fall sharply, damaging Wodiuk and other NewAge investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  *See* Fed. R. Civ. P. 42(a)(2).  Here, the Related Actions are putative class actions alleging violations of the Exchange Act by the same Defendants arising from the same alleged wrongful misconduct.  As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  During the Class Period, Wodiuk purchased 305,665.38 NewAge shares, expended $455,282 on these purchases, retained all 305,665.38 of his NewAge shares, and, as a result of the disclosures of the fraud, incurred losses of approximately $454,865.  *See* Lieberman Decl., Exhibit ("Ex.") A.  Accordingly, Wodiuk believes that he has the largest financial interest in the relief sought in the Related Actions.

Beyond his considerable financial interest, Wodiuk also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Wodiuk has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Wodiuk respectfully requests that the Court enter an order consolidating the Related Actions, appointing him as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

### STATEMENT OF FACTS

Relevant non-party party NewAge purports to produce and sell various beverages and other health products. ECF No. 1 ¶ 2. NewAge wholly owns subsidiaries that sell products under a variety of brand names. *Id.*

During the Class Period, NewAge's Chief Executive Officer ("CEO") and various Chief Financial Officers misrepresented to investors the Company's business relationships, product development, business prospects, adequacy of internal controls, and concealed an internal investigation and subsequent disclosure to the Department of Justice and the U.S. Securities and Exchange Commission ("SEC"). *Id.* ¶ 3.

As a result of this adverse information, the plaintiffs in the Related Actions and the Class were damaged. *Id.* ¶ 4.

3

Specifically, throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company and Defendants had no relationship with the military or FamilyMart; (ii) the Company and Defendants overstated the business agreements that they did have; (iii) the Company and Defendants never produced or sold a proprietary CBD beverage; (iv) the Company lacked adequate internal controls; (v) as a result, the Company had a heightened risk of regularly scrutiny and was ultimately subject to an SEC investigation and action; and (vi) as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id.* ¶ 108.

Over time, despite NewAge's failure to disclose the extent of the fraud committed principally by Defendant Brent Willis ("Willis"), the truth regarding the troubled state of the company has emerged publicly. *Id.* ¶ 109.

On January 10, 2022, NewAge filed an 8-K announcing that the Board and Defendant Willis agreed that he would "resign as [CEO], Director, and employee of the Company, effective immediately. The Company and Mr. Willis will determine the terms of his departure at a future date. [. . .] Ed Brennan will provide additional guidance and direction to the senior management team [. . .]." *Id.* ¶ 110.  In response, the stock went down 6% on each of the following trading days, from an opening price of $0.98 to a closing price of $0.9251 on January 11 and from an opening price of $0.935 to a closing price of $0.88 on January 12. *Id.*

On May 17, 2022, the Company announced after trading hours had concluded that it had received a late notice from The Nasdaq Stock Market LLC ("Nasdaq") regarding the filing

4

of its Form 10-Q. *Id.* ¶ 111. The next day, the stock went down by 8%, from an opening price of $0.391 per share to $0.3591 per share. *Id.*

On June 8, 2022, after trading had concluded for the day, the Company announced that it was undertaking a review of "strategic alternatives," including "available financing alternatives, a potential financial restructuring, merger, sale or other strategic transaction." *Id.* ¶ 112. The next day, NewAge's share price went down 12%, from $0.42 per share to $0.3703. *Id.* Following that, the Company's share price closed down 11% (the price per share dropped from $0.3605 to $0.3201 on the day), 5% (the price per share dropped from ($0.3112 per share to $0.2902 on the day), and 3% (the price per share dropped from $0.298 per share to $0.29 on the day), respectively. *Id.*

On August 30, 2022, NewAge announced that it was filing for Chapter 11 bankruptcy relief. *Id.* ¶ 113. Further, on August 31, 2022, *The Wall Street Journal* released an article called "New Age Says Cost of Internal Probe Contributed to Bankruptcy," which highlighted the fact that in its Chapter 11 disclosure, NewAge admitted that it had conducted an expensive internal investigation into Ariix, LLC ("Ariix"), a company that NewAge had acquired in December 2020, for suspected violations of the Foreign Corrupt Practices Act ("FCPA"). *Id.* ¶¶ 70, 113. The next day, the stock closed down 39%, from an opening price of $0.2016 per share to $0.1222 per share. *Id.* ¶ 113. It further plummeted on September 2, 2022, closing down 27%, from an opening of $0.20 per share to $0.1482. *Id.*

On September 2, 2022, after trading hours in the domestic markets had finished for the day, NewAge filed an 8-K announcing that it had received written notice from Nasdaq that, as a result of its filing for protection under Chapter 11 of the U.S. Bankruptcy Code, Nasdaq

determined that NewAge's securities would be delisted from the Nasdaq stock exchange, beginning on September 8, 2022. *Id.* ¶ 114. In response to this news, NewAge stock closed down 9% on September 6, 2022, from an opening price of $0.1368 to a closing price of $0.125. *Id.*

On October 18, 2022, the SEC announced that it was taking legal action against Defendant Willis. *Id.* ¶ 115. Specifically, he was alleged to have engaged in a "multi-year fraud by disseminating numerous false and misleading press releases and making false public statements concerning NewAge's business dealings, and aided and abetted NewAge's disclosure of material information in violation of Regulation FD," and was accordingly charged under Section 10(b) and corresponding Rule 10b-5 of the Exchange Act, Section 17(a) of the Securities Act of 1933 ("Securities Act"), and with aiding and abetting NewAge's violations of Section 13(a) of the Exchange Act and Regulation FD. *Id.*

On October 19, 2022, the SEC announced that it had instituted cease-and-desist proceedings against NewAge pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, enjoining NewAge from further violations of the Securities and Exchange Acts, and rules and regulations promulgated under them. *Id.* ¶ 116. In anticipation of these proceedings, NewAge submitted a settlement offer, which the SEC has accepted. *Id.* The next day, NewAge stock plummeted from an opening price of $0.175 per share to $0.0013 per share, or 93%. *Id.*

The facts constituting scienter were not known to any reasonable investor until announcements of these SEC proceedings in October 2022. *Id.* ¶ 117.

6

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *Scuderi v. Mammoth Energy Servs., Inc.*, No. CIV-19-522-SLP, 2019 WL 4397340, at *1–2 (W.D. Okla. Sept. 13, 2019); *Cooke v. Equal Energy Ltd.*, No. CIV-14-0047-C, 2014 WL 3819159, at *1 (W.D. Okla. May 8, 2014).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1–3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action is brought against the same Defendants in connection with violations of the Exchange Act.  Accordingly, the Related Actions allege substantially the same wrongdoing,

7

namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of NewAge's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502), at \*2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.    WODIUK SHOULD BE APPOINTED LEAD PLAINTIFF

Wodiuk should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Related Actions to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice.  *See* 15 U.S.C. § 78u–4(a)(3)(A)(i).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.* § 78u–4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u–4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I).

As set forth below, Wodiuk satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Wodiuk Is Willing to Serve as Class Representative

On December 7, 2022, counsel for the plaintiff in the first-filed of the Related Actions caused the statutorily required Notice of that action to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and which advised investors of NewAge securities that they had until February 6, 2023—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff. *See* Lieberman Decl., Ex. B.

Wodiuk has filed the instant motion pursuant to the Notice, and has submitted a signed Certification executed by him attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Wodiuk satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Wodiuk Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u–4(a)(3)(B)(iii).  To the best of his knowledge, Wodiuk believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715 *et al.*, 1997 WL 461036, at \*5 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1]  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400, at \*2 (D. Colo. Oct. 23, 2012) ("[C]ourts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action."); *Friedman v. Quest Energy Ptnrs. LP*, 261 F.R.D. 607, 614 (W.D. Okla. 2009) (equating financial interest with economic loss); *In re NPS Pharm., Inc. Sec. Litig.*, No. 2:06-CV-00570-PGCPMW, 2006 WL 6627948, at \*1-\*2 (D. Utah Nov. 17, 2006) (same).

During the Class Period, Wodiuk: (1) purchased 305,665.38 shares of NewAge securities; (2) expended $455,282 on his purchases of NewAge securities; (3) retained all 305,665.38 of his shares of NewAge securities; and (4) as a result of the disclosures of the fraud, incurred losses of

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at \*6–8 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

approximately $454,865 in connection with his transactions in NewAge securities. *See* Lieberman Decl., Ex. A. To the extent that Wodiuk possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

### 3. Wodiuk Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007). Moreover, "only subsection (3) ('typicality') and subsection (4) ('adequacy') are relevant to the consideration of motions for appointment as lead plaintiff." *NPS*, 2006 WL 6627948, at *2 (citing *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004) ("For the purposes of a motion for appointment of

11

lead plaintiff under Rule 23, it is proper to limit a court's inquiry into the final two prongs of Rule 23(a), typicality and adequacy.")).

The typicality requirement of Rule 23(a)(3) is satisfied when "the 'injury and the conduct are sufficiently similar.'" *Meyer*, 225 F.R.D. at 680 (quoting *Adamson v. Bowen*, 855 F.2d 668, 767 (10th Cir. 1988)). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)). In addition, "a difference in the factual situations of class members *per se*, does not defeat typicality under Rule 23(a)(3) . . . as long as the claims of class representatives and other class members are based on the same legal or remedial theory." *Meyer*, 225 F.R.D. at 680.

Wodiuk's claims are typical of those of the Class. Wodiuk alleges, like all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning NewAge, or by omitting to state material facts necessary to make the statements they did make not misleading. Wodiuk, like other Class members, purchased NewAge securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions that drove NewAge's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied "by fulfilling two requirements.  First, there must be an absence of potential conflict between the named plaintiffs and other class members.  Second, the counsel chosen by the representative party must be 'qualified, experienced and able to vigorously conduct the proposed litigation.'"  *Meyer*, 225 F.R.D. at 681 (quoting *In re Ribozyme Pharm. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000)).

Wodiuk is an adequate representative for the Class.  Here, Wodiuk has submitted a signed Certification declaring his commitment to protect the interests of the Class.  *See* Lieberman Decl., Ex. C.  There is no evidence of antagonism or conflict between Wodiuk's interests and those of the Class, and Wodiuk's significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.   Moreover, Wodiuk has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v).

Further demonstrating his adequacy, Wodiuk has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See* Lieberman Decl., Ex. D.

### 4. Wodiuk Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Wodiuk as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

13

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Wodiuk's ability and desire to fairly and adequately represent the Class has been discussed above.  Wodiuk is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Wodiuk should be appointed Lead Plaintiff for the Class.

## C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(v); *Lane*, 250 F.R.D. at 647 ("[T]he PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001))).  The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa).

Here, Wodiuk has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Lieberman Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, U.K., and Tel Aviv, Israel.  *See id.*

14

For over 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *Id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in these Related Actions, Wodiuk's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Wodiuk's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Wodiuk respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Wodiuk as Lead Plaintiff for the Class; and (3) approving Wodiuk's selection of Pomerantz as Lead Counsel for the Class.

Dated: February 6, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman

15

J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Luke Joseph Wodiuk and
Proposed Lead Counsel for the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2023, a true and correct copy of the foregoing **NOTICE OF MOTION AND MOTION OF LUKE JOSEPH WODIUK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to all counsel of record.

17