**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

**Civil Action No**.: 1:22-cv-03161-SKC

DENNIS CLIFTON, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

Defendants.

---

**Civil Action No**.: 1:23-cv-00127-RMR-STV

DANIEL TAYLOR, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

Defendants.

---

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUKE JOSEPH
WODIUK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF COUNSEL; AND (2) IN RESPONSE TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT.........................................................................................................................5

I.    IF THE COURT DECLINES TO APPOINT CHERNYAK AS LEAD PLAINTIFF,
      THEN WODIUK SHOULD BE APPOINTED LEAD PLAINTIFF.................................5

      1.    Wodiuk Has the Largest Financial Interest in the Relief Sought by the Class After
            Chernyak...........................................................................................................5

      2.    Wodiuk Satisfies the Requirements of Rule 23 .......................................................11

II.   THE BETEBENNERS ARE INADEQUATE UNDER RULE 23 ...................................13

III.  HUANG IS INADEQUATE UNDER RULE 23 ............................................................14

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019)..........................................................................4, 14

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677,
2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017)...............................................7, 9, 11

*Cortina v. Anavex Life Sci. Corp.*, No. 15-CV-10162 (JMF),
2016 U.S. Dist. LEXIS 45906 (S.D.N.Y. Apr. 5, 2016).........................................................9, 10

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................................7

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).........................................................8

*Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB,
2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) .........................................................8

*Galmi v. Teva Pharmaceuticals Industries Ltd.*,
302 F. Supp. 3d. 485 (D. Conn. 2017)..........................................................................4, 13, 14

*In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394,
2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ..............................................................................15

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)..........................................................................9, 10, 11

*In re Level 3 Communications, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS,
2009 WL 10684924 (D. Colo. May 4, 2009).......................................................................3, 13

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................................7, 8

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)...................................................................................4, 13

*In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW),
2007 WL 2683636 (D.N.J. Sept. 6, 2007) ...............................................................................15

*Lako v. Loandepot, Inc.*,
    2022 WL 1314463 (C.D. Cal. May 2, 2022) .......................................................................4, 14

*Lane v. Page*,
    250 F.R.D. 634 (D.N.M. 2007).............................................................................................11

*Loftus v. Primero Mining Corp.*, No. CV 16-01034-BRO,
    2016 U.S. Dist. LEXIS 204773 (C.D. Cal. May 12, 2016) .....................................................6

*McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB),
    2022 U.S. Dist. LEXIS 215864 (S.D.N.Y. Nov. 30, 2022) .....................................................8

*Meyer v. Paradigm Med. Indus.*,
    225 F.R.D. 678 (D. Utah 2004) .................................................................................3, 11, 12

*Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB),
    2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) .......................................................8

*Pio v. GM Co.*, No. 14-11191,
    2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ...................................................6

*Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC) *et al.*,
    2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007)...............................................6, 9, 10

*Ruland v. InfoSonics Corp.*, Nos. 06cv1231 BTM(WMc) *et al.*,
    2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ........................................6, 7, 8, 10

*Saee v. Enservco Corporation*, No. 22-cv-01267-DDD-STV,
    2022 WL 3681988 (D. Colo. Aug. 25, 2022) .......................................................................1, 6

*Saye v. Nio Inc.*, No. 22-CV-7252 (VSB),
    2022 U.S. Dist. LEXIS 225498 (S.D.N.Y. Dec. 14, 2022) .....................................................8

*Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM),
    2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ................................................7, 8, 10

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) ...................................................................................15

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v.
    Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN),
    2016 U.S. Dist. LEXIS 164682 (S.D.N.Y. Nov. 29, 2016)...........................................6, 9, 10

## **Statutes**

15 U.S.C. § 78u-4 .........................................................................................................1, 5, 12

PSLRA .................................................................................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

iv

Movant Wodiuk[1] respectfully submits this memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 26); and in response to the competing motions of (i) Igor Chernyak ("Chernyak") (Dkt. No. 18), (ii) Damian Betebenner and Cigdem Betebenner (together, the "Betebenners") (Dkt. No. 19), (iii) Mei Huang ("Huang") (Dkt. No. 21), and (iv) Chris Dobson ("Dobson") (Dkt. No. 25).[2]

## PRELIMINARY STATEMENT

The Related Actions are putative securities class action lawsuits on behalf of investors in NewAge securities.[3]   As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the Related Actions; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does not define "financial interest," courts generally assess financial interest for purposes of lead plaintiff appointment with reference to the four so-called *Lax* factors: (1) securities purchased; (2) funds expended; (3) net securities purchased (*i.e.*, securities retained); and (4) losses incurred.  *See*, *e.g.*, *Saee v. Enservco Corporation*, No. 22-cv-01267-DDD-STV,

---

[1] All capitalized terms herein are defined in Wodiuk's moving brief, unless otherwise indicated. *See* Dkt. No. 26.

[2] Initially two other putative Class members, Terry Roberts and Jean Roberts (the "Robertses"), filed a similar competing motion.  Dkt. No. 24.  On February 8, 2023, the Robertses filed a notice of withdrawal of their motion, acknowledging that they did not allege "the largest financial interest in the relief sought by the Class" under the PSLRA.  Dkt. No. 28 at 2.

[3] All of the competing movants before the Court agree that the Related Actions should be consolidated.  *See* Dkt. Nos. 18-19, 22, 25-26.

1

2022 WL 3681988, at *3 (D. Colo. Aug. 25, 2022) (assessing financial interest with reference to all four *Lax* factors). The table below sets forth the respective financial interests of the competing movants:

| Movant | Securities Purchased | Funds Expended | Net Securities Purchased (Securities Retained) | Loss |
|---|---|---|---|---|
| Igor Chernyak | 1,900,000 | $3,921,813 | 1,500,000 | $3,083,770 |
| Luke Joseph Wodiuk | 305,665 | $455,282 | 305,665 | $454,865 |
| Damian and Cigdem Betebenner | 71,000 | $494,657 | 71,000 | $494,560 |
| Chris Dobson | 238,163 | $686,214 | 11,190 | $158,062 |
| ~~Mei Huang~~ | ~~314,216~~ | ~~$466,328~~ | ~~300,016~~ | ~~$434,070~~ |

Here, under a *Lax*-factor analysis, the movant alleging the largest financial interest in the relief sought by the Class is Chernyak, who purchased significantly more NewAge stock, expended more on his purchases, retained more shares at the end of the Class Period, and incurred larger losses than any competing movant. Moreover, Chernyak appears to have *prima facie* demonstrated his adequacy under Rule 23. Accordingly, Chernyak appears to be the presumptive "most adequate plaintiff" of the Class—*i.e.*, the presumptive Lead Plaintiff—under the PSLRA.

Should the Court deny Chernyak's motion for any reason, then Wodiuk respectfully submits that he should be appointed Lead Plaintiff. After Chernyak, Wodiuk has the next-largest financial interest of any eligible movant within the meaning of the PSLRA. As the table above reflects, apart from Chernyak, Wodiuk purchased significantly more shares (305,665) and retained more shares at the end of the Class Period (305,665). The movant claiming the next-largest financial interest by these metrics, the Betebenners, purchased and retained only 71,000 shares, less than 24% of the volume of shares purchased and retained by Wodiuk. (Although another

2

competing movant, Huang, claims to have purchased more shares than Wodiuk and the Betebenners, disqualifying errors in Huang's submissions render his financial interest assertions unreliable and make Huang inadequate under Rule 23, as discussed in greater detail below.) By contrast, while the Betebenners claim to have spent more funds on their purchases than Wodiuk ($494,657 vs. $455,282) and incurred larger losses ($494,560 vs. $454,865), the difference in each instance is marginal—approximately only 8%. Accordingly, Wodiuk respectfully submits that under an appropriately holistic four-*Lax*-factor analysis, he possesses the largest financial interest in this litigation after Chernyak.

In addition to his significant financial interest, Wodiuk also satisfies the adequacy and typicality requirements of Rule 23. Wodiuk is aware of no conflict between his interests and those of the Class, his losses incurred as a result of the Defendants' alleged malfeasance gives him a sufficient stake in the outcome of the Related Actions to ensure vigorous advocacy, and in Pomerantz, Wodiuk has retained qualified and experienced counsel. *See Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004). Moreover, Wodiuk's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See, e.g.*, *id.* Further demonstrating his adequacy, Wodiuk has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 27-4.

By contrast, the Betebenners are inadequate under Rule 23, and thus ineligible for appointment irrespective of their financial interest in this litigation, because they have failed to

demonstrate their preparedness to coordinate their efforts to prosecute this litigation efficiently. Courts routinely deny motions by investor groups where such concerns about coordination and efficient leadership exist. *See*, *e.g.*, *In re Level 3 Communications, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *4 (D. Colo. May 4, 2009) (denying motion where movant group "failed to articulate any actual mechanisms for cooperation, dispute resolution, or communication among the group members and counsel."); *Galmi v. Teva Pharmaceuticals Industries Ltd.*, 302 F. Supp. 3d. 485, 494 (D. Conn. 2017) (denying motion by investor group, citing, *inter alia*, absence "of sufficient pre-litigation planning" and coordination among group members); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) (noting that the appointment of an investor group as lead plaintiff "creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent."). Here, purportedly in support of their motion, the Betebenners have submitted only a sparse declaration that provides boilerplate assurances that the Betebenners understand their responsibilities, but no information whatsoever as to how these two individuals actually intend to make decisions jointly for the Class. Absent such a showing, Wodiuk respectfully submits that the group plainly has not demonstrated its adequacy and that the Court cannot responsibly entrust this action to the Betebenners' leadership.

Another competing movant, Huang, is likewise inadequate under Rule 23 because of significant errors in Huang's motion papers. Courts regularly deny motions by lead plaintiff movants with such errors in their submissions. *See*, *e.g.*, *Lako v. Loandepot, Inc.*, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022); *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019). Here, Huang submitted a Certification in which

4

she attested, under penalty of perjury, to having purchased 314,216 shares of NewAge stock during the Class Period (Dkt. No. 23-2), but Huang's damages analysis states that Huang purchased 312,716 shares of NewAge stock (23-3)—a 1,500-share discrepancy.  Wodiuk respectfully submits that this glaring error raises disqualifying questions about Huang's readiness to serve as Lead Plaintiff in a complex securities class action.

For the foregoing reasons, to the extent that the Court denies Chernyak's motion, Wodiuk respectfully submits that the Court should grant his own motion in its entirety and deny the other competing motions.

## ARGUMENT

### I.   IF THE COURT DECLINES TO APPOINT CHERNYAK AS LEAD PLAINTIFF, THEN WODIUK SHOULD BE APPOINTED LEAD PLAINTIFF

As noted above, Wodiuk respectfully submits that Chernyak appears to be the presumptive Lead Plaintiff within the meaning of the PSLRA, having alleged the largest financial interest among the competing movants and made a *prima facie* showing of adequacy and typicality within the meaning of Rule 23.  Should the Court deny Chernyak's motion for any reason, then Wodiuk respectfully submits that, among the remaining competing movants, Wodiuk is entitled to appointment as Lead Plaintiff under the PSLRA.

#### 1.   Wodiuk Has the Largest Financial Interest in the Relief Sought by the Class After Chernyak

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial

5

interest," courts generally assess financial interest with reference to the four *Lax* factors: (1) shares purchased; (2) funds expended; (3) net shares purchased (*i.e.*, shares retained); and (4) monetary loss. *Enservco*, 2022 WL 3681988, at \*3 (assessing financial interest with reference to all four *Lax* factors).

Courts around the country have routinely assessed a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors *See, e.g.*, *id.; Loftus v. Primero Mining Corp.*, No. CV 16-01034-BRO (RAOx), 2016 U.S. Dist. LEXIS 204773, at \*10-13 (C.D. Cal. May 12, 2016) (assessing financial interest by "[t]aking into account all four [*Lax*] factors"); *Ruland v. InfoSonics Corp.*, Nos. 06cv1231 BTM(WMc) *et al.*, 2006 U.S. Dist. LEXIS 79144, at \*11-17 (S.D. Cal. Oct. 23, 2006); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC) *et al.*, 2007 U.S. Dist. LEXIS 97959, at \*5-7 (S.D.N.Y. Feb. 21, 2007). This is, in part, because courts recognize that the first three *Lax* factors—shares purchased, funds expended, and shares retained— provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See, e.g.*, *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at \*11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682, at \*5 (S.D.N.Y. Nov. 29, 2016) ("The[ first

6

three *Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share."); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at \*9 (N.D. Ohio Dec. 4, 2017).

In examining all four *Lax* factors holistically, many courts place substantial weight on the shares retained (*i.e.*, net shares purchased) *Lax* factor because shares retained are the ***only*** shares damaged by the corrective disclosures—*i.e.*, revelations of defendants' wrongdoing—that are responsible for the share price declines that caused the class's losses, and thus the only shares for which a plaintiff has recoverable losses. *See, e.g.*, *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*16-17 (appointing movant with "the greatest number of net shares purchased" because that movant "has the largest potential recovery"); *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at \*15-16 (S.D. Cal. Aug. 8, 2011) (same); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."). Particularly, as the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), in an action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's wrongdoing. 544 U.S. at 338. Accordingly, under *Dura*, any recoverable losses must stem from a cognizable cause—*i.e.*, here, the revelation of Defendants' alleged fraud through corrective disclosures. *See id*. at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Here, the only allegations of losses in the Related Actions were when the corrective disclosures of the Company's malfeasance reached the market. By the terms of the complaints on file then, an investor would not have any recoverable losses for shares they sold prior to that information damaging NewAge's share price during 2022. There is no other theory of damages alleged in the Related Actions and, as such, only shares attributable to the share price decline on those corrective disclosure dates—*i.e.*, ***shares retained*** as of that corrective disclosure date—were damaged by Defendants' wrongdoing. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated ***with respect to shares retained as of the date of the corrective disclosure***" (emphasis added)); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at \*10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss ***if the purchaser sells the shares before the truth is revealed***." (Emphasis added.)); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*16-17 (appointing movant with "the greatest number of net shares purchased" because that movant "has the largest potential recovery"); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at \*15-16 (same); *Network Assocs.*, 76 F. Supp. 2d at 1027 ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."); *Saye v. Nio Inc.*, No. 22-CV-7252 (VSB), 2022 U.S. Dist. LEXIS 225498, at \*11-12 (S.D.N.Y. Dec. 14, 2022) ("[S]ecurities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'" (quoting *Dura*, 544 U.S. at 345)); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 U.S. Dist. LEXIS 215864, at \*8-9 (S.D.N.Y. Nov. 30, 2022) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at \*15 (S.D.N.Y. Mar. 13, 2018) (same).

8

With respect to the fourth *Lax* factor, monetary loss, when the difference between competing movants' claimed losses is so small as to be roughly equal, courts readily look to the other three *Lax* factors to determine which movant has the largest financial interest. *See, e.g.*, *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *4-6 (looking to other *Lax* factors where there was only a 16% difference between losses); *Cortina v. Anavex Life Sci. Corp.*, No. 15-CV-10162 (JMF), 2016 U.S. Dist. LEXIS 45906, at *3-4 (S.D.N.Y. Apr. 5, 2016) (looking to other *Lax* factors where there was only a "roughly 3.5%" difference between losses); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating 2% difference in losses "as roughly equal" and looking to other *Lax* factors); *Transdigm*, 2017 U.S. Dist. LEXIS 199868, at *9 ("find[ing] that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *see also In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations).

As the chart at p. 2 illustrates, Wodiuk clearly possesses a larger financial interest in this litigation than any competing movant under a holistic *Lax*-factor analysis employing all four factors. Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *5— *i.e.*, shares purchased, funds expended, and shares retained—Wodiuk leads the Betebenners, the movants alleging the next-largest financial interest, by significant margins with respect to two of those three factors, shares purchased and shares retained (305,665 vs. 71,000 in both instances, a difference of *330%*). (The only movant claiming to have purchased more shares than Wodiuk and the Betebenners, Huang, is ineligible for appointment as Lead Plaintiff, as discussed in detail *infra*

9

at Section C, because of errors in her motion papers.  In any event, Huang also claims to have retained fewer shares than Wodiuk.)  Given that shares retained is arguably the most important *Lax* factor, as it correlates with a movant's potential recovery in the litigation, this tips the balance greatly in favor of Wodiuk having the largest financial interest in this litigation.  *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*16-17 (placing the greatest weight on shares retained); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at \*15-16 (same).

With respect to the three more objective *Lax* factors, the Betebenners only claim to lead Wodiuk with respect to funds expended ($494,657 vs. $455,282).  However, the marginal difference between the funds respectively expended by the Betebenners and Wodiuk is plainly *de minimis* ($39,375, a difference of only 7.96%).

Finally, although the Betebenners claim a slightly larger figure with respect to the least objective of the four *Lax* factors, loss, the difference between their losses ($494,560) and Wodiuk's ($454,865) is similarly insignificant—only 8.03%—making their losses roughly equal.  *See Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal"); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at \*5-7 (treating 2% difference in losses "as roughly equal").  Accordingly, considering together: (1) Wodiuk's significant lead in two of the three remaining *Lax* factors, shares retained and shares purchased; and (2) the Betebenners' *de minimis* lead over Wodiuk in the only remaining *Lax* factor, funds expended, Wodiuk clearly has the largest financial interest in this litigation.  *See Westchester*, 2016 U.S. Dist. LEXIS 164682, at \*4-6 (discounting 16% difference between losses where "[t]he other [*Lax*] factors . . . overwhelmingly favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *Cortina*, 2016 U.S. Dist. LEXIS 45906, at \*3-4 (discounting "roughly 3.5%" difference between losses

10

where two other *Lax* factors "heavily favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating 2% difference in losses "as roughly equal" and appointing movant with lower losses as lead plaintiff because, *inter alia*, the other *Lax* factors favored that movant); *Transdigm*, 2017 U.S. Dist. LEXIS 199868, at *9 (appointing movant with lower losses because "the Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations).

In sum, Wodiuk leads by an overwhelming margin when evaluating two of the three more objective *Lax* factors, shares purchased and shares retained, while trailing by only a negligible margin when evaluating either of the two remaining *Lax* factors, funds expended and loss. As such, Wodiuk clearly has the largest financial interest in this litigation within the meaning of the PSLRA under a holistic analysis that takes into account all four *Lax* factors.

### 2. Wodiuk Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Wodiuk has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007). First, Wodiuk's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Meyer*, 225 F.R.D. at 680. Wodiuk, like other Class members, purchased NewAge securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations

11

and/or omissions that drove NewAge's share price downward.  These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).  *Id.*

Second, Wodiuk satisfies the adequacy requirement of Rule 23(a)(4) because there is no evidence of antagonism or conflict between his interests and those of the Class, he has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, and in Pomerantz, he has retained qualified and experienced counsel with expertise in litigating securities fraud class actions, among other matters.  *See, e.g.*, *id.* at 681.  Wodiuk has further demonstrated his adequacy by the submission, with his motion papers, of a sworn Declaration, attesting to, *inter alia*, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of fellow Class members.  *See* Dkt. No. 27-4.

*****

Because Wodiuk has the largest financial interest of any eligible Lead Plaintiff candidate in the relief sought by the Class, other than Chernyak, and otherwise satisfies the requirements of Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA if the Court declines to appoint Chernyak.

To overcome the strong presumption entitling Wodiuk to appointment as Lead Plaintiff, the PSLRA requires "proof" that the presumptive Lead Plaintiff is inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

12

## II.    THE BETEBENNERS ARE INADEQUATE UNDER RULE 23

Even assuming *arguendo* that the Betebenners possessed a larger financial interest than Wodiuk, they would still be disqualified from appointment because, as a group of investors who have failed to demonstrate their preparedness to coordinate their efforts and work together jointly, they are inadequate under Rule 23 and thus ineligible to serve as Lead Plaintiff.  Courts routinely deny motions by investor groups where concerns exist as to the groups' ability to work cooperatively in prosecuting a litigation.  *See*, *e.g.*, *Level 3 Communications*, 2009 WL 10684924, at *4 (denying motion where movant group "failed to articulate any actual mechanisms for cooperation, dispute resolution, or communication among the group members and counsel."); *Galmi*, 302 F. Supp. 3d. at 494 (denying motion by investor group, citing, *inter alia*, absence "of sufficient pre-litigation planning" and coordination among group members); *Petrobras*, 104 F. Supp. 3d at 622 (noting that the appointment of an investor group as lead plaintiff "creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.").

Here, the Betebenners have failed to demonstrate any meaningful degree of preparedness to work together on behalf of the Class in this litigation.  Although the Betebenners submitted a Joint Declaration in support of their motion, it contains merely boilerplate recitations to a generalized "understand[ing of] the responsibilities and duties of being Lead Plaintiffs, including our fiduciary duties to the class" (Dkt. No. 20-3 ¶ 12) and a supposed readiness "to supervise lead counsel and actively oversee the prosecution of this action for the benefit of the class" (*id.* ¶ 13).  The Joint Declaration lacks any explanation as to how the two Betebenners intend to do so collaboratively, however.  Serving as Lead Plaintiff will entail, *inter alia*, reviewing pleadings,

13

directing the efforts of counsel, and making major litigation decisions.  How precisely do the two

Betebenners intend to jointly undertake these tasks efficiently, given that the involvement of

multiple decision-makers necessarily introduces the potential for delay, inefficiency, and conflict?

Most troublingly, the Betebenners have not attested to *any* mechanism to resolve disagreements

that may arise between them with respect to litigation decisions.  *See*, *e.g.*, *Galmi*, 302 F. Supp.

3d. at 494 (denying motion where movant group "proposed no mechanism for resolving" any

"conflicts within the group").  Although the Betebenners may be anticipated to cite their family

relationship as proof that they are prepared to act cohesively, Wodiuk respectfully submits that a

family relationship does not guarantee efficient and conflict-free decision-making—after all,

family members frequently disagree on all manner of things.  Having failed to offer any assurances

to the Court that they are meaningfully prepared to coordinate their efforts in connection with this

litigation, the Betebenners have failed to demonstrate their adequacy as class representatives under

Rule 23, and their motion must be denied.

### III.    HUANG IS INADEQUATE UNDER RULE 23

Finally, one other competing movant, Huang, is likewise inadequate under Rule 23 due to

a significant error in her motion papers.  Courts routinely disqualify lead plaintiff movants for such

egregious errors in their submissions, as they raise questions regarding the movant's fitness to

supervise a complex securities class action.  *See*, *e.g.*, *Loandepot*, 2022 WL 1314463, at *5

(disqualifying movant group upon finding "serious concerns" about the group's ability to protect

the interests of the class when the group "failed to select and apply a rational and consistently

applied methodology for calculating its losses"); *Qualcomm*, 2019 WL 277360, at *3-4 (significant

errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy

and typicality requirements of Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at \*7, \*8 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at \*5-\*6 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

Here, Huang submitted a Certification, executed under penalty of perjury, in which she attested to having purchased a total of ***314,216*** shares of NewAge stock during the Class Period. *See* Dkt. No. 23-2. However, Huang also submitted a damages analysis in which she attested to purchasing only ***312,716*** shares during the Class Period. *See* Dkt. No. 23-3. If Huang's Certification is accurate, then Huang submitted an inaccurate damages analysis. Conversely, if Huang's damages analysis is accurate, then Huang's Certification contained false attestations made under penalty of perjury.

Misstating her purchases by a total of 1,500 shares is no minor issue, nor is the possibility that Huang submitted inaccurate information under penalty of perjury. The Court-appointed Lead Plaintiff in this litigation will owe a fiduciary obligation to absent Class members to diligently and attentively prosecute their claims against the Defendants. Wodiuk respectfully submits that this

15

glaring error in Huang's motion papers raises serious, disqualifying questions regarding her

readiness to supervise a complex securities class action and thus mandates denial of his motion.

## CONCLUSION

For the foregoing reasons, if the Court denies Chernyak's motion, then Wodiuk

respectfully requests that the Court issue an Order: (1) consolidating the Related Actions;

(2) appointing Wodiuk as Lead Plaintiff for the Class; and (3) approving Wodiuk's selection of

Pomerantz as Lead Counsel for the Class.

Dated:  February 27, 2023                    Respectfully submitted,

                                             POMERANTZ LLP

                                             */s/ Jeremy A. Lieberman*
                                             Jeremy A. Lieberman
                                             J. Alexander Hood II
                                             600 Third Avenue, 20th Floor
                                             New York, New York 10016
                                             Telephone: (212) 661-1100
                                             Facsimile: (917) 463-1044
                                             jalieberman@pomlaw.com
                                             ahood@pomlaw.com

                                             *Counsel for Luke Joseph Wodiuk and*
                                             *Proposed Lead Counsel for the Class*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of February, 2023, a true and correct copy of the foregoing **MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUKE JOSEPH WODIUK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; AND (2) IN RESPONSE TO COMETING MOTIONS** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to all counsel of record.

17