**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

**Civil Action No**.: 1:22-cv-03161-SKC

DENNIS CLIFTON, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

Defendants.

---

**Civil Action No**.: 1:23-cv-00127-RMR-STV

DANIEL TAYLOR, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

Defendants.

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF LUKE
JOSEPH WODIUK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF COUNSEL**

Movant Wodiuk[1] respectfully submits this reply memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 26); and in response to the competing motions of Chernyak (Dkt. No. 18) and the Betebenners (Dkt. No. 19).[2]

## ARGUMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" **and** has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, as discussed in Wodiuk's response brief (Dkt. No. 32), Chernyak claims the largest financial interest among the competing movants, assessed with reference to any of the four *Lax* factors—having purchased more shares, spent more on those purchases, retained more shares at the end of the Class Period, and incurred larger losses than any competing movant.  The Betebenners, in their opposition brief, assert that Chernyak's background renders him inadequate under Rule 23 and thus mandates denial of his motion.  *See generally* Dkt. No. 33.

---

[1] All capitalized terms herein are defined in Wodiuk's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 26, 32.

[2] Initially three other putative Class members and/or groups thereof filed similar competing motions: (1) the Robertses (Dkt. No. 24); (2) Huang (Dkt. No. 21); and (3) Dobson (Dkt. No. 25).  The foregoing movants all subsequently either withdrew their motions or stated their non-opposition to the competing motions.  *See* Dkt. Nos. 28, 30-31.

Wodiuk takes no position on the allegations in the Betebenners' opposition brief or their significance with respect to Chernyak's appointment as Lead Plaintiff. As stated in his response brief, Wodiuk respectfully submits that, should the Court decline to appoint Chernyak as Lead Plaintiff for any reason, then Wodiuk, not the Betebenners, should be appointed Lead Plaintiff instead. As discussed at length in Wodiuk's opposition brief (Dkt. No. 32), Wodiuk has a larger financial interest than the Betebenners under a holistic *Lax* factor analysis, having purchased and retained significantly more NewAge shares during the Class Period than the Betebenners—305,665 vs. 71,000 in both instances, a difference of ***330%***—and having incurred a loss roughly equivalent to the Betebenners'—$454,865 compared to $494,560, a difference of only 8.03%. *See, e.g.*, *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at \*11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682, at \*5 (S.D.N.Y. Nov. 29, 2016) ("The[ first three *Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share."); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at \*9 (N.D. Ohio Dec. 4, 2017). The fact that Wodiuk retained more shares than Chernyak is especially significant

because, as the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005),
in an action under the federal securities laws, the only relief that can be sought by a plaintiff or a
class is the loss proximately caused by the defendant's wrongdoing. 544 U.S. at 338. Accordingly,
under *Dura*, any recoverable losses must stem from a cognizable cause—*i.e.*, here, the revelation
of Defendants' alleged fraud through corrective disclosures which damaged Newage shareholders
when the stock price declined. *See id*. at 342 ("[If] the purchaser sells the shares . . . before the
relevant truth begins to leak out, the misrepresentation will not have led to any loss."). *See also
Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at
*11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated ***with respect to shares
retained as of the date of the corrective disclosure***" (emphasis added)); *Foster v. Maxwell Techs.,
Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013)
("The misrepresentation does not lead to a loss ***if the purchaser sells the shares before the truth
is revealed***." (Emphasis added)). Accordingly, after Chernyak, Wodiuk plainly has the next largest
financial interest in this litigation.

Nor has any movant challenged Wodiuk's adequacy or typicality under Rule 23 or argued
that he is subject to any disqualifying unique defenses. Accordingly, if the Court declines to
appoint Chernyak as Lead Plaintiff, then Wodiuk—not the Betebenners—would become the
presumptive "most adequate plaintiff" of the Class.

The Betebenners, by contrast, are inadequate under Rule 23 because they have failed to
demonstrate a meaningful degree of preparedness to prosecute this litigation cooperatively as Co-
Lead Plaintiffs. The boilerplate Joint Declaration submitted with the Betebenners' motion (Dkt.
No. 20-3) is conspicuously bereft of any specific statements regarding plans for joint decision-

3

making or dispute resolution, and thus fails to show how these two individuals intend to manage the joint decision-making and collaborative work processes that will be necessary to manage this litigation. Courts routinely deny motions by investor groups in such circumstances. *See*, *e.g.*, *In re Level 3 Communications, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *4 (D. Colo. May 4, 2009) (denying motion where movant group "failed to articulate any actual mechanisms for cooperation, dispute resolution, or communication among the group members and counsel."); *Galmi v. Teva Pharmaceuticals Industries Ltd.*, 302 F. Supp. 3d. 485, 494 (D. Conn. 2017) (denying motion by investor group, citing, *inter alia*, absence "of sufficient pre-litigation planning" and coordination among group members); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) (noting that the appointment of an investor group as lead plaintiff "creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.").

Nor have the Betebenners supplemented their proffer with any additional, more detailed attestations in their opposition papers. As anticipated, the Betebenners cite the fact that they are "husband and wife" as evidence that they "meet the PSLRA's stringent requirements to serve as Lead Plaintiffs" (Dkt. No. 33 at 2), but disagreements routinely arise between married couples. Respectfully, without more, the fact that the Betebenners are married to one another does not ensure cooperative decision-making and meaningful coordination, which will of course be necessary to effectively supervise counsel and prosecute the Class's claims against the Defendants. Simply put, with respect to Class leadership, the Betebenners have failed to demonstrate that two heads are better than one.

4

## CONCLUSION

For the reasons set forth herein, if the Court denies Chernyak's motion, then Wodiuk respectfully submits that his motion should be granted in its entirety and that the Betebenners' competing motion should be denied.

Dated:  March 13, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Luke Joseph Wodiuk and
Proposed Lead Counsel for the Class*

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2023, a true and correct copy of the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF LUKE JOSEPH WODIUK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to all counsel of record.