# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03161-SKC

DENNIS CLIFTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

    v.

BRENT WILLIS, FRED COOPER, TIM HAAS, REGINALD KAPTEYN, ALICIA SYRETT, GREGORY GOULD, CHUCK ENCE, CARL AURE, KEVIN MANION, ED BRENNAN, AMY KUZDOWICZ, GREG FEA, and CRAIG THIBODEAU,

Defendants.

_____

Civil Action No. 1:23-cv-00127-RMR-STV

DANIEL TAYLOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

    v.

BRENT WILLIS, FRED COOPER, TIM HAAS, REGINALD KAPTEYN, ALICIA SYRETT, GREGORY GOULD, CHUCK ENCE, CARL AURE, KEVIN MANION, ED BRENNAN, AMY KUZDOWICZ, GREG FEA, and CRAIG THIBODEAU,

Defendants.

_____

**DAMIAN BETEBENNER AND CIGDEM BETEBENNER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

_____

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

I.    CHERNYAK FAILED TO INITIALLY DISCLOSE HIS CONVICTION, MAY
      HAVE SUBMITTED A FALSE CERTIFICATION, AND REMAINS EVASIVE ......... 2

II.   THE BETEBENNERS ARE A MARRIED COUPLE AND THE CLASSIC
      "GROUP" OF RELATED INVESTORS WHO SATISFY THE PSLRA'S
      ADEQUACY REQUIREMENT ....................................................................................... 6

III.  WODIUK'S ARGUMENT REVISING HIS INITIAL STATEMENT OF THE
      LAW, AND SEEKING TO ELEVATE THE IMPORTANCE OF STOCK
      PURCHASES AND FUNDS EXPENDED OVER THE IMPORTANCE OF LIFO
      LOSSES FAILS ............................................................................................................... 8

CONCLUSION..................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Cases**                                                                         **Page(s)**

*Batter v. Hecla Mining Co.*,
No. 19-cv-4883 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...............................3, 8

*Broadfoot v. Barrick Gold Corp.*,
No. 17 Civ. 3507 (NRB), 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017) ...................................6

*Chupa v. Armstrong Flooring, Inc.*,
No. 2:19-CV-09840-CAS, 2020 WL 1032420 (C.D. Cal. Mar. 2, 2020)...................................4

*In re CMED Sec. Litig.*,
No. 11 Civ. 9297 (KBF), 2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ..................................10

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351-REB-KLM, 2008 WL 4298316 (D. Colo. Sept. 17, 2008) ..........................7

*Darwin v. Taylor*,
No. 12-CV-01038-CMA-CBS, 2012 WL 5250400 (D. Colo. Oct. 23, 2012)..........................8

*Ellis v. Spectranetics Corp.*,
No. 15-cv-01857-KLM, 2015 WL 9259928 (D. Colo. Dec. 18, 2015) ................................8, 9

*Galmi v. Teva Pharmaceuticals Industries Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)...................................................................................8

*Garbowski v. Tokai Pharms., Inc.*,
302 F. Supp. 3d 441 (D. Mass 2018) ...................................................................................4

*Kinney v. Capstone Turbine Corp.*,
Case No. CV 15-8914 DMW, 2016 WL 5341948 (C.D. Cal. Feb. 29, 2016)..........................7

*Lax v. First Merchants Acceptance Corp.*,
No. 91 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).........................................1, 8, 9, 10

*In re Level 3 Communications, Inc. Securities Litigation*,
No. 09-cv-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009) .............................8

*Loftus v. Primero Mining Corp.*,
No. CV 16-01304-BRO, 2016 WL 11741138 (C.D. Cal. May 12, 2016)................................9

*Mariconda v. Farmland Partners, Inc.*,
No. 18-cv-02104-DME-NYW, 2018 WL 6307868 (D. Colo. Dec. 3, 2018) ..........................7

*In re McDermott Int'l, Inc. Sec. Litig.*,
No. 08 Civ. 9943(DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) .......................................8

*In re Network Assocs., Inc. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................................................5, 10

*Peters v. Colony Credit Real Estate, Inc.*,
No. CV 20-8305, 2020 WL 11884392 (C.D. Cal. Dec. 11, 2020) ...........................................7

*In re Petrobras Securities Litigation*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)......................................................................................8

*Pio v. GM Co.*,
No. 14-11191, 2014 WL 5421230 (E.D Mich. Oct. 24, 2014) .................................................9

*Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
No. 06 Civ. 5797(PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)....................................9

*Ruland v. InfoSonics Corp.*,
No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ........................9, 10

*Sellers v. Peters*,
No. 4:97CV2260 FRB, 2007 WL 390771 (E.D. Mo. Jan. 31, 2007) .......................................5

*Sneed v. AcelRX Pharms., Inc.*,
No. 21-cv-04353-BLF, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021) ................................4, 5

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)..................................5

*Tollen v. Geron Corp.*,
No. C 20-00547 WHA, 2020 WL 2494570 (N.D. Cal. May 14, 2020)....................................7

*U.S. v. Provenzano*,
620F. 2d 985, 1002-03 (3d Cir. 1980) .....................................................................................5

*United States v. Jones*,
Case No. 1:04-CR-580, 2005 WL 8165345 (N.D. Ohio Aug. 5, 2005) ...................................5

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
No. 05-CV-04617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006)..................................10

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v.
Brixmor Prop. Grp., Inc.*,
No. 16-CV-02400 (AT)(SN), 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) ........................9

Lead Plaintiff Movants Damian Betebenner and Cigdem Betebenner ("the Betebenners") reply to the oppositions filed by the competing movants Igor Chernyak (*a.k.a.* Gary Chern) (ECF No. 29) ("Chernyak Opp.") and Luke Joseph Wodiuk ("Wodiuk Opp.") (ECF No. 32).[1]

## INTRODUCTION

The Betebenners are the only remaining movants with the largest financial interest who satisfy the requirements of Fed. R. Civ. P. Rule 23 and they should be appointed Lead Plaintiffs.[2]

Chernyak has disqualified himself because he failed to be upfront with the Court in his opening papers and disclose his prior federal criminal conviction under the name "Gary Chern" for extortion. Further, Chernyak continues to refuse to answer a most critical question: ***whether he is seeking Lead Plaintiff under his legal name or one of the aliases identified by the DOJ***. His prior conviction of felonies involving dishonesty, as well as his actions in this Lead Plaintiff process, are disqualifying.

Wodiuk, who is in third place in losses argues that if Chernyak is found inadequate, he should be appointed Lead Plaintiff because the Betebenners are an improper group, and because he has revised his earlier view that LIFO losses are the most important of the *Lax* factors. He now argues that financial interests should be measured by the number of shares purchased.

Wodiuk's argument that his greater number of net purchased shares trumps the Betebenners' larger LIFO losses and net funds expended is unsupported and, under circumstances similar to those in this Action, have been rejected by courts. Courts have rejected

---

[1]     Unless stated, all capitalized terms have the same meaning as in the Betebenners' Opening Brief (ECF No. 19) and their Opposition Brief ("Betebenners' Opp.") (ECF No. 34).

[2]     The Betebenners and the other movants agree that the *Clifton* (1:22-cv-03161-SKC) and *Taylor* Actions (1:23-cv-00127-RMR-STV) should be consolidated. *See* Chernyak Opp. 3 n.1; Wodiuk Opp. 1 n.3.

reliance on net shares retained to determine largest financial interest in cases like this one where there is a gradual leakage of the fraud into the market causing several price declines and some transactions resulted in greater losses than others. *See* Compl. ¶¶ 110-16 (ECF No. 1). Wodiuk's new argument to disregard the Betebenner's larger LIFO losses is misplaced and the only creative ploy available to him, having lesser LIFO losses, and should be rejected out of hand.

At bottom, the Betebenners are the only remaining movant who satisfies the PSLRA's requirements and have the largest financial interest.  They should be appointed Lead Plaintiff.

## I.     CHERNYAK FAILED TO INITIALLY DISCLOSE HIS CONVICTION, MAY HAVE SUBMITTED A FALSE CERTIFICATION, AND REMAINS EVASIVE

Chernyak, a resident of the United Arab Emirates, is disqualified because he failed to be upfront with the Court in his opening papers and disclose his prior federal criminal conviction under the name "Gary Chern" for extortion.  Chenyak's counsel admitted to counsel for the Betebenners that movant Igor Chernyak, and the Gary Chern convicted of conspiracy and extortion and sentenced to 57 months in federal prison were one and the same.   Even after the Betebenners uncovered his conviction though due diligence (and the disturbing underlying allegations of violence and dishonesty considered by the Court in sentencing Chernyak), Chernyak continues to refuse to be forthright about the criminal case and continues to refuse to confirm his true legal identity.  Strikingly, Chernyak, as movant in this case, appears to have signed his PSLRA certification with only the name "Gary."  Betebenners' Opp. 5-6.  On March 13, 2022, Chernyak filed his Memorandum of Law in Further Support of Motion of Igor Chernyak for Appointment as Lead Plaintiff and Approval of Selection of Counsel; Reply to Competing Lead Plaintiff Motions ("Chernyak Reply") (ECF No. 36) in which he seeks to downplay the numerous deficiencies the Betebenners have identified that bar his appointment as

"hyperbole" and "speculation" and not actual "proof". Chernyak Reply at 2, 5-10. However, it is well established that "[T]he proof needed to rebut the presumption need not establish a plaintiff's inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy." *Batter v. Hecla Mining Co.*, No. 19-cv-4883 (ALC), 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (citing *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 3, 2016)). "Where 'there is at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses and will not fairly and adequately protect the interests of the class' disqualification is appropriate." *Id.* (quoting *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004)). The Betebenners have submitted more than sufficient proof that Chernyak will be subjected to unique defenses arising from his prior criminal conviction, his actual legal name and numerous other outstanding questions that Defendants undoubtedly will raise later in this case. Chernyak does not dispute the proof of his conviction for conspiracy and extortion, crimes involving dishonesty which are themselves disqualifying.

According to Chernyak's Naturalization Application, his family name is "Chern", and his given name is "Gary", but he used the name "Igor Chernyak" on his alien registration card. *See* Reply Decl. of James M. Wilson, Jr. in Opp'n to Competing Mots. For Lead Pl. and In Further Supp. of the Betebenners' Mot. ("Wilson Reply Decl."), Ex. 1 at 13.  Chernyak submitted his PSLRA Certification (and his declaration) using the name he adopted on his alien registration card, but to date, **despite numerous opportunities** to do so, has failed to disclose whether that is his legal name (including if he used this name on his account to make his NewAge transactions).

3

*See* Betebenners' Opp. 2-6, 8-10. [3] This alone should disqualify Chernyak. *See Sneed v. AcelRX Pharms., Inc.*, No. 21-cv-04353-BLF, 2021 WL 5964596, at \*4 (N.D. Cal. Dec. 16, 2021) ("Dupre's prior offenses, combined with his lack of candor to his attorney and the Court, lead the Court to conclude that Dupre is an inadequate class representative . . . ."); *see also Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 455 (D. Mass 2018) (movant's sworn statement in his PSLRA certification to having read a complaint in the case was false and disqualified him).

Chernyak likewise continues to refuse to answer critical questions regarding his prior criminal case, whether he was deported after release from prison (his attorney submitted an unsigned stipulation to the District Court agreeing to deportation (*see* Wilson Reply Decl. Ex. 2)), his ability to adequately represent the Class, questions that should be answered now because Defendants undoubtedly will raise them later in this case if he is appointed lead plaintiff. Indeed, despite being asked, Chernyak has not explicitly stated that he would be willing to come to the U.S. to testify in this case if required to do so. A movant who **does not try to hide their criminal** history may be adequate to represent the class, if their crime does not involve dishonesty. *See e.g., Chupa v. Armstrong Flooring, Inc.,* No. 2:19-CV-09840-CAS (MRWx), 2020 WL 1032420, at \*5 n.4 (C.D. Cal. Mar. 2, 2020) (appointing movant Lead Plaintiff who was honest with the Court, had no unresolved aliases, and disclosed his criminal history to the Court on first page of his opening motion, which crimes did not involve dishonesty). Here, Chernyak not only **failed to initially disclose** his criminal history, but he **continues to evade**

---

[3]    In his Reply, Chernyak attached heavily redacted copies of trade confirmations for only 4 of his 34 transactions in NewAge stock, all from 2019. *See* ECF Nos. 36-1, 36-2. These 4 redacted trade confirmations do not establish that all of his NewAge stock transactions were conducted in the name "Igor Chernyak" and are suspiciously incomplete in the face of the challenges raised.

critical questions regarding his conviction for a crime of dishonesty. *See Sneed*, 2021 WL 5964596, at *4 (disqualifying lead plaintiff movant due to previous indictment for embezzlement and conviction on wire fraud charges and lack of candor regarding same).

The charges against Chernyak and his conviction for extortion are relevant to his ability to serve as a fiduciary to the class. Courts have found movants "inadequate [to serve as] lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *Surebeam*, 2004 WL 5159061, at *7; *see also In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029-31 (N.D. Cal. 1999) (movant inadequate due to unrelated fraud investigation). Many courts view extortion as a crime involving dishonesty. *See U.S. v. Provenzano*, 620F. 2d 985, 1002-03 (3d Cir. 1980) (affirming without adverse comment, the admissibility of a prior conviction for extortion where District Court found that it was crime of dishonesty); *see also Sellers v. Peters*, No. 4:97CV2260 FRB, 2007 WL 390771, at *4 (E.D. Mo. Jan. 31, 2007); *United States v. Jones*, Case No. 1:04-CR-580, 2005 WL 8165345, at *2 (N.D. Ohio Aug. 5, 2005) (a conviction for public corruption, including extortion was a crime of dishonesty). Serving as Lead Plaintiff is a fiduciary duty that requires honesty and integrity and Chernyak's prior extortion conviction, and lack of candor about it, should bar his appointment as Lead Plaintiff.

Moreover, the underlying allegations against Chernyak and the additional information filed in the sentencing phase also cast serious doubts about Chernyak's honesty and credibility. The indictment in *U.S. v. Chern aka Chernyak* alleged that Chernyak and an accomplice placed a gun at the head of a Russian college student and accosted him to force him to call his father in Russia to obtain payment of $315,000 for repayment of a business debt. *See* Wilson Reply Decl.

Ex. 3, Indictment 2-3. At Chernyak's detention hearing, the DOJ proffered evidence regarding

Chernyak's financial resources (*e.g.,* showing deposits of millions of dollars from foreign

countries) and potentially linking him to organized crime in the Soviet Union and Lithuania. *See*

Wilson Decl. Ex. 4, Gov't's Detention Mem. and Suppl. Proffer at 2-3, 7. The DOJ's witness

opined that Chernyak's income came in part from reselling stolen metals. *Id*. at 2.  The DOJ also

presented evidence that Chernyak allegedly borrowed $350,000 from a Lithuanian Company

known to Lithuanian police as an "organized crime related company" and that Chernyak's

company, East West Consulting, had sponsored a Lithuanian on business visas who had links to

a Lithuanian organized crime group. *Id.* at 7.

Any effort by Chernyak to supplement the record at this point is woefully inadequate.  If

the court does not disqualify Chernyak outright, the Betebenners request the opportunity for full

and fair discovery of Chernyak to confirm his identity and further investigate his adequacy to

serve as Lead Plaintiff.[4]

## II.    THE BETEBENNERS ARE A MARRIED COUPLE AND THE CLASSIC "GROUP" OF RELATED INVESTORS WHO SATISFY THE PSLRA'S ADEQUACY REQUIREMENT

Wodiuk's challenge to the Betebenners' adequacy is based entirely on his unsupported

view that their group, composed of a married couple, is improper. Wodiuk Opp. 13-14. Wodiuk

has not cited a single case that rejected a married couple as lead plaintiff much less a couple who

submitted a detailed Joint Declaration as the Betebenners did.

Family members, and married couples in particular like the Betebenners, are the

---

[4]    *See Broadfoot v. Barrick Gold Corp.*, No. 17 Civ. 3507 (NRB), 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (allowing discovery where there existed the potential that lead plaintiff movant was subject to unique circumstances defeating typicality and adequacy).

quintessential "group" of investors to serve as Lead Plaintiff. *See Mariconda v. Farmland Partners, Inc.*, No. 18-cv-02104-DME-NYW, 2018 WL 6307868, at \*7 (D. Colo. Dec. 3, 2018) (husband and wife appointed as lead plaintiffs); *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-REB-KLM, 2008 WL 4298316, at \*3 & n.5 (D. Colo. Sept. 17, 2008) (two brothers appointed as lead plaintiffs); *Tollen v. Geron Corp.*, No. C 20-00547 WHA, 2020 WL 2494570, at \*4-5 (N.D. Cal. May 14, 2020) (appointing married couple as lead plaintiffs); *Kinney v. Capstone Turbine Corp.*, Case No. CV 15-8914 DMW (RAOx), 2016 WL 5341948, at \*4 (C.D. Cal. Feb. 29, 2016) (married couple represented the "quintessential cohesive unit" for lead plaintiff purposes and granting their motion).

The Betebenners are a married couple who, with their opening Lead Plaintiff motion papers, submitted a Joint Declaration with detailed information about themselves, their professions, their investment experience and commitment and ability to supervise their lawyers in the conduct of this Action and that they sought to be appointed together as a family. *See* Betebenners' Opening Mot., Ex. C, ECF No. 20-3 ¶ 12 ("We are motivated to recover our losses for our benefit and the benefit of all members of the Class. It is for this reason that **we as a family decided to seek appointment** as Lead Plaintiff in the action."). Such a Joint Declaration is more than sufficient for the Court to determine their adequacy. *See e.g., Peters v. Colony Credit Real Estate, Inc.*, No. CV 20-8305, 2020 WL 11884392, at \*4 (C.D. Cal. Dec. 11, 2020) (joint declaration attested to group's commitment to prosecute the class action, their backgrounds, investing experience, understanding of responsibilities of a lead plaintiff among

other things).[5] Wodiuk has not cited to any case authority that has rejected a married couple's

application for Lead Plaintiff under these circumstances.[6]  Here, the Betebenners have more than

demonstrated their adequacy and Wodiuk's arguments should be rejected.

III.    **WODIUK'S ARGUMENT REVISING HIS INITIAL STATEMENT OF THE
LAW, AND SEEKING TO ELEVATE THE IMPORTANCE OF STOCK
PURCHASES AND FUNDS EXPENDED OVER THE IMPORTANCE OF LIFO
LOSSES FAILS**

As Wodiuk initially recognized in his opening Lead Plaintiff motion, courts in this

District generally "*emphasize approximate loss in assessing a lead plaintiff movant's financial*

*interest within the meaning of the PSLRA*." *See* Mot. of Luke Joseph Wodiuk for

Consolidation, Appointment as Lead Pl., and Approval of Counsel; Mem. of Points and

Authorities in Supp. at 10 (ECF No. 26).[7] **Wodiuk is correct**. *See e.g., Darwin v. Taylor*, No.

12-CV-01038-CMA-CBS, 2012 WL 5250400, at *2 (D. Colo. Oct. 23, 2012) ("[C]ourts

routinely look to the movant's financial loss as the most significant factor in assessing his

financial interest in the action."); *Ellis v. Spectranetics Corp.*, No. 15-cv-01857-KLM, 2015 WL

---

[5]    Indeed, many courts do not even require family members to make an evidentiary proffer showing that they will function cohesively. *See e.g., Hecla*, 2020 WL 1444934, at *8 (finding that because family group was not a group of "unrelated investors" there was no need for evidence of cohesiveness); *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 579502, at *4 (S.D.N.Y. Mar. 6, 2009) (rejecting need for evidentiary proffer related to group cohesiveness where group consisted of married couple and their son).

[6]    Wodiuk's case authority is inapposite as it only addresses motions by groups of unrelated institutions or individuals with no pre-litigation relationship. The decision in *In re Level 3 Communications, Inc. Securities Litigation*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *4 (D. Colo. May 4, 2009) concerned a group of unrelated investors with no pre-litigation relationship who only submitted joint declaration at the final stage of briefing, which declaration, even if considered by the court, was inadequate. *Galmi v. Teva Pharmaceuticals Industries Ltd.*, 302 F. Supp. 3d 485, 494-96 (D. Conn. 2017) and *In re Petrobras Securities Litigation*, 104 F. Supp. 3d 618, 622-24 (S.D.N.Y. 2015) both also concerned groupings of unrelated individuals and/or entities with no prior relationship.

[7]    Discussing *Lax v. First Merchants Acceptance Corp.*, No. 91 C 2715, 1997 WL 461036, at *4 (N.D. Ill. Aug. 6, 1997).

9259928, at \*2 (D. Colo. Dec. 18, 2015) (same). Wodiuk concedes that the Betebenners have larger LIFO losses than he does. *See* Wodiuk Opp. 2.  In his opposition, however, he has shifted away from that position to argue that only purchases of NewAge stock should determine who has the largest financial interest in this case. Wodiuk Opp. 7.

First, Wodiuk's own case authority makes clear that many courts treat the *Lax* factors in ascending order of importance, with the number of shares purchased as the least important and the losses incurred the most important. *See Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at \*1 (S.D.N.Y. Nov. 29, 2016).  Courts tend to consider the other *Lax* factors when issues arise over the manner of calculating losses. *See e.g., Loftus v. Primero Mining Corp.*, No. CV 16-01304-BRO (RAOx), 2016 WL 11741138, at \*4-5 (C.D. Cal. May 12, 2016) (movant with largest losses had sales prior to relevant disclosure); *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at \*4-6 (S.D. Cal. Oct. 23, 2006) (dispute as to calculation of loss); *Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797(PAC), 2007 WL 7952453, at \*2 (S.D.N.Y. Feb. 21, 2007) (court expressed doubts about movant's losses due to sales before corrective disclosure).[8] Absent such concerns here, and there are none, there is no need to accept Wodiuk's argument (Wodiuk Opp. 6-11) to look beyond LIFO losses for a supposedly more objective measure of financial interest.[9]

---

[8]    Wodiuk's citation to *Pio v. GM Co.*, No. 14-11191, 2014 WL 5421230, at \*2-8 (E.D Mich. Oct. 24, 2014) is likewise inapplicable because there, the court was faced with loss calculations that changed from brief to brief, which is not the case here.

[9]    Wodiuk does not offer legitimate explanation for disregarding the movants' losses for his "more objective" measure other than that the Betebenner's have a "*de minimus*" lead over his asserted losses, but offers no support that this alone is a basis not to consider losses. *See* Wodiuk Opp. 9-11.

Moreover, courts have cautioned that reliance on net shares purchased, as a purportedly more accurate measure of recoverable damages, as advocated by Wodiuk (Wodiuk Opp. 7), is inappropriate where the fraud premium varies during the class period due to the gradual disclosure of the fraud on the market over time such that some transactions resulted in greater losses than others. *See e.g., In re CMED Sec. Litig.*, No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) (rejecting the retained shares methodology where the pleadings alleged partial corrective disclosures).

Such caution is well placed in this case where, as Wodiuk agrees (Wodiuk Opening Br. 3-6), Defendants made numerous partial corrective disclosures between January and October 2022, each of which caused NewAge stock price to drop significantly. *See* Compl. ¶¶ 110-16 (ECF No. 1). Courts have held that where there were multiple disclosures, the analysis of net shares diminishes in importance. *See Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006) ("the fact that [a movant] has prevailed her on the second *Lax* factor (net shares purchased) diminishes in importance upon the realization that, here, partial corrective disclosures were reaching investors on a period basis[.]").[10] The Betebenners and Wodiuk retained all their shares through the Class Period during which there were multiple partial disclosures causing various levels of deflation in the stock price, and therefore Wodiuk's reliance on net shares retained as a prevailing factor is

---

[10]    Wodiuk's authorities confirm this. *See Network Assocs.*, 76 F. Supp. 2d at 1027 (net share analysis "gets into trouble only if the amount of the 'fraud premium' varied over the course of the class period"); *Ruland*, 2006 WL 3746716, at *5-6 (retained shares used only as a way to discount in-and-out losses or gains where there was only one corrective disclosure). None of these cases support application of Wodiuk's net shares retained application here.

inappropriate.[11]

At bottom, in a case such as this one where the movants retained their shares through the end of a Class Period with multiple corrective disclosures, reliance on net shares analysis is inappropriate, there is no argument that total shares predicts losses and therefore, the most important factor is the total loss suffered, which Wodiuk concedes tips in favor of the Betebenners. Thus, the Betebenners possess the greatest financial interest in the instant litigation.

## CONCLUSION

For the foregoing reasons, the Betebenners respectfully request that the Court: (1) consolidate the *Taylor* and *Clifton* Actions; (2) deny the competing motions by Chernyak and Wodiuk for Lead Plaintiff; (3) grant the Betebenners' motion for appointment as Lead Plaintiff; (4) approve their selection of the Faruqi Firm as Lead Counsel; and (5) grant such other relief as the Court may deem just and proper.

Dated:  March 13, 2023

Respectfully submitted,

By: s/ James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (application for admission forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: jwilson@faruqilaw.com

---

[11] Wodiuk claims a larger number of total shares purchased, but he offers no argument or analysis as to how or why this supports his claim to a larger financial interest and no case law examining this factor. Further, as Wodiuk concedes, the Betebenners lead in both total losses and net funds expended. *See* Wodiuk Opp. 10-11.

11

E-mail: rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiffs Damian Betebenner and Cigdem Betebenner and [Proposed] Lead Counsel and Local Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I, James M. Wilson, Jr., hereby certify that on March 13, 2023, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

s/ James M. Wilson, Jr.
James M. Wilson, Jr.

1