**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03161-DDD-JPO

DENNIS CLIFTON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

      Plaintiff,

  v.

BRENT WILLIS, FRED COOPER, TIM
HAAS, REGINALD KAPTEYN, ALICIA
SYRETT, GREGORY GOULD, CHUCK
ENCE, CARL AURE, KEVIN MANION, ED
BRENNAN, AMY KUZDOWICZ, GREG
FEA, and CRAIG THIBODEAU,

      Defendants.

---

**DEFENDANT BRENT WILLIS'S OPPOSITION TO
MOVANT IGOR CHERNYAK'S MOTION FOR DISCOVERY**

---

Defendant Brent Willis ("Willis"), by and through undersigned counsel, respectfully submits this Opposition to Movant Igor Chernyak's ("Movant") Motion for Discovery (the "Motion"), filed in the above-captioned matter on January 26, 2024.  (ECF No. 55).

**I.    INTRODUCTION**

The Motion is a brazen attempt to circumvent the mandatory discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "Reform Act").  Congress created the Reform Act to stop securities plaintiffs—like Movant here—from filing frivolous complaints "in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint." S. Rep. 104-98, at 14 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 693; H.R. Rep. No. 104-369 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 736.  As such, the Reform Act mandates that "all discovery and other proceedings" in putative securities class actions "***shall be***

*stayed*" until the court determines the sufficiency of the complaint. 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). As currently pled, this action will not survive dismissal, and Movant's bid for documents is a thinly veiled attempt to do precisely what Congress said he cannot: use discovery in hopes of finding a supportable claim. Further, he is making this request *without* having been selected to lead the putative class, *before* the Court has assessed the merits of the pleadings, and *well in advance* of the Court's determination as to whether discovery will *ever* be appropriate. This is improper for several reasons.

The Motion presupposes—incorrectly—that Movant has standing to seek discovery on behalf of the putative class. However, only a Court-appointed lead plaintiff can dictate litigation strategy and pursue the interests of the putative class. The Court has not appointed a lead plaintiff and Movant therefore lacks standing to seek the requested relief. Even if he had standing, Movant fails to demonstrate the "extraordinary circumstances" required to lift the Reform Act's discovery stay. Courts can *only* lift the stay when a lead plaintiff's request is "particularized" and "necessary to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B). Movant has shown neither. "Undue prejudice" is reserved for extreme situations where there is an imminent probability that, without discovery, the putative securities class will be unable to recoup their purported losses. But the only justifications Movant furnishes are NewAge's bankruptcy and the ongoing litigation the Securities and Exchange Commission ("SEC") commenced against Mr. Willis. These are not sufficient. And, in all events, his request is not rendered with any degree of particularity. Rather, it is an indiscriminate demand for the *entire evidentiary record* in the SEC litigation. Courts consistently reject requests of this ilk, and this Court should do the same.

For these reasons and those set forth below, the Court should deny Movant's ill-conceived attempt to end-run the Reform Act's mandatory discovery stay.

2

## II.  BACKGROUND

### A.  NewAge and Mr. Willis.

This case concerns NewAge, Inc. ("NewAge"), which was a Delaware corporation that developed and sold health and nutritional products via a network of domestic and international retailers and distributors.  Compl. ¶ 26 (Dkt. No. 1).  Mr. Willis served as a director and CEO of NewAge between 2016 and January 10, 2022. *Id.* ¶ 10.  On August 30, 2022, several months after Mr. Willis separated from NewAge, the company met the fate of many startups and filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  *Id.* ¶ 27.

### B.  The SEC's Investigation into NewAge and the Enforcement Action Against Mr.  Willis.

In 2019, the SEC commenced an investigation into NewAge regarding potential violations of the Securities Act of 1933 ("Securities Act") and the Securities and Exchange Act of 1934 ("Exchange Act").  The SEC concluded its investigation approximately three years later, announcing on October 19, 2022 that it had reached a settlement with NewAge and instituted a cease-and-desist order against the company for alleged violations of the federal securities laws.  *In the Matter of NewAge, Inc.*, Release No. 96106, available at https://www.sec.gov/files/litigation/admin/2022/33-11120.pdf.  The SEC's order alleged that the company had disseminated false and misleading statements about NewAge's relationships with certain retailers and distributors and its anticipated portfolio of CBD-infused beverages.  *Id.* NewAge did not admit any wrongdoing in connection with the settlement.  *Id.*  The SEC also filed a civil complaint against Mr. Willis on October 18, 2022, alleging substantially the same claims leveled against NewAge.  *SEC v. Brent David Willis*, 22-cv-02744 (D. Colo. 2022).  Mr. Willis vigorously denies the SEC's claims.

C.    **The Putative Securities Class Action.**

On December 7, 2022, plaintiff Dennis Clifton commenced this putative securities class action against Mr. Willis and other former officers and directors of NewAge.[1]  *See generally* Compl.    His complaint—which remains the operative complaint—alleges that the named defendants, including Mr. Willis, violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Rule 20(a) of the Exchange Act by making materially false and misleading statements about NewAge's agreements with certain distributors and retailers, NewAge's anticipated line of CBD-infused beverages, and the strength of its internal controls over financial reporting.[2]  The complaint is undeniably weak and uses a compendium of pleading tactics courts frequently reject—puzzle-pled claims, threadbare speculation, and wholesale reliance on "information and belief"—to advance claims that, Mr. Willis respectfully submits, are entirely meritless.    On February 6, 2023, several putative NewAge stockholders, including Movant, filed motions seeking appointment as lead counsel.  ECF Nos. 18, 19, 26.  The Court has not yet appointed a lead plaintiff and, pursuant to the Reform Act, discovery is automatically stayed.

III.    **ARGUMENT**

A.    **Movant Lacks Standing to Pursue Relief on Behalf of the Putative Class.**

Movant lacks standing to seek relief from the Reform Act's discovery stay on behalf of the putative class.  Where, as here, a cause of action is premised on federal law, litigants only have standing if Congress intended to confer it.  *Lexmark Int'l., Inc. v. Static Control Components, Inc.*,

---

[1] No defendant, including Mr. Willis, has been properly served in this action.  Mr. Willis does not concede that his response to the Motion constitutes acceptance of service of the operative complaint or that it waives his right to any present or future challenge he may have to the sufficiency of service in this matter.  Mr. Willis expressly reserves all rights in that regard.

[2] Another plaintiff filed a virtually identical putative class action complaint captioned *Taylor v. Willis, et al.*, No. 23-cv-00217-RMR-STV (D. Colo. 2023) on January 17, 2023.  That action is stayed.

572 U.S. 118, 128 (2014).  Although the Reform Act allows any putative stockholder to seek appointment as lead plaintiff, it limits control over a securities class action to the investor—or small group of investors—a court selects to lead the putative class.  *See* H.R. Rep. No. 104-369, at 32 (1995) (the Reform Act "giv[es] control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer").

Movant is not the lead plaintiff here.[3]  Although he tries to gloss over this fact by referencing his pending motion for *appointment* as lead plaintiff, his interest in serving in that capacity does not empower him to act on behalf of the putative class.  Movant has conceded this.  In fact, in a brief he filed with this Court, Movant stated that "[h]aving not yet been appointed as the lead plaintiff, neither Mr. Chernyak nor any other movant has been able to effect service on the defendants."  ECF No. 49 at 3.  If Movant's status precludes him from effecting service, it certainly forecloses any right to seek relief from the discovery stay on behalf of the putative class.[4]  Further, in each of the cases the Motion cites, the party seeking to lift the Reform Act's discovery stay had been appointed lead plaintiff and was not, as is the case here, a mere *candidate* for lead plaintiff.  Mot. at 2-3; *see, e.g.*, *In re Spectranetics Corp. Sec. Litig.*, 2009 WL 3346611, at *1 (D. Colo. Oct. 14, 2009); *In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *1 (S.D.N.Y. Nov. 16, 2009); *In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d 14, 15 (D.D.C. 2008); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 301

---

[3] Although Rule 23 of the Federal Rules of Civil Procedure allows the Court to "designate interim counsel to act on behalf of a putative class," the Court has not designated anyone, let alone Movant's counsel, as "interim counsel" to act in any capacity on behalf of the putative class.  *See* Fed. R. Civ. Proc. 23(g).

[4] Mr. Willis takes no position on Movant's pending motion for appointment as lead plaintiff.  However, he respectfully notes that other movants have raised arguments about his adequacy to represent the putative class.  *See* ECF Nos. 33, 37.

(S.D.N.Y. 2002).[5]  Mr. Willis's counsel is unaware of any cases in which a court allowed a stockholder other than lead plaintiff to obtain the extraordinary relief Movant is requesting, and Movant, for his part, has offered none.

> **B.    Movant Has Not Demonstrated Exceptional Circumstances Justifying His Request to Lift the Reform Act's Mandatory Discovery Stay.**

Even if Movant had standing (he does not), his request is entirely baseless.  Congress enacted the Reform Act to combat a rising tide of "nuisance filings, targeting of deep-pocket defendants, [and] vexatious discovery requests" by private securities plaintiffs.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320 (2007).  To curtail these abuses, Congress sought to prevent securities plaintiffs from using their complaints as leverage to "conduct discovery in the hopes of finding sustainable claims not alleged in the [initial] complaint."  *See Ave. Cap. Mgmt. II, LP v. Schaden*, No. 14-cv-02301-PAB-KLM, 2015 WL 758521, at *2 (D. Colo. Feb. 20, 2015). The Reform Act accomplishes this goal by imposing a mandatory stay of discovery until a court determines whether the complaint has stated a viable claim.  15 U.S.C. § 78u-4(b)(3)(B); *see* S. Rep. No. 104-98, at 14 (1995) (noting that the discovery stay allows courts to determine the legal sufficiency of a securities complaint before forcing costly discovery).  As a result, the Reform Act creates "a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint *does* state a claim under the securities laws."  *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (emphasis in original).  To rebut this presumption, a lead plaintiff must show that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice."  15 U.S.C. § 78u-4(b)(3)(B).

---

[5] *See also Kaplan v. S.A.C. Cap. Advisors, L.P.*, 947 F. Supp. 368, 370 (S.D.N.Y. 2013) (granting motion to lift the Reform Act's stay in a consolidated case in which the newly-appointed lead plaintiff expressly supported the motion by the co-lead plaintiffs in the original, first-filed action, to lift the stay).

Movant's attempt to override Congress's unambiguous policy choice is unsupported by the facts, his arguments, and the case law upon which he relies.

### 1. The Putative Class Does Not Face Undue Prejudice.

Movant intones the same well-tread argument for "undue prejudice" that numerous courts have heard and rejected. He contends that "discovery is underway or will [be] commencing imminently" in the SEC litigation and claims that because NewAge is in bankruptcy proceedings, the putative class is "vying [with the SEC] for a piece of a limited pie," and will be "disadvantage[d]" without access to the SEC's evidentiary record.[6] Mot. at 2-3. What Movant does not, and cannot, explain is why the putative class would be unduly prejudiced at this early juncture when he does not allege that there are any settlement discussions on the horizon and the only "disadvantage"—*if* the case survives dismissal—is the outcome Congress plainly decided was *not* unduly prejudicial: delay.

The fact that the SEC has received discovery does not, standing alone, create the "undue prejudice" needed to lift the Reform Act's mandatory stay. *See, e.g.*, *Spectranetics*, 2009 WL 3346611, at \*4*; Sisk v. Guidant Corp.*, No. 05-1658, 2007 WL 1035090, at \*4 (S.D. Ind. Mar. 30, 2007) ("[T]he fact that Defendants have already produced the requested documents to governmental entities does not, in our view, create undue prejudice for Plaintiffs."); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (same). This is true regardless of whether the operative complaint alleges "the same Rule 10b-5 claim" the SEC has brought against Mr. Willis. *See* Mot. at 3. In *Spectranetics*, for example, the court considered, and rejected, the lead

---

[6] Movant does not, and cannot, assert that the requested discovery is needed to preserve evidence. "[O]nce the documents are in the hands of a regulatory or law enforcement agency, they are no longer subject to loss or destruction." *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007).

plaintiff's request to lift the discovery stay to access documents produced to "five different governmental entities." *Id.* at \*3. The court concluded that notwithstanding the "overlap between the Regulators' investigations and the basis for [the securities] Plaintiff's claims," lead plaintiff's assertions that it would be "unable to make strategic decisions" without the documents was neither "unique" nor "extraordinary" and thus not "enough to amount to undue prejudice." *Id.* at \*3-4. Numerous other courts have reached the same conclusion. *See, e.g.*, *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583(WHP), 2006 WL 1738078, at \*1 (S.D.N.Y. June 26, 2006) (denying request to lift discovery stay for documents produced to the SEC even though the SEC's inquiry was "based on facts similar to those alleged" in the securities litigation); *In re Odyssey Healthcare, Inc. Sec. Litig.* 04-cv-0844-N, 2005 WL 1539229, at \*2 (N.D. Tex. June 10, 2005) (denying lead plaintiff's request for documents produced to the DOJ, even though the DOJ had "focused on most of the same facts and circumstances" as the securities litigation).

Even if he were entitled to the evidentiary record in the SEC proceeding (he is not), Movant does not show why it is "improper or unfair, given the circumstances of the case," to delay such production until after the mandatory stay expires. *See Spectranetics*, 2009 WL 3346611, at \*4. Delay in these early stages of a putative securities class action is not unduly prejudicial. In fact, the Reform Act reflects Congress's determination that delay is *necessary* to prevent abuse of the federal securities laws. Put simply, Congress has taken the view that it is more important for securities litigants to plead nonfrivolous claims with the information at hand than it is for them to be on equal footing with litigants in parallel actions who may have more information. *See In re Refco, Inc.*, No. 05 Civ. 8626(GEL), 2006 WL 2337212, at \*2 (S.D.N.Y. Aug. 8, 2006) ("[D]elay is an inherent part of every stay of discovery. . . . The discrepancy between [actions under the Reform Act] and other actions is not evidence of undue prejudice, but rather is evidence of

8

Congress's judgment that [securities] actions should be treated differently."); *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001) ("Prejudice caused by the delay inherent in the [Reform Act's] discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper or unfair.  Rather, it is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation.").  Accordingly, to establish "undue" prejudice stemming from "delay," a lead plaintiff must show that "delaying discovery would be improper or unfair" based on "***exceptional circumstances*** specific to [the] case," not "conclusory allegation[s] about being delayed or disadvantaged in relation to other parties." *Spectranetics*, 2009 WL 3346611, at \*4 (emphasis added).

To muster a false sense of urgency, Movant points to NewAge's bankruptcy, suggesting that the putative class needs the SEC's evidentiary record to meaningfully participate in settlement discussions that he does not contend either have taken or will take place.  However, a company's bankruptcy only contributes to a finding of "undue prejudice" if: (1) there is an *imminent* threat that litigants in other actions will "exhaust what remains of the [company's] financial resources before [the securities] plaintiff[s] could obtain judgment" *and* (2) "discovery is necessary to enable [the securities] plaintiffs to develop litigation or settlement strategy in a rapidly shifting landscape."  *See Spectranetics*, 2009 WL 3346611, at \*4-5; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 11796891, at \*3 (N.D. Cal. June 23, 2016) (refusing to lift the discovery stay because lead plaintiff was not "trying to reach a settlement agreement without information that would allow it to fully evaluate its claims and arguments"); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130-31

(S.D.N.Y. 2003) (denying request to lift the stay because there was no evidence the putative class "would be left without remedy" in settlement discussions).[7]

Those were the extreme circumstances present in the primary case Movant uses to support his request—*In re WorldCom*.  Mot at 3.  In *Worldcom*, the bankruptcy court ordered the insolvent company to conduct global settlement negotiations in several cases, including pending ERISA and securities matters involving the company and its affiliates.  *In re WorldCom,* 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).  The securities plaintiffs sought to lift the Reform Act's discovery stay, arguing that because the ERISA plaintiffs had obtained discovery, they needed the same documents to meaningfully participate in settlement discussions.  *Id.*  Acknowledging the "unique circumstances" at play, the court agreed to partially lift the stay, finding that the securities plaintiffs faced a "very real risk" that the defendants would "no longer have anything or at least as much to offer" following the global settlement discussions and, further, that the lead securities plaintiffs could be "severely disadvantaged" if they participated in the discussions without the benefit of the information other litigants had.  *Id.* at 306.

These extreme circumstances are not present here.  Movant does not contend that Mr. Willis is currently in settlement discussions with the SEC, let alone that such discussions would necessarily involve a penalty diminishing the proverbial "pie."  *See* Mot. at 3.  In fact, he does not contend that *any* defendant named in this matter is presently in settlement discussions that could impact the putative class.  Further, to the extent Movant is trying to argue "undue prejudice" based on the unfounded suspicion that Mr. Willis—or indeed any named defendants—may, eventually, enter into settlement discussions that could impact this case, that does not suffice to meet his

---

[7] *See Refco*, 2006 WL 2337212, at *2-3 ("Plaintiffs' inability to gather evidence for settlement negotiations" was unduly prejudicial); *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 489 (S.D.N.Y. 2009) (same).

burden. *See Vivendi*, 381 F. Supp. 2d at 130-31 (a suspicion of a potential pending settlement does not qualify as "undue prejudice").  As at least one court has explained: "[I]f the stay of discovery mandated by the [Reform Act] were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the 'undue prejudice' provision would essentially eviscerate the stay requirement. That is not what Congress intended."  *See In re Refco, Inc.*, 2006 WL 2337212, at *3.

Accordingly, Movant has not articulated the exceptional circumstances needed to show undue prejudice and the Court's inquiry should end there.[8]

### 2.      Movant's Request for Discovery Is Not Particularized.

The Motion should also be denied because it does not request particularized relief.  A lead plaintiff's request is only particularized if it satisfies two factors.  First, it must "specify exactly what types of documents" it is seeking.  *Spectranetics*, 2009 WL 3346611, at *3.  Second, it must "show that particularized discovery is necessary to remedy the [claimed undue prejudice]."  *Sarantakis v. Gruttaduaria*, No. 02 C 1609, 2002 WL 1803750, at *2 (N.D. Ill. Aug. 5, 2002).

Courts routinely reject blanket requests for "all" documents produced in related or overlapping actions because they lack particularity.  In *Spectranetics*, for example, the court rejected lead plaintiff's request for "all" documents produced to government regulators, reasoning that even if some of the documents were relevant to the securities action, the request was far "too

---

[8] Unable to show the extraordinary circumstances required to lift the Reform Act's mandatory discovery stay, Movant attempts to shift the inquiry by arguing that his request is not unduly burdensome.  Mot. at 4.  "[M]inimal burden to the defendants" does not "independently justify lifting [the Reform Act's] stay."  *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. C-06-03894 RMW, 2007 WL 1545194, at *3 (N.D. Cal. May 29, 2007); *Ross v. Abercrombie & Fitch Co.*, No. 05-cv-0819, 2006 WL 2869588, at *2 (S.D. Ohio Oct. 5, 2006) (same). In any event, Movant is wrong.  Producing what amounts to plenary discovery at this early stage of the proceedings *would* be unduly burdensome because the Court has not determined there is a viable cause of action (and Mr. Willis respectfully submits that there is none).

broad to be sufficiently particularized." *Spectranetics*, 2009 WL 3346611, at *3, *10. Similarly,

in *Fannie Mae*, the court rejected lead plaintiff's "voluminous and possibly irrelevant" request for

documents produced to regulators because it did not specify what, within the vast set of materials,

the putative class needed to avert undue prejudice. *Fannie Mae*, 362 F. Supp. 2d at 39; *see Am.*

*Funds*, 493 F. Supp. 2d at 1107 (denying motion to lift the stay for because lead plaintiff did not

identify "specific categories or types of documents sought or how the documents sought will be

relevant to the claims [lead plaintiffs] intend to assert in this case").[9]

There is likewise nothing "limited" about Movant's request here. Rather, his Motion

ignores the overwhelming weight of case law and suggests that specifying a universe of

documents—however large and undifferentiated—meets his tall burden. But asking for ***all***

***documents provided to the SEC*** during its investigation of NewAge and ***all documents the SEC***

***will receive*** with respect to its enforcement action against Mr. Willis, including "documentary

discovery and deposition testimony," is hardly defined and it is certainly not particularized. *See*

Mot. at 3, 4. Nor, for that matter, is it tailored to remedy his claims of "undue prejudice." Instead,

the Motion appears to be indiscriminately seeking documents aimed at crafting a more "sustainable

claim" than the one currently pending before the Court. *See Spectranetics*, 2009 WL 3346611, at

*9 (quoting S. Rep. No. 104-98, at 14 (1995)). That is improper and the Court should deny the

Motion.

---

[9] *See also N.Y. State Tchrs. Ret. Sys.*, No. CV 07-5766 FMC (FFMx), 2009 WL 10675265, at *2
(C.D. Cal. Nov. 5, 2009) (request was not particularized because it sought a universe of documents
that "may be extremely large and [] entirely undifferentiated"); *Faulkner v. Verizon Commc'ns,*
*Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) (request for 45,000 pages of documents was not
particularized).

**IV.    CONCLUSION**

For the foregoing reasons, Mr. Willis respectfully requests that the Court deny Movant Igor

Chernyak's Motion for Discovery, filed in the above-captioned matter on January 26, 2024.  (ECF

No. 55).

DATED:  February 16, 2024                Respectfully submitted,

                                       /s/ Michael J. Diver

KATTEN MUCHIN ROSENMAN LLP    Michael J. Diver
525 W. Monroe Street               Michael J. Lohnes
Chicago, Illinois 60661           michael.diver@katten.com
Telephone:  312.902.5200         michael.lohnes@katten.com

                                       *Attorneys for Defendant Brent Willis*

14

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that the foregoing *Defendant Brent Willis's Opposition to Movant Igor*

*Chernyak's Motion for Discovery* complies with the type-volume limitation set forth in Judge

Domenico's Practice Standard III(A)(1).

/s/ Michael J. Diver

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on February 16, 2024, he caused the

foregoing *Brent Willis's Opposition to Movant Igor Chernyak's Motion for Discovery* to be filed

using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Michael J. Diver