IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge James P. O'Hara**

Civil Action No. 22-cv-03161-DDD-JPO

DENNIS CLIFTON, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

    Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT, GREGORY
GOULD, CHUCK ENCE, CARL AURE, KEVIN
MANION, ED BRENNAN, AMY KUZDOWICZ, GREG
FEA, and CRAIG THIBODEAU,

    Defendants.

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on three related motions:

1. Motion of Igor Chernyak ("Mr. Chernyak") for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. 18);

2. Motion of Damian Betebenner and Cigdem Betebenner (collectively the "Betebenners") for: (1) Consolidation of the Related Actions; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Plaintiff's Selection of Lead Counsel (Doc. No. 19); and

3. Motion of Luke Joseph Wodiuk ("Mr. Wodiuk") for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel (Doc. No. 26).

Upon careful review of the motions and associated briefing, the applicable case law, and the entire case file, the Court **RECOMMENDS**[1] that the Betebenners' Motion be **GRANTED**,

---

[1] Because the Motions include requests to consolidate—which this District "consistently treat[s]" as dispositive—and because questions of consolidation must be considered prior to lead plaintiff

consolidating this action with No. 23-cv-00127-RMR-STV and appointing Damian Betebenner and Cigdem Betebenner as Lead Plaintiff and their counsel, Faruqi & Faruqi, LLP, as Lead Counsel. The Court further **RECOMMENDS** Mr. Wodiuk's Motion be **GRANTED in part and DENIED in part** and Mr. Chernyak's Motion be **DENIED**. Additionally, Movant Igor Chernyak's Motion for Discovery (Doc. No. 55) is **DENIED**.

## BACKGROUND

The three pending Motions relate to a proposed class action against various current and former executives and board members for NewAge, Inc. ("NewAge" or the "Company"), a Delaware corporation based in Utah that "purports to produce and sell various beverages and other health products." (Doc. No. 1 at ¶ 2, 10–22, 25.) The Class Action Complaint for Violation of the Federal Securities Laws, brought by Dennis Clifton on behalf of a proposed class "of all persons other than defendants who purchased the securities of NewAge for the time period January 18, 2018 through and including October 18, 2022," alleges Defendants made various false or misleading statements and failed to disclose material adverse facts about the Company's business during the relevant period. (*Id.* at 1; *see generally id.*) Specifically, it is alleged

> (1) [though they claimed otherwise] the Company and Defendants had no relationship with the military or FamilyMart; (2) the Company and Defendants overstated the business agreements that they did have; (3) the Company and Defendants never produced or sold a proprietary CBD beverage; (4) the Company lacked adequate internal controls; (5) as a result the Company had a heightened risk of regularly [sic] scrutiny and ultimately subject to an SEC investigation and action; and (6) as a result of the foregoing, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

---

or lead counsel motions under the Private Securities Litigation Reform Act, the Court issues this portion of its decision as a recommendation rather than an order. *Crocs, Inc. v. Joybees, Inc.*, No. 21-CV-02859-GPG-SBP, 2023 WL 8851997, at *4 n. 3 (D. Colo. Dec. 8, 2023); *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-CV-124-WJM-SKC, 2019 WL 3714798, at *2 (D. Colo. Aug. 7, 2019) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)).

(*Id.* at ¶ 108.) These issues were allegedly exposed via corrective disclosures over an extended period in 2022.

Also pending in this District is a related class action, *Taylor v. Willis, et al.*, No. 23-cv-00127-RMR-STV ("*Taylor*"). That case is brought against the same defendants on behalf of a proposed class of persons, other than said defendants, who purchased NewAge stock from January 18, 2018, through and including October 18, 2022. *See Taylor* ECF 1.

## DISCUSSION

### I. Consolidation

The Betebenners and Mr. Wodiuk seek the consolidation of this action with the *Taylor* action. (*See* Doc. Nos. 19; 26.) Additionally, though he apparently does not join it, Mr. Chernyak indicates he is not opposed to this request. (*See* Doc. No. 29 at n. 1.)

"When motions to consolidate and motions for appointment of lead counsel are pending simultaneously in a [Private Securities Litigation Reform Act ("PSLRA")] action, the PSLRA directs courts to first decide the motion to consolidate." *Oregon Laborers Emps. Pension Tr. Fund*, 2019 WL 3714798, at *2 (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may ... consolidate the actions." Fed. R. Civ. P. 42(a)(2). The decision whether to consolidate actions involving common questions of law or fact is committed to the sound discretion of the district court. *Shump v. Balka,* 574 F.2d 1341, 1344 (10th Cir. 1978). The purpose of Rule 42(a) is "to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." *Breaux v. American Family Mut. Ins. Co.,* 220 F.R.D. 366, 367 (D. Colo. 2004) (quoting 9 C. Wright & A. Miller, Federal Practice & Procedure § 2381 at 427 (2nd ed.

1995)). The Court considers "both judicial economy and fairness to the parties in exercising its discretion under Rule 42(a)." *City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*, No. 12-CV-02164-PAB-KLM, 2013 WL 1677553, at *1 (D. Colo. Apr. 17, 2013) (citing *Harris v. Illinois–California Express, Inc.,* 687 F.2d 1361, 1368 (10th Cir. 1982)).

Here, both cases in question were filed against the same set of defendants, concern the same facts, and relate to the same overarching allegation: Defendants made various false or misleading statements and failed to disclose material adverse facts regarding NewAge's business, artificially inflating the value of the company's securities and damaging the putative class. In short, the cases share a "common question of law or fact" under Rule 42, and thus are well disposed to consolidation. Moreover, consolidation will avoid wasteful or duplicative litigation and promote the "secure the just, speedy, and inexpensive determination" of these controversies. FED. R. CIV. P. 1. Accordingly, the Court recommends this matter be consolidated with *Taylor v. Willis, et al.*, No. 23-cv-00127-RMR-STV.

## II.     Appointment of a Lead Plaintiff

The PSLRA directs a court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). "The PSLRA establishes a rebuttable presumption that the 'most adequate plaintiff' is a person or group of persons that (1) either filed the complaint or made a motion in response to a notice, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23 ("Rule 23"). *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546-RM-MEH, 2016 WL 660133, at *3 (D. Colo. Feb. 18, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

"[O]nly two of the four requirements of Rule 23(a)—typicality and adequacy—impact the analysis of the lead plaintiff issue." *Wolfe v. AspenBio Pharma, Inc.*, 275 F.R.D. 625, 628 (D. Colo. 2011). "Typicality refers to the moving party's claims or defenses being typical of the claims or defenses of the purported class." *Id.* (citing Fed. R. Civ. P. 23(a)(3)). "Adequacy looks at two issues: (1) whether the lead plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the lead plaintiffs and their counsel will prosecute the action vigorously on behalf of the purported class." (*Id.* (citing *Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)). The process of establishing a presumptive lead plaintiff is not adversarial, and initial "Rule 23 determination[s] should be based on only the movant's pleadings and declarations." § 4:34. *Adequacy of representation—"Lead plaintiff" procedure in securities law cases*, 1 McLaughlin on Class Actions § 4:34 (20th ed.) (citing *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021)). However, "[t]he PSLRA's presumption may be rebutted by a showing that the 'presumptively' most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Molson Coors Brewing Co. Sec. Litig.*, No. 19-cv-00455-DME-MEH, 2019 WL 10301639, at *1 (D. Colo. Oct. 3, 2019) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)).

    **a. The Presumptive Lead Plaintiff**

The presumptive lead plaintiff is Mr. Chernyak. Mr. Chernyak is retired, lives in the United Arab Emirates, and has been investing in securities for approximately five years. (Doc. No. 18-5 at 2.) Mr. Chernyak's purported net losses are $3,083,745.56. (Doc. No. 18 at 7.)

It is undisputed Mr. Chernyak timely filed a motion to be appointed lead plaintiff in response to a notice of this action. (*See* Doc. No. 18.) Further, the opposing Movants do not

5

dispute Mr. Chernyak has the largest financial interest of any Movant. (*See* Doc. No. 32 ("[T]he movant alleging the largest financial interest ... is Chernyak."); Doc. No. 33 (declining to challenge Mr. Chernyak's motion on "largest financial interest" grounds)). Finally, Mr. Chernyak's motion and declarations make a prima facie showing of typicality and adequacy. Mr. Chernyak's claims are typical of the whole class—arising from the purchase of allegedly artificially inflated NewAge securities—and Mr. Chernyak seeks substantially the same relief, based on substantially the same legal theories as the rest of the class. (*See* Doc. Nos. 18-2; 18-3; 18-5.) Further, Mr. Chernyak has retained competent and experienced counsel, Levi & Korsinsky, LLP, with extensive experience in these types of securities class actions. (*See* Doc. No. 18-6.) Mr. Chernyak also declared he is "motivated to litigate vigorously, efficiently, and to the best of [his] ability to maximize the potential recovery," and there have been no reported conflicts between Mr. Chernyak's interests and the interests of other members of the class. (Doc. No. 18-5 at ¶ 3.)

Accordingly, because he has the largest financial interest and otherwise satisfies a preliminary showing of typicality and adequacy, Mr. Chernyak may invoke the rebuttable presumption of lead plaintiff.

### b. Rebuttal Evidence

In opposition to Mr. Chernyak's Motion, the Betebenners present evidence attempting to rebut his status as the presumptive lead plaintiff. Specifically, the Betebenners submit evidence of the following:

- In 1996, Mr. Chernyak was convicted of conspiracy and the collection of extension of credit by extortionate means in the state of Washington and sentenced to 57 months in prison. (*See* Doc. No. 33 at 3–4; Doc. No. 34-1.)

- In the 1996 criminal proceeding, Mr. Chernyak was tried under the name "Gary Chern." (Doc. No. 33 at 3.) The criminal proceeding's docket sheet indicates

6

- "Igor Chernyak" and "Fedor" were aliases used by Chern. (Doc. No. 34-1.) Mr. Chernyak's counsel has confirmed that "Gary Chern" and Mr. Chernyak are the same person. (Doc. Nos. 34-1; 34-2 at 3.)

- According to his 1995 naturalization application, Mr. Chernyak was born in Russia. (Doc. No. 39-1 at 14.) His application says his given name is Gary Chern, but the name on his alien registration card was Igor Chernyak. (*Id.*)

- At the sentencing phase of his criminal proceeding, Mr. Chernyak's attorney submitted an unsigned stipulation to deportation upon Mr. Chernyak's release from prison. (Doc. No. 39-2.) It is unclear whether Mr. Chernyak was deported following his release.

"A class representative, once designated by the Court, is a fiduciary for the absent class members." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998). "[H]onesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004). While "[i]t is well established that a criminal history alone does not defeat an individual's adequacy as a class representative," "courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates that individual's ability to serve as a fiduciary." *Scuderi v. Mammoth Energy Servs., Inc.*, No. CIV-19-522-SLP, 2019 WL 4397340, at *5 (W.D. Okla. Sept. 13, 2019); *Silverberg v. DryShips, Inc.*, No. 17-CV-4547, 2018 WL 10669653, at *10 (E.D.N.Y. Aug. 21, 2018); *see Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *5 (N.D. Cal. Apr. 28, 2016) ("There is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty.").

Though Mr. Chernyak was convicted of serious crimes, the offenses alone do not require a finding of inadequacy, given their age and lack of connection to this action. However, Mr. Chernyak's criminal history is accompanied by other factors that give the Court serious doubt about his trustworthiness and ability to act adequately as a fiduciary for the putative class. Most

7

significantly, Mr. Chernyak has displayed a lack of candor with the Court regarding his past conviction. Mr. Chernyak's Motion and attached documents do not mention or reference his criminal history. If not for the Betebenners' investigation, the Court may have never learned of Mr. Chernyak's past legal issues. Indeed, it's unclear to the Court whether Mr. Chernyak's counsel was aware of his history when the Motion was filed. The Court finds this troubling. Indeed, in similar circumstances, other courts have found a movant's lack of candor about a past conviction disqualifying. *Compare Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (saying that a movant's past "offenses alone may not have resulted in finding him inadequate to serve as a class representative, given that they occurred over 26 years ago," but ultimately denying his motion due to "serious concerns about [the movant's] candor to his attorney and this Court regarding his misconduct"), *with Chupa v. Armstrong Flooring, Inc.*, No. 2:19-cv-09840, 2020 WL 1032420, at *5 n.4 (C.D. Cal. Mar. 2, 2020) (appointing a lead plaintiff with a prior bank robbery conviction while approvingly noting the movant "acknowledges [the conviction] on the first page of his motion").

Moreover, the Court is concerned by other elements of Mr. Chernyak's lack of candor. For example, Mr. Chernyak's use of aliases—and lack of disclosure regarding the same—raises further questions about his ability or desire to be straightforward with the putative class or the Court. Mr. Chernyak's reply brief confirms his name is now "Igor Chernyak" and argues his "past use of the name 'Gary' is completely inconsequential and has no bearing on this litigation." (Doc. No. 36 at 8.) But Mr. Chernyak's failure to disclose the apparent name change in his Motion and seeming caginess with the Betebenners as to whether he is Gary Chern or Igor Chernyak only adds to the Court's concern about his ability to serve as lead plaintiff. (*See* Doc. No. 18; Doc. No. 38 at 2 (noting Mr. Chernyak's counsel had not confirmed Mr. Chernyak's

8

current legal name in response to the Betebenners' request); Doc. No. 38-2 (emails between the Betebenners' counsel and Mr. Chernyak's counsel).

"As a fiduciary for the class, [Mr. Chernyak] would be required to adhere to the highest standards of honesty and integrity." *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978). Based on the evidence presented by the Betebenners, the Court concludes there is a substantial risk Mr. Chernyak lacks the requisite characteristics or credibility to serve as the putative class's fiduciary in this matter. Therefore, the Betebenners have rebutted Mr. Chernyak's presumption as lead plaintiff.

### c. The Betebenners as Lead Plaintiffs

The Court is left with two competing Movants, the Betebenners and Mr. Wodiuk. After review, the Court determines that the Betebenners should serve as lead plaintiffs.

#### i. Next Largest Financial Interest

The Betebenners and Mr. Wodiuk first dispute who has the second largest financial interest in this action after Mr. Chernyak. "The PSLRA does not specify a method for calculating the largest financial interest when considering appointment of a Lead Plaintiff." *Mariconda v. Farmland Partners Inc.*, No. 18-CV-02104-DME-NYW, 2018 WL 6307868, at *3 (D. Colo. Dec. 3, 2018) (citing *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015)). However, "there appears to be a clear weight of authority favoring the four-factor test applied in *Lax v. First Merchants Acceptance Corp.*, Nos. 97-Civ.-2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)." *Id.* The *Lax* test considers 1) the total number of shares purchased during the class period; 2) the number of net shares purchased during the class period; 3) the total net funds expended during the class period; and 4) the approximate financial losses suffered. *See* 7 *Newberg on Class Actions* § 22:42 (5th ed.). Prong 4, the financial losses

9

suffered, is generally considered "the most significant factor" in the analysis; however, "each factor merits serious consideration." *Subramanian v. Watford*, No. 20-CV-02652-CMA-STV, 2021 WL 1697147, at *2 (D. Colo. Apr. 29, 2021); § 4:34. *Adequacy of representation—"Lead plaintiff" procedure in securities law cases*, 1 McLaughlin on Class Actions § 4:34 (20th ed.).

The Betebenners and Mr. Wodiuk concur on the following *Lax* test computations:

| Movant(s)[5] | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Losses |
|---|---|---|---|---|
| Damian and Cigdem Betebenner | 71,000 | 71,000 | $494,646.25 | -$494,549.53 |
| Luke Joseph Wodiuk | 305,665.38 | 305,665.38 | $455,282.00 | -$454,865.00 |

(Doc. No. 33 at 12; *see* Doc. No. 32 at 2.)

In his briefing, Mr. Wodiuk acknowledges the Betebenners suffered greater losses but emphasizes that it's appropriate to review the *Lax* factors "holistically." (Doc. No. 32 at 11.) Specifically, Mr. Wodiuk argues the first three *Lax* factors—shares purchased, funds expended, and net shares purchased (shares retained)—provide "a more objective assessment a lead plaintiff's financial interest." (*Id.* at 6.) Mr. Wodiuk also emphasizes that the Betebenners' losses and net funds expended are fairly close to his (about an 8% difference), whereas he purchased and retained significantly more shares than the Betebenners (about a 330% difference). (*Id.* at 9–10.) Mr. Wodiuk points to case law, which he says stands for the proposition that a movant may overcome slightly smaller losses under prong four of the *Lax* test when they have a significant advantage in other *Lax* prongs (*Id.* at 10–11 (collecting cases).)

10

In response, the Betebenners first point out that Mr. Wodiuk's initial Motion agreed that courts "emphasize approximate loss" in determining the largest financial interest, only shifting his argument in later briefing after learning he did not suffer the largest losses. (Doc. No. 38 at 8 (quoting Doc. No. 26 at 10).) They also argue many courts consider the *Lax* factors in ascending order of importance and, further, that some only look to the non-loss factors when "issues arise over the manner of calculating losses"—such as when sales are made prior to a company's corrective disclosure. (Doc. No. 38 at 9 (collecting cases).)

At the outset, the Court notes that, based on its review, no court in this District has undertaken a *Lax* analysis in a case with facts similar to this one—that is, where one movant suffered slightly greater losses but purchased and retained significantly fewer shares than another movant. Likewise, the movants have not pointed the Court to such a case. Accordingly, though the Court acknowledges this District has generally highlighted the primacy of losses as the "most significant factor" in a *Lax* analysis, *see, e.g.*, *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400, at *2 (D. Colo. Oct. 23, 2012), the Court also notes the District apparently has not had the occasion to consider how to weigh a close difference in losses in the face of other *Lax* factors which significantly diverge. As such, the Court looks outside the District for guidance.

When undertaking a *Lax* analysis involving movants with similar losses, many courts indeed have concluded that the movant with a smaller loss can overcome the deficiency by demonstrating a significant advantage in prongs 1-3. *See, e.g.*, *Westchester Putnam Ctys. Heavy & Hwy. Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp.*, No. 16-CV-02400 (AT)(SN), 2016 WL 11648466, at *1–2, (S.D.N.Y. Nov. 29, 2016) (noting a 16% difference in claimed losses but finding in favor of movant with lower claimed losses where other three factors

11

"overwhelmingly favor[ed]" that movant); *Arias v. Bird Glob., Inc.*, No. 2:22-CV-08406-ODW, 2023 WL 3814040, at *4 (C.D. Cal. June 2, 2023) ("[T]his Court finds persuasive the approach of courts which, faced with competing movants whose claimed losses are roughly equal, treat those losses as equivalent and look to the other three *Lax* factors to determine which movant has the largest financial interest."); *Lee Goodman Tr. v. Wheels Up Experience Inc.*, No. 23CIV2900OEMVMS, 2023 WL 8631014, at *2 (E.D.N.Y. Dec. 12, 2023) ("[I]f a movant suffers the largest loss by only a small percentage, the first three factors carry more weight."); *see also Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation."). Other Courts, however, view the fourth *Lax* factor as "the determinative one," without significant regard for the other *Lax* factors. *Owens v. FirstEnergy Corp.*, No. 2:20-CV-03785, 2020 WL 6873421, at *11 (S.D. Ohio Nov. 23, 2020) ("LACERA has suffered the largest LIFO losses ... LACERA therefore has the largest financial interest in this matter.").

The Court is persuaded by the middle ground view in which the fourth *Lax* factor remains most important, but the first through third factors hold enough weight to overcome the fourth factor when losses are relatively similar between movants. This framework maintains this District's customary emphasis of prong four without rendering the remaining *Lax* factors superfluous.

Here, the Betebenners have suffered approximately $40,000 more in losses (prong four) and expended approximately $40,000 more on their shares (prong three). (Doc. No. 33 at 12.) Each figure is roughly 8% higher than Mr. Wodiuk's corresponding figure. Conversely, Mr. Wodiuk has purchased and continues to hold approximately 234,000 more shares than the

Betebenners (prongs one and two). This equates to approximately 330% more shares. In other words, the Betebenners hold small advantages in prongs four (the most critical prong) and three, while Mr. Wodiuk holds a considerable advantage in prongs one and two.

Ultimately, the Court concludes the Betebenners hold the largest financial interest in this action. The Betebenners hold a non-negligible advantage most significant *Lax* factor—requiring Mr. Wodiuk to hold a significant aggregate advantage in prongs one, two, and three. However, the Betebenners also have an advantage in prong 3, which is arguably the second most important *Lax* factor. *See Brixmor Prop. Grp. Inc.*, 2016 WL 11648466, at *1 ("The trend among New York courts is to view the factors in ascending order of importance, such that the number of shares purchased is the least important and the losses incurred are the most important."). Mr. Wodiuk's significant advantage in prongs one and two simply cannot overcome the Betebenners' edge in prongs three and four.[2]

Accordingly, the Court finds that the Betebenners have the next largest financial interest in this action.

---

[2] The Court notes that most of the cases Mr. Wodiuk cites for the proposition that *Lax* factors one through three can overcome factor four involved fact patterns in which the movant with the smaller losses prevailed on <u>all three</u> other *Lax* factors—usually significantly. *See Brixmor Prop. Grp. Inc*, 2016 WL 11648466, at *2 (finding that though one movant incurred larger losses, "[t]he other factors ... overwhelmingly favor[ed]" another movant); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 CIV. 5797 PAC, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (finding that "the first three factors of the *Lax* Test" outweighed "[t]he very slight difference" in losses); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1: 17 CV 1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) (finding "the first three factors weigh[ed] overwhelmingly in favor of [the movant with fewer losses]" who thus had the largest financial interest). Mr. Wodiuk does, however, cite *Cortina v. Anavex Life Sci. Corp.*, in which the court found the movant who retained the most shares (prong two) and expended the most funds (prong three) had a greater financial interest than the movant who had the greatest losses (prong four) *and* purchased the most shares in total (prong one). No. 15-CV-10162 (JMF), 2016 WL 1337305, at *1 (S.D.N.Y. Apr. 5, 2016). However, the *Cortina* court put very little stock in prong one, calling it "[t]he least important factor;"—which cuts against Mr. Wodiuk's position in this case. *Id.* at *2. Further, the *Cortina* court also considered prong four to be only "*arguably*" the most important factor and emphasized the movants' substantial differences in prongs 2 and 3. *Id.* (emphasis added).

      ii. Rule 23

The Court finally turns to the Betebenners' typicality and adequacy under Rule 23.

The Betebenners are sufficiently typical of the putative class. The Betebenners' Motion, briefing, and declaration demonstrate that their claims are typical of the whole class—arising from the purchase of allegedly artificially inflated NewAge securities during the class period. (*See* Doc. Nos. 19; 20-3; 33; 38.) Further, the Betebenners seek substantially the same relief based on substantially the same legal theories as the rest of the class.

The Court also finds the Betebenners will adequately represent the class. The Betebenners are husband and wife, residing in Massachusetts. (Doc. No. 19 at 12; Doc. No. 20-3 at ¶ 2, 8.) Each holds advanced degrees, and they have over forty years of combined experience investing in securities. (Doc. No. 20-3 at ¶ 4, 6, 9, 11.) They have retained competent and experienced counsel, Faruqi & Faruqi, LLP, with extensive experience in these types of securities class actions. (Doc. No. 20-4.) They also declared their "motivat[ion] to recover our losses for our benefit and the benefit of all members of the Class," and there have been no reported conflicts between the Betebenners' interests and the interests of other members of the class.[3] (Doc. No. 20-3 at ¶ 12.)

---

[3] The Court notes Mr. Wodiuk's brief argument that the Betebenners are inadequate because they "have failed to demonstrate their preparedness to coordinate their efforts and work together to jointly." (Doc. No. 32 at 13.) However, the Court does not share Mr. Wodiuk's concerns. First, any concerns about "group" lead plaintiff cohesiveness are significantly lessened when the group has a pre-existing relationship—particularly one as close as marriage. *See Kinney v. Capstone Turbine Corp.*, No. CV158914DMGRAOX, 2016 WL 5341948, at *4 (C.D. Cal. Feb. 29, 2016) (calling a married couple "the quintessential cohesive unit fit to qualify together as an adequate lead plaintiff"); *see also In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *6 (N.D. Cal. Apr. 27, 2012) (stating that a "pre-existing relationship ... indicates ... cohesion and ability to adequately control and oversee the litigation" (internal quotation omitted)). Further, the Court finds the Betebenners' declaration statement that they "understand the responsibilities and duties of being Lead Plaintiffs, including our fiduciary duties to the class" sufficient to demonstrate their ability to function adequately as a joint lead plaintiff.

Accordingly, the Court recommends that Damian Betebenner and Cigdem Betebenner be named Lead Plaintiff in this action.

### III. Appointment of Lead Counsel

Under 15 U.S.C. § 78u–4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." The Betebenners have demonstrated that their choice of lead counsel, Faruqi & Faruqi, LLP, is "qualified, experienced, and able to vigorously conduct the proposed litigation." *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000). Therefore, the Court recommends the selection of Faruqi & Faruqi, LLP as lead counsel be approved.

### IV. Mr. Chernyak's Motion for Discovery

Finally, Mr. Chernyak has moved to lift the discovery stay presently in place pursuant to the PSLRA to obtain "copies of all discovery provided to the SEC in the course of the SEC's [related] enforcement action," *SEC v. Willis*, Case No. 1:22-cv-2744-GPG-SKC. (Doc. No. 55.) In light of its recommendations above, the Court denies the Motion.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that:

1. The Motion of Damian Betebenner and Cigdem Betebenner for: (1) Consolidation of the Related Actions; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Plaintiff's Selection of Lead Counsel (Doc. No. 19) be **GRANTED**;

2. The Motion of Luke Joseph Wodiuk for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel (Doc. No. 26) **GRANTED** insofar as it seeks the consolidation of this action with *Taylor v. Willis, et al.*, No. 23-cv-00127-RMR-STV ("*Taylor*") and **DENIED** in all other respects; and

3. The Motion of Igor Chernyak for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. No. 18) be **DENIED**.

The Court further **ORDERS** that Movant Igor Chernyak's Motion for Discovery (Doc. No. 55) is **DENIED**. The Motion is denied without prejudice to its re-filing by the Betebenners. The Betebenners are directed to confer with Defendant Willis before filing such a motion.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 5th day of March, 2024.

s/ James P. O'Hara
United States Magistrate Judge