**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

**Civil Action No**.: 1:22-cv-03161-SKC

DENNIS CLIFTON, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

Defendants.

---

**Civil Action No**.: 1:23-cv-00127-RMR-STV

DANIEL TAYLOR, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN,
AMY KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

Defendants.

---

**LUKE JOSEPH WODIUK'S OBJECTIONS TO MAGISTRATE JUDGE'S
RECOMMENDATION ON MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

ARGUMENT.....................................................................................................................................4

  I.  Standard ....................................................................................................................4

  II.  Assigning Greater Weight to Net Funds Expended than Net Shares Purchased in
    Assessing Financial Interest Is at Odds with Federal Securities Jurisprudence ......5

  III.  Finding the 8% Differential Between the Competing Movants' Losses To Be
    "Non-Negligible" Is at Odds with Federal Securities Jurisprudence and Contrary
    to Other Findings in the Recommendation ..............................................................8

  IV.  The Recommendation's Conclusion that the Betebenners Have a Larger Financial
    Interest than Wodiuk is Incorrect...........................................................................10

CONCLUSION.................................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alkhoury v. Lululemon Athletica, Inc*., No. 13 Civ. 4596 (KBF),
    2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) .................................................................................9

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................................6, 7

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
    2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)..........................................................7

*Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB,
    2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ........................................................7

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ....................................................................................6

*In re Critical Path, Inc. Sec. Litig*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........................................................................6

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM),
    2016 U.S. Dist. LEXIS 139215 (S.D.N.Y. Oct. 4, 2016) ...........................................................6

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006)...........................................................................8

*In re Elan Corp. Sec. Litig.*,
    2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............................................................9

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..........................................................................6

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) ...................................................................................9

*Juliar v. Sunopta, Inc.*,
    2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ...............................................................9

*Lax v. First Merchants Acceptance Corp.*, Nos. 97-Civ-2715 *et al.*,
    1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..................................................... *passim*

*Pio v. GM Co.*, No. 14-11191,
    2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ....................................................6

ii

*Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC) *et al.*,
    2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ............................................................9

*Schueneman v. Arena Pharms., Inc.*, No. 10-cv-1959,
    2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ............................................................6

*Shupe v. Rocket Companies, Inc.*, No. 1:21-CV-11528,
    2022 WL 1421493 (E.D. Mich. May 5, 2022)...........................................................................5

*Smith v. Aetna*,
    2023 WL 2824397 (D. Colo. Mar. 6, 2023) .............................................................................5

*Turpel v. Canopy Growth Corporation*, 23 Civ. 4302 (PAE) *et al.*,
    2023 WL 8276633 (S.D.N.Y. Nov. 30, 2023)........................................................................5, 7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................................6

*Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor
    Property Group Inc.*, 16-CV-02400 (AT) (SN),
    2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016).........................................................................5

## Statutes

15 U.S.C. 78u–4 .................................................................................................................1, 7, 12

Private Securities Litigation Reform Act of 1995 .................................................................. *passim*

## Rules

Fed. R. Civ. P. 23.......................................................................................................................2

Fed. R. Civ. P. 42.......................................................................................................................2

Fed. R. Civ. P. 72.......................................................................................................................4

iii

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), Lead Plaintiff Movant Luke Joseph Wodiuk ("Wodiuk") respectfully submits these Objections to the Order and Recommendation (the "Recommendation") (Dkt. No. 61) of the Honorable James P. O'Hara, U.S.M.J. (the "Magistrate Judge") on the competing motions for appointment as Lead Plaintiff respectively filed by Igor Chernyak ("Chernyak") (Dkt. No. 18), Damian Betebenner and Cigdem Betebenner (together, the "Betebenners") (Dkt. No. 19), and Wodiuk (Dkt. No. 26) (together, the "Lead Plaintiff Motions"). For the specific reasons set forth below and in Wodiuk's opposition and reply briefs (Dkt. Nos. 32, 37), Wodiuk respectfully requests that the Court decline to adopt Magistrate Judge O'Hara's recommendation that it grant the Betebenners' Lead Plaintiff Motion and deny Wodiuk's Lead Plaintiff Motion.

## INTRODUCTION

The above-captioned related actions *Clifton v. Willis, et al.*, 1:22-cv-03161-SKC (the "*Clifton* Action") and *Taylor v. Willis, et al.*, 1:23-cv-00127-RMR-STV (the "*Taylor* Action" and, together with the Clifton Action, the "Related Actions") are substantively identical putative class actions alleging violations of the federal securities laws. As such, they are governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which provides, in relevant part, that any member of the putative class may seek appointment as Lead Plaintiff within 60 days of publication of the statutorily required notice of pendency of the first-filed *Clifton* Action (the "Notice"). 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, the requisite Notice was published on December 7, 2022, meaning that any motions for appointment as Lead Plaintiff were due to be filed on or before February 6, 2023.

On February 6, 2023, six movants duly filed motions for appointment as Lead Plaintiff: (1) Chernyak (Dkt. No. 18); (2) Wodiuk (Dkt. No. 26); (3) the Betebenners (Dkt. No. 19); (4) Mei

Huang ("Huang") (Dkt. No. 21); (5) Chris Dobson ("Dobson") (Dkt. No. 25); and (6) Terry

Roberts and Jean Roberts, jointly (together, the "Robertses") (Dkt. No. 22).   Concurrently,

movants Wodiuk, the Betebenners, Huang, Dobson, and the Robertses also moved for

consolidation of the Related Actions pursuant to Fed. R. Civ. P. 42(a).  *See* Dkt. Nos. 19, 21, 22

25, 26.   After reviewing the competing motions, movants Huang, Dobson, and the Robertses

subsequently withdrew their Lead Plaintiff motions or stated their non-opposition to the competing

motions (*see* Dkt. Nos. 28, 30, 31), leaving Chernyak, Wodiuk, and the Betebenners as the only

putative class members seeking appointment as Lead Plaintiff.

On March 5, 2024, the Magistrate Judge entered his Recommendation.   First, the

Magistrate Judge ordered the Related Actions to be consolidated.  *See* Dkt. No. 61 at 4.   The

Magistrate Judge then addressed the three competing Lead Plaintiff motions, applying the statutory

criteria set forth in the PSLRA:

> The PSLRA directs a court to "appoint as lead plaintiff the member or members of
> the purported plaintiff class that the court determines to be most capable of
> adequately representing the interests of class members."   15 U.S.C. § 78u-
> 4(a)(3)(B)(1).   "The PSLRA establishes a rebuttable presumption that the 'most
> adequate plaintiff' is a person or group of persons that (1) either filed the complaint
> or made a motion in response to a notice, (2) has the largest financial interest in the
> relief sought, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23[.]"

Dkt. No. 61 at 4.

Undertaking the statutory inquiry, the Magistrate Judge determined that Chernyak

possessed the largest financial interest of any competing movant, citing Chernyak's alleged losses

of approximately $3.08 million in connection with his class period investments in NewAge

securities—significantly more than any competing movant.  Dkt. No. 61 at 5.   However, the

Magistrate Judge held that Chernyak was inadequate as a class representative under Fed. R. Civ.

P. 23, finding that Chernyak had "displayed a lack of candor" by failing to inform the Court about

2

a prior criminal conviction and his "use of aliases", issues which were only brought to the Court's attention by the Betebenners' counsel.  Dkt. No. 61 at 8.  Accordingly, the Magistrate Judge determined that Chernyak failed to meet the PSLRA's criteria for appointment as Lead Plaintiff.

With Chernyak disqualified from consideration, the Magistrate Judge then considered which of the remaining competing movants had alleged the next largest financial interest after Chernyak: (1) Wodiuk, claiming investment losses of $454,865; or (2) the Betebenners, with losses of $494,549.  Finding that only a "close difference" existed between the competing movants' respective losses, the Magistrate Judge declined to determine the movants' financial interest with reference to monetary loss alone and expanded his analysis to consider all four factors set forth in the seminal case *Lax v. First Merchants Acceptance Corp.*, Nos. 97-Civ-2715 *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (the "*Lax* factors"): (1) the number of shares purchased by each movant during the Class Period ("*Lax* factor #1); (2) the net shares purchased by each movant during the Class Period (*i.e.*, the number of shares that each movant retained at the end of the Class Period) ("*Lax* factor #2); (3) the total funds each movant expended on their Class Period purchases of NewAge securities ("*Lax* factor #3); and (4) the monetary losses that each movant suffered in connection with their NewAge investments during the Class Period ("*Lax* factor #4).  The Magistrate Judge articulated his analytical framework as follows:

> [T]he fourth *Lax* factor remains most important, but the first through the third factors hold enough weight to overcome the fourth factor when losses are relatively similar between movants.  This framework maintains this District's customary emphasis of prong four without rendering the remaining *Lax* factors superfluous.

Dkt. No. 61 at 12.

Although the Magistrate Judge articulated an appropriately holistic four-factor financial interest analysis, he reached two conclusions contrary to federal securities jurisprudence in the process of applying his analytical framework.  First, the Magistrate Judge erroneously concluded

3

that the quantum of funds that the competing movants respectively spent on their purchases of NewAge securities during the Class Period (*Lax* factor #3) was the next most important factor after loss (*Lax* factor #4). Second, despite adopting a framework that was expressly premised on his correct finding that the movants' losses were roughly equal, the Magistrate Judge then departed from that finding and found that the loss differential was "non-negligible"—*i.e.*, large enough to be outcome determinative. *See* Dkt. No. 61 at 13. Accordingly, the Magistrate Judge reached a third erroneous conclusion: that under a holistic, four-factor analysis, the Betebenners have a larger financial interest in the relief sought by the class in this litigation than Wodiuk. Dkt. No. 61 at 13.

As set forth below, Wodiuk respectfully submits that the Magistrate Judge's Recommendation is contrary to law and should not be accepted. Specifically, pursuant to Fed. R. Civ. P. 72, Wodiuk hereby objects to the following portions of the Recommendation:

(1) The Magistrate Judge's conclusion that a movant's net funds expended are a better measure of "financial interest" than net shares purchased within the meaning of the PSLRA (Recommendation at 13);

(2) The Magistrate Judge's conclusion that the difference between the Betebenners' loss and Wodiuk's loss is "non-negligible"; and

(3) The Magistrate Judge's conclusion that, assessing the competing movants' financial interest with respect to all four *Lax* factors, the Betebenners have a larger financial interest than Wodiuk.

**ARGUMENT**

**I.    Standard**

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he Court is required to make a *de novo* determination of those portions of a magistrate judge's recommendation to which a specific, timely

4

objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's

findings or recommendations."  *Smith v. Aetna*, 2023 WL 2824397, at \*1 (D. Colo. Mar. 6, 2023).

**II.      Assigning Greater Weight to Net Funds Expended than Net Shares Purchased in Assessing Financial Interest Is at Odds with Federal Securities Jurisprudence**

Wodiuk respectfully submits that a critical conclusion of the Magistrate Judge regarding

the relative weight of the four *Lax* factors—namely, that the net funds a movant spent on his or

her stock purchases is "arguably the second most important *Lax* factor" after loss—is inconsistent

with federal securities jurisprudence.  In support of this conclusion, the Court cites *Westchester*

*Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group*

*Inc.*, 16-CV-02400 (AT) (SN), 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016), for the proposition

that "[t]he trend among New York courts is to view the factors in ascending order of importance,

such that the number of shares purchased is the least important and the losses incurred are the most

important."  *Id.* at \*1.  Under the *Brixmor* approach, then, monetary losses would be the most

important factor, followed by net funds expended, net shares purchased (*i.e.*, retained shares), and,

finally, shares purchased.

Wodiuk respectfully submits that *Brixmor* is a conspicuous outlier in its approach to

weighing the various *Lax* factors, and Wodiuk's counsel is unaware of any jurisprudential trend to

the effect that net funds expended is a better yardstick of financial interest than retained shares.

Rather, to the extent that there is any trend with respect to financial interest assessment in federal

securities jurisprudence, it is toward acknowledging the significance of **retained shares**, not net

funds expended.  *See*, *e.g.*, *Turpel v. Canopy Growth Corporation*, 23 Civ. 4302 (PAE) *et al.*,

2023 WL 8276633, at \*6 (S.D.N.Y. Nov. 30, 2023) (emphasizing significance of shares retained

at the time of a corrective disclosure in evaluating financial interest); *Shupe v. Rocket Companies,*

*Inc.*, No. 1:21-CV-11528, 2022 WL 1421493, at \*219-20 (E.D. Mich. May 5, 2022) (finding

"some courts have found the second factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery" under the PSLRA and determining largest financial interest on that basis); *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("courts have found the second [*Lax*] factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery."); *Schueneman v. Arena Pharms., Inc.*, No. 10-cv-1959, 2011 U.S. Dist. LEXIS 87373, at *14 (S.D. Cal. Aug. 8, 2011) (placing the greatest weight on "the retained share methodology, which looks to the number of retained shares at the end of the class period."); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375 n.4 (E.D. Va. 2003) (considering retained shares alongside losses suffered in assessing financial interest); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM), 2016 U.S. Dist. LEXIS 139215, at *11 (S.D.N.Y. Oct. 4, 2016) (considering net shares purchased (i.e., retained shares) alongside loss in assessing financial interest); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (considering net shares purchased (*i.e.*, retained shares) alongside loss in assessing financial interest).  *See also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."); *In re Critical Path, Inc. Sec. Litig*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (net shares purchased is "determinative" of financial interest).

A review of loss causation principles at the heart of federal securities law illustrates why a movant's retained shares weigh significantly in a *Lax*-factor analysis and, conversely, why the funds that a movant expended or number of shares that a movant purchased matter far less.  In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court held that in an action under the federal securities laws, the only relief that a plaintiff can seek is recovery of losses

proximately caused by the defendant's wrongdoing. *Id.* at 338. Accordingly, under *Dura*, any recoverable losses must stem from a cognizable cause—here, the revelation of Defendants' alleged fraud through the corrective disclosures which damaged NewAge shareholders when the Company's stock price declined. *See id*. at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). *See also Turpel*, 2023 WL 8276633, at \*6 (emphasizing significance of shares retained at the time of a corrective disclosure in evaluating financial interest, finding that "it is the drop in share price occasioned by exposure of the fraud that is used to measure cognizable loss"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure"); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at \*10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss if the purchaser sells the shares before the truth is revealed.").

Accordingly, under *Dura* principles, the more shares that a movant retained when NewAge's stock price fell at the end of the Class Period, the more shares a movant owned that were damaged by that drop in the Company's share price. A movant who retained more shares at the end of the Class Period will thus obviously have a larger stake in the outcome of the litigation— that is, a "large[r] financial interest in the relief sought by the class"—namely the recovery of investment losses caused by the fraud. 15 U.S.C. 78u–4 (a)(3)(B)(iii)(I)(bb). The number of net shares purchased by a investor is thus a critical element of that investor's financial interest in a securities class action.

By comparison, the amount of money that a movant spent on his or her purchases or the number of shares that a movant purchased during the Class Period (as opposed to those shares that

7

they retained at the end) have a far less direct relationship to a movant's recoverable investment losses. Simply put, these factors on their own tell the Court essentially nothing about what an investor can hope to recover in a securities fraud litigation. The relevance of *Lax* factors #1 and #3 lies chiefly in their relationship to *Lax* factors #2 and #4—that is, the calculation of an investor's investment losses (*Lax* factor #4) necessarily takes into account, *inter alia*, how many shares the investor purchased (*Lax* factor #1) and at what prices (*Lax* factor #3), while determining the number of shares that a movant retained at the end of the Class Period (*Lax* factor #3) requires knowing how many shares the movant purchased in total during the Class Period (*Lax* factor #1). The independent significance of *Lax* factors #1 and #3 to an investor's financial interest is limited at best, and these factors certainly do not weigh more heavily in a financial interest assessment than the number of shares that a movant retained.

Accordingly, Wodiuk respectfully submits that the Magistrate Judge's conclusion that funds expended (*Lax* factor #3) is "arguably the second most important *Lax* factor" is at odds with a robust body of PSLRA case law, pursuant to which retained shares (*Lax* factor #2) is vastly more important.

**III.    Finding the 8% Differential Between the Competing Movants' Losses To Be "Non-Negligible" Is at Odds with Federal Securities Jurisprudence and Contrary to Other Findings in the Recommendation**

In addition, Wodiuk respectfully submits that the Magistrate Judge's conclusion that "[t]he Betebenners hold a non-negligible advantage [with respect to] the most significant *Lax* factor"— *i.e.*, monetary loss (Dkt. No. 61 at 13)—is contrary to both federal jurisprudence and the Magistrate Judge's other findings regarding the movants' losses as stated in the Recommendation.

Where, as here, the respective monetary losses incurred by competing lead plaintiff movants are within only a few percentage points of one another, courts routinely find those losses to be essentially equivalent. *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y.

8

2006) (holding that a 17% difference in losses was "roughly equal"); *Juliar v. Sunopta, Inc.*, 2009 WL 1955237, at \*2 (S.D.N.Y. Jan. 30, 2009) (stating that a $30,000 difference in losses was "minimal"); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC) *et al.*, 2007 U.S. Dist. LEXIS 97959, at \*5-7 (S.D.N.Y. Feb. 21, 2007) (treating 2% difference in losses "as roughly equal" and looking to other *Lax* factors); *Alkhoury v. Lululemon Athletica, Inc.*, No. 13 Civ. 4596 (KBF), 2013 WL 5496171, at \*1 (S.D.N.Y. Oct. 1, 2013) (holding that a "slightly higher" loss amount of approximately $2,000 was a "negligible difference" and was "insufficient to outweigh the substantial financial interest . . . evidenced by other factors"); *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at \*1 (S.D.N.Y. May 11, 2009) (appointing movant with lesser claimed loss over another movant explaining approximate $21,000 difference in losses "basically equal"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (finding that movants respectively claiming $22.4 million and $22.8 million in losses had roughly equal damages). Here, as the Court acknowledges, the Betebenners' loss of $494,549 is only "roughly 8% higher" than Wodiuk's loss of $454,865. Dkt. No. 61 at 12. Such a minor loss differential places the two movants' respective losses well inside the range within which courts find comparable losses to be essentially equal.

Strikingly, the Magistrate Judge's sole description of the movants' loss differential as "non-negligible" is at odds with the majority of the Recommendation, which otherwise repeatedly—and correctly—states that the difference between Wodiuk's and the Betebenners' losses is insignificant. In the Recommendation, the Magistrate Judge variously:

- describes the case as one in which "one movant [the Betebenners] suffered *slightly* greater losses but purchased and retained significantly fewer shares than another movant [Wodiuk]" (Dkt. No. 61 at 11) (emphasis added);

- "notes that the District apparently has not had the occasion to consider how to weigh a *close difference* in losses in the face of other *Lax* factors with significantly diverge" (*id.*) (emphasis added);

9

- describes the movants' losses as "*relatively similar*" (Dkt. No. 61 at 12) (emphasis added); and

- finds that the Bebenners hold only a "*small advantage*[]" over Wodiuk with respect to loss.  Dkt. No. 61 at 13 (emphasis added).

In sum, then, the Recommendation contains no fewer than *four* descriptions of the competing movants' respective losses as approximately equivalent to one another.  Significantly, one of these references is stated as a central premise of the analytical framework that the Magistrate Judge adopted.  In describing his chosen framework, the Magistrate Judge essentially stated that he would consider "the first through third [*Lax*] factors" only *because* he had found that the movants' losses were "relatively similar."  Dkt. No. 61 at 12.  Under the Magistrate Judge's framework, if the movants' losses were *not* similar—that is, if one movant's loss was meaningfully larger than the other—then there would be no need to consider the other three *Lax* factors. Accordingly, the fact that the Magistrate Judge's analysis even considers the first three *Lax* factors indicates that the Magistrate Judge found the movants' losses to be roughly equivalent—which, again, is consistent with his four separate statements to that effect in the Recommendation.  The Magistrate Judge's sole statement that the Betebenners' and Wodiuk's losses are *not* approximately equivalent thus represents a sharp departure from his own conclusions expressed elsewhere in the Recommendation and, indeed, from the entire premise of the Magistrate Judge's four-factor analytical framework.

## IV.    The Recommendation's Conclusion that the Betebenners Have a Larger Financial Interest than Wodiuk is Incorrect

Finally, the Recommendation's conclusion that the Betebenners, not Wodiuk, have the "largest financial interest" in this Action after Chernyak is incorrect.  In assessing the competing movants' financial interest, the Magistrate Judge adopted a holistic analytical framework "in which the fourth *Lax* factor [*i.e.*, monetary loss] remains most important, but the first through third factors

10

[shares purchased, shares retained, and funds expended] hold enough weight to overcome the fourth factor when losses are relatively similar between movants." Dkt. No. 61 at 12. However, as discussed *supra* at Sections II and III , the Magistrate Judge reached two erroneous conclusions in the course of its analysis: (1) that the quantum of funds a movant expended (*Lax* factor #3) weighed more heavily in the analysis than the number of shares a movant retained (*Lax* factor #2); and (2) that, contrary to a central premise of the Magistrate Judge's analytical framework, the competing movants' losses were ***not*** roughly equal. These two incorrect conclusions skewed the Magistrate Judge's analysis, causing it to place undue weight on *Lax* factor #3 and affording insufficient weight to *Lax* factor #2, while finding that Wodiuk needed "to hold a significant aggregate advantage" in the first three *Lax* factors because of the Betebenners' purportedly "non-negligible" advantage with respect to loss. *Id.* at 13.

Correcting the Magistrate Judge's conclusions regarding the degree of difference between the movants' losses and the appropriate weight afforded to the other three factors yields a different outcome with respect to the overall "largest financial interest" determination as assessed within the Magistrate Judge's own analytical framework. First, as the Magistrate Judge correctly stated throughout his Recommendation, Wodiuk and the Betebenners' losses ***are*** functionally equal, with a difference of only 8% between Wodiuk's loss of $454,865 and the Betebenners' loss of $494,549. Given their equivalent losses, under the Magistrate Judge's analysis, the inquiry shifts to determining which of the movants possess the largest financial interest with reference to the remaining three *Lax* factors: shares purchased (*Lax* factor #1), shares retained (*Lax* factor #2), and net funds expended (*Lax* factor #3). As discussed *supra*, retained shares (*Lax* factor #2) is the most relevant *Lax* factor after monetary loss and vastly outweighs the significance of *Lax* factors #1 and #3 in identifying the movant with the largest stake in this litigation—that is, the "largest

11

financial interest in the relief sought by the class" within the meaning of the PSLRA.  15 U.S.C. § 78u–4(a)(3)(B)(iii).  Here, as the Recommendation acknowledges, Wodiuk retained 306,665.38 shares at the end of the Class Period—"approximately 330% more shares" than the Betebenners' 71,000 shares.  With respect to *Lax* factor #1, Wodiuk also purchased 306,665.38 shares in total during the Class Period, compared to the 71,000 shares that the Betebenners purchased—again a differential of 330%.  Finally, with respect to *Lax* factor #3, the Betebenners expended $494,646.25 on their Class Period purchases of NewAge shares, while Wodiuk expended only $455,282.00—a differential of approximately 8% in the Betebenners' favor.

In sum, then, with the movants functionally tied with respect to monetary loss and therefore assessing their respective financial interests with reference only to the remaining three factors, Wodiuk beats the Betebenners by margins of ***330%*** with respect to two of those three factors— including retained shares, by far ***the most relevant factor*** after monetary loss—while the Betebenners lead Wodiuk only with respect to funds expended, a factor with little independent significance to the financial interest inquiry, and only by a scant margin of 8%.  Correctly assessed under the analytical framework articulated by the Magistrate Judge, Wodiuk thus plainly has a larger financial interest than the Betebenners.

## CONCLUSION

For the reasons stated herein, Wodiuk respectfully submits that this Court should decline to adopt the Magistrate Judge's recommendations as to the foregoing issues.

Dated:  March 19, 2024                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor

New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Luke Joseph Wodiuk and*
*Proposed Lead Counsel for the Class*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2024, a true and correct copy of the foregoing **LUKE JOSEPH WODIUK'S OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION ON MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to all counsel of record.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman

14