**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03161-DDD-JPO

DENNIS CLIFTON, INDIVIDUALLY AND ON
BEHALF OF ALL OTHER SIMILARLY
SITUATED,

      Plaintiff,

      v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN, AMY
KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

      Defendants.

---

**DEFENDANT BRENT WILLIS'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND EXHIBITS A, B,
AND C THERETO**

---

Defendant Brent Willis ("Willis"), by and through undersigned counsel, respectfully submits this Motion to Strike Portions of Plaintiffs' Amended Consolidated Class Action Complaint and Exhibits A, B, and C Thereto pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

**TABLE OF CONTENTS**

**Page**

Introduction ............................................................................................................................... 1

Summary of Relevant Facts ...................................................................................................... 2

    A.    The Genesis of this Putative Securities Class Action. ........................................... 2

    B.    The SEC and Adversary Complaints. ..................................................................... 3

    C.    The Chief Restructuring Officer's Declaration........................................................ 5

Argument .................................................................................................................................. 6

    A.    Allegations Based on the SEC and Adversary Complaints and the Cease-
          and-Desist Order Should Be Stricken. .................................................................... 6

    B.    The Allegations Based on the Declaration of NewAge's Chief Liquidation
          Officer Should Be Stricken. ..................................................................................... 8

Conclusion ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)............................................................................7

*Geinko v. Padda*,
2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ...............................................................7

*Howard v. Securitas Sec. Servs., USA Inc.*,
2009 WL 140126 (N.D. Ill. Jan. 20, 2009)................................................................9

*IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*,
2024 WL 1140947 (D. Kan. Mar. 15, 2024) .............................................................6

*In re Buca Inc. Sec. Litig.*,
2006 WL 3030886 (D. Minn. Oct. 16, 2006) ............................................................7

*In re Connetics Corp. Securities Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) .......................................................................8

*In re CRM Holdings, Ltd. Sec. Litig.*,
2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...........................................................7

*In re Key Energy Service Inc. Securities Litigation*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) .......................................................................9

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Secs. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) .................................................................................7

*In re NewAge*,
22-bk-10819-LSS (Del. Bankr. 2022) ...................................................................1, 5

*In re Overstock Sec. Litig.*,
2020 WL 5775845 (D. Utah Sept. 28, 2020).............................................................9

*Ledford v. Rapid-Am. Corp.*,
1988 WL 3428 (S.D.N.Y. Jan. 8, 1988) ....................................................................7

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976).......................................................................................7

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
    2022 WL 377415 (N.D. Okla. Jan. 7, 2022), *aff'd*, 79 F.4th 1209 (10th Cir.
    2023) ...................................................................................................................................8

*NAI Liquidation Trust v. Brent Willis et al.*,
    No. 22-10819 (LSS) (Bankr. D. Del. 2023)................................................................1

*Nolte v. Capital One Fin. Corp.*,
    390 F.3d 311 (4th Cir. 2004) .....................................................................................6

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd on other grounds*, 387 F. App'x
    72 (2d Cir. 2010).......................................................................................................6

*SEC v. Brent David Willis*,
    No. 22-2744 (D. Colo 2022)......................................................................................1

**Statutes**

15 U.S.C. § 78u-4, *et seq.* ................................................................................................1, 6

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................1

Fed. R. Civ. P. 11(b) ..........................................................................................................8

Fed. R. Civ. P. 12(f)........................................................................................................1, 6

Fed. R. Evid. 602 ...............................................................................................................9

## INTRODUCTION

As explained in Mr. Willis's Motion to Dismiss, filed concurrently herewith, Plaintiffs' Amended Complaint ("AC") fails to meet the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), 15 U.S.C. § 78u-4, *et seq*. Mr. Willis files this Motion separately to address a related issue:  the AC's extensive reliance on unproven allegations from other legal proceedings concerning Mr. Willis and his former employer, NewAge, Inc. ("NewAge" or the "Company").  The AC repeatedly cites (and, in some cases, quotes) the following documents:

(1) The complaint filed by the United States Securities and Exchange Commission captioned *SEC v. Brent David Willis*, No. 22-2744 (D. Colo 2022) (ECF No. 1) (the "SEC Complaint"), attached as Exhibit A to the AC;

(2) The SEC's Cease-and-Desist Order against NewAge, attached as Exhibit B to the AC;

(3) The adversary complaint filed by NewAge's Liquidation Trust captioned *NAI Liquidation Trust v. Brent Willis et al.*, No. 22-10819 (LSS) (Bankr. D. Del. 2023), (ECF No. 1) (the "Adversary Complaint"), attached as Exhibit C to the AC; and

(4)  The declaration of NewAge's Chief Restructuring Officer, filed in *In re NewAge, Inc.*, 22-bk-10819-LSS (Del. Bankr. 2022) (ECF No. 406-1).

It is improper to incorporate wholesale, and cite for their purported truth, the unverified allegations in other legal proceedings.  But that is precisely what Plaintiffs have done.  The AC is rife with references to these documents and bases both its conclusion that Mr. Willis committed securities fraud and its conjecture about Mr. Willis's state of mind almost entirely on these unadjudicated claims.  This tactic is impermissible, and the Court should strike the paragraphs of the AC that incorporate, reference, or rely on the foregoing documents and unproven claims pursuant to Federal Rule of Civil Procedure 12(f).

1

## SUMMARY OF RELEVANT FACTS

### A.     The Genesis of this Putative Securities Class Action.

This putative securities class action concerns NewAge, a fledgling health and wellness company that filed for Chapter 11 bankruptcy in August 2022.  Mr. Willis served as NewAge's Chief Executive Officer from March 24, 2016 to January 10, 2022.  (AC ¶ 32.)  From its inception, NewAge manufactured, marketed, and sold a portfolio of healthy beverages that it distributed through a network of brand and retail partners.  (AC ¶ 48.)  Throughout the putative class period, NewAge updated investors about new and expanded distribution arrangements, as well as about its efforts to innovate the healthy beverage space, including its foray into Cannabidiol ("CBD")-infused beverages.  (*See generally* AC.)  Although NewAge had divested both its core products and its CBD-infused beverage portfolio by mid-2020, well before the end of the putative class period, its disclosures about aspects of its legacy business are nonetheless the subject of this litigation.

On August 30, 2022, NewAge, after having explored strategic alternatives for several months, filed for Chapter 11 bankruptcy.  (AC ¶ 47.)  Approximately two months later, while NewAge was in the early stages of liquidation, the SEC determined to charge both NewAge and Mr. Willis with purported violations of the federal securities laws. (AC ¶¶ 89-90.)  The SEC asserted (Mr. Willis submits, incorrectly), that NewAge had issued false and misleading statements about agreements to distribute its products with the U.S. military, certain Canadian retailers, Walmart, an unnamed South Korean distributor, and the Japanese retailer FamilyMart.  (AC ¶ 92.) The SEC also averred that NewAge had made false and misleading statements about its intent to develop and distribute a portfolio of CBD-infused beverages.  (*Id.*)

2

To avoid a "costly" and "fact intensive" adjudication of the SEC's allegations that NewAge could scarcely afford, NewAge opted to settle, agreeing to a Cease-and-Desist Order on October 19, 2022.  In so doing, NewAge did not admit to any wrongdoing.  (AC Ex. B.)  In fact, NewAge altogether "avoided an adjudication in federal court about whether [it] had or was about to commit a violation of securities law."  (AC ¶ 92.)  Mr. Willis, who has steadfastly denied the SEC's allegations, chose to defend his innocence.  Accordingly, on October 18, 2022, the SEC filed a civil complaint against Mr. Willis, alleging the same purportedly false and misleading statements referenced in the Cease-and-Desist Order.  (AC ¶ 89.)  Several months later, NewAge's Liquidation Trust (the "Liquidator") commenced an adversary proceeding against Mr. Willis and other former NewAge officers and directors, alleging substantially the same claims as the SEC. (*See* AC Ex. C.)  Neither the Liquidator nor the SEC has proven any wrongdoing.

**B.     The SEC and Adversary Complaints.**

As shown in Appendix A hereto, all of the purportedly misleading statements referenced in the AC are duplicative of those alleged in the SEC and/or Adversary Complaint and the SEC's Cease-and-Desist Order.  Indeed, all of the following categories of allegations can be sourced to one or more of those documents, including claims concerning:

- NewAge's distribution relationship with the U.S. military (*Compare* AC, ¶¶ 53-55, 94-100, *with* SEC Complaint, ¶¶ 46-53 and Cease-and-Desist Order at 6-8);

- NewAge's distribution relationship with Canadian retailers Loblaws and Sobeys (*Compare* AC, ¶¶ 56-59, 101-04, *with* SEC Complaint, ¶¶ 32-36 and Cease-and-Desist Order at 7);

- NewAge's distribution relationship with a South Korean distributor and certain South Korean retailers (*Compare* AC, ¶¶ 105-08, *with* SEC Complaint, ¶¶ 37-41 and Cease-and-Desist Order at 7);

3

- NewAge's distribution relationship with Walmart (*Compare* AC, ¶¶ 62-63, 126-31, *with* SEC Complaint, ¶¶ 42-45 and Cease-and-Desist Order at 7);

- NewAge's development and planned distribution of a CBD-Infused beverage (*Compare* AC, ¶¶ 64-65, 109-25, *with* SEC Complaint, ¶¶ 54-81 and Cease-and-Desist Order at 3-5, 8);

- NewAge's merger with Ariix (*Compare* AC ¶¶ 76-86, 138, 140, 142, 216-227, *with* Adversary Complaint, ¶¶ 159-281, 295, 300, 318, 330, 391, 398-405);

- NewAge's internal controls over financial reporting (*Compare* ¶¶ 52, 76-86, 132-144, 190-191, 237-244, 265, *with* Adversary Complaint, ¶¶159, 175, 177-178, 182-183, 187-193, 271-281, 391).

The AC does not dispute either the bases for or the genesis of its claims. Indeed, throughout the AC, Plaintiffs tout their reliance on these third-party allegations to establish the primary elements of a securities fraud claim: falsity, scienter, and loss causation.

The AC prefaces many of its falsity claims with the disclaimer that they are "[a]ccording to" allegations advanced by "the SEC" or "the Liquidation Trust." (*See, e.g.*, AC ¶¶ 130, 131, 171, 181, 182.) It also attributes many of the alleged misstatements to Mr. Willis—including statements made by others—not because Plaintiffs have evidence of Mr. Willis's involvement, but because the SEC and the Liquidator say that Mr. Willis was so involved. (*See, e.g.*, AC ¶¶ 96 & n.8, 116 & n.9, 128, 130.) While other paragraphs enumerating the purportedly false and misleading statements do not contain a similar preface or disclaimer, they nonetheless repeat, in some cases verbatim, the allegations in the SEC and Adversary Complaints, leaving little doubt as to their origins.

Plaintiffs also admit that the bulk of their scienter allegations are drawn from the SEC and Adversary Complaints. For example, the AC avers that Mr. Willis must have known, or was reckless in not knowing, about the purported misstatements because of: (1) "[t]he SEC's Cease

4

and Desist Order against NewAge, which states that there was no factual basis for [the challenged] statements"; (2) "[t]he fact that [Mr.] Willis was sued by the SEC for making many of the same false and misleading statements regarding the distribution agreements alleged herein"; and (3) the "fact that all of the Defendants were sued by the Liquidation Trust for making many of the same false and misleading statements regarding the distribution agreements alleged herein." (AC ¶ 155.) Further, in a particularly far-fetched attempt to establish scienter, the AC references a purportedly "fraudulent scheme" arising from NewAge's 2020 merger with Ariix that, in addition to being irrelevant to the claims in this action, is purloined entirely from the Adversary Complaint. (*See e.g.*, AC ¶ 220 ("[A]ccording to the Liquidation Trust, Defendants . . . set out to successfully operate their own multi-level marketing company" at NewAge's expense); ¶¶ 221-22 (quoting the Adversary Complaint).)

### C.    The Chief Restructuring Officer's Declaration.

The AC also purports to base an inference of scienter on the declaration by NewAge's Chief Restructuring Officer. As the AC acknowledges, Mr. Willis filed a claim in the bankruptcy matter, seeking compensation owed pursuant to the terms of his employment agreement. (AC ¶ 177.) In opposition to that claim, NewAge filed the declaration of its Chief Restructuring Officer, Lawrence Perkins. (AC ¶ 179.) Mr. Perkins concededly has no personal knowledge of any facts relevant to this case. Instead, the statements in his declaration are based on documents relating to NewAge's "operations and finances." (*In re NewAge*, 22-bk-10819-LSS (Del. Bankr. 2022) (ECF No. 406-1 ¶ 2).) Although Mr. Perkins claims that "there existed a high level of diligence in reviewing and reconciling the proofs of claim filed or pending against the Debtors in the Chapter 11 Cases," the sole purpose of his review was to opine on whether Mr. Willis was entitled to

5

outstanding funds owed under the terms of his employment agreement with NewAge.  (*Id.* ¶¶ 3-4.)  To the extent his declaration can be construed as offering legal conclusions, they are, at most, conclusions born of Mr. Perkins' opinions.  (*See id.* ¶ 4.)

## ARGUMENT

Federal Rule of Civil Procedure 12(f) permits courts to strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Numerous courts have held that documents impermissibly attached to complaints, as well as the portions of the complaints that purport to rely on such documents, are properly stricken as "immaterial" under Rule 12(f).

### A.    Allegations Based on the SEC and Adversary Complaints and the Cease-and-Desist Order Should Be Stricken.

"[P]aragraphs in a complaint that are either based on, or rely on, complaints" or consent judgments "in other actions that have . . . not [been] resolved are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)" and are appropriately stricken.  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd on other grounds*, 387 F. App'x 72 (2d Cir. 2010).  This is amply true in the private securities context, where courts regularly refuse to consider allegations drawn from third-party complaints for purposes of assessing whether a plaintiff has sufficiently pled a claim under the Reform Act.  *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004) (refusing to take judicial notice of allegations of SEC complaint against defendants in assessing whether private securities claim was stated).[1]

---

[1] Although the 10th Circuit has not opined on this specific issue, one recent case in the District of Kansas disagreed with the analysis in other circuits.  *See IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 2024 WL 1140947 (D. Kan. Mar. 15, 2024).  Mr. Willis respectfully submits that the case was wrongly decided and is, in any event, against the overwhelming weight of precedent in other circuits.

The reasons for this well-established principle are simple.  Facts alleged by third-parties, even those alleged by regulators, are just that:  allegations.  Although Plaintiffs suggest that the SEC's investigation gives the Commission's claims—and the AC by default—an aura of veracity, their reliance is misplaced because the SEC's claims are in dispute and, as pled, lack evidentiary support.  *See Bartesch v. Cook*, 941 F. Supp. 2d 501, 507 (D. Del. 2013) ("It is not appropriate for the Court to give weight to the allegations in [another] case, because such allegations are unproven and contested and do not amount to facts.") (cleaned up) (quotations and citations omitted).  As the Second Circuit emphasized in *Lipsky v. Commonwealth United Corp.*, "neither a complaint nor references to a complaint," even one that results in a consent judgment, "may properly be cited in the pleadings" because it is "not the result of an actual adjudication of any of the issues."  551 F.2d 887, 893 (2d Cir. 1976).  Accordingly, numerous courts have stricken from complaints allegations that "refer to or rely on the SEC's complaints."  *In re Merrill Lynch & Co., Inc. Rsch. Reps. Secs. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003); *see In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) (striking references in securities fraud complaint to unadjudicated allegations in other pending cases); *Ledford v. Rapid-Am. Corp.*, 1988 WL 3428, at *1 (S.D.N.Y. Jan. 8, 1988) (striking references to a regulator's investigatory report in a case that was never adjudicated on the merits); *see also In re Buca Inc. Sec. Litig.*, 2006 WL 3030886, at *1 n.1 (D. Minn. Oct. 16, 2006) (refusing to take judicial notice of allegations in SEC complaint against defendants in private securities litigation).  Facts alleged by third-parties in other actions are also inadmissible hearsay.  *See Geinko v. Padda*, 2002 WL 276236, *6 (N.D. Ill. Feb. 27, 2002) ("Plaintiffs merely have recited facts from other actions . . . . Clearly, this is not enough; the

7

hearsay allegations that Plaintiffs offer in their Amended Complaint are improper, and therefore superfluous, and they will not be considered.").[2]

Nearly all of Plaintiffs' allegations against Mr. Willis are premised on the unadjudicated claims in the SEC and Adversary Complaints. Numerous paragraphs of the AC are prefaced by the qualifier "[a]ccording to the SEC" or "[a]ccording to the Liquidator" or some variation thereof. (*E.g.*, ¶¶ 50, 96 n.8, 109, 130, 170 (referencing the SEC Complaint); ¶¶ 80, 96 n.8, 131, 218, 226 (referencing the Adversary Complaint).) As set forth more fully in Appendix A to this Motion, even where Plaintiff does not cite to the SEC and Adversary Complaints directly, a comparison with the AC makes it clear that Plaintiffs simply copy-and-pasted these third-party legal conclusions, adding, at most, additional text from the referenced disclosures. (*See supra* at 4; *see also* Appendix A.) This Court should accordingly strike Exhibits A, B, and C to the AC, as well as all paragraphs of the AC relying upon those documents.

**B.**     **The Allegations Based on the Declaration of NewAge's Chief Liquidation Officer Should Be Stricken.**

The Chief Restructuring Officer's declaration also cannot be considered on a motion to dismiss because it offers impermissible legal conclusions from a third-party with no personal knowledge of the pertinent facts. Courts routinely refuse to consider declarations and other testimony by witnesses lacking relevant personal knowledge at the pleading stage. For example, in *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, the court

---

[2] The Federal Rules of Civil Procedure also are clear that Plaintiff's counsel has a duty to independently investigate the allegations contained in the AC, which it necessarily abdicated by parroting large swaths of the SEC and Adversary Complaints. *See* Fed. R. Civ. P. 11(b); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1006 (N.D. Cal. 2008) (striking each paragraph that relied solely on an SEC complaint for factual support with limited additional investigation).

dismissed a securities fraud claim where the plaintiff had failed to allege that certain of the complaint's allegations were based on personal knowledge. 2022 WL 377415, at *18 (N.D. Okla. Jan. 7, 2022), *aff'd*, 79 F.4th 1209 (10th Cir. 2023). Likewise, in *In re Key Energy Service Inc. Securities Litigation*, the court dismissed a securities fraud claim based on "mere[] opinions that [defendant's] internal controls were inadequate" rather than on personal knowledge or communication with the named defendants. 166 F. Supp. 3d 822, 862 (S.D. Tex. 2016); *see also In re Overstock Sec. Litig.*, 2020 WL 5775845, at *7 (D. Utah Sept. 28, 2020) (dismissing securities fraud claim where plaintiffs failed to establish that witnesses had access to information on which testimony was based or that witnesses interacted with any officers). These cases are consistent with the fundamental principle, stated in the Federal Rules of Evidence, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see Howard v. Securitas Sec. Servs., USA Inc.*, 2009 WL 140126, at *4 (N.D. Ill. Jan. 20, 2009) (granting motion to strike statements in declarations purporting to disclose the knowledge or motivation of a company or its managers where declarants did not demonstrate that they had "the requisite personal knowledge to comment on such matters").

The Court should strike the paragraphs of the AC relying on the Chief Restructuring Officer's declaration for precisely these reasons. Mr. Perkins does not claim to be employed by NewAge during Mr. Willis's tenure as Chief Executive Officer. Indeed, he was not. Mr. Perkins also does not purport to have had any direct communications with Mr. Willis and, plainly, he did not. Mr. Perkins does not claim to have been involved in NewAge's negotiations with third-party retailers and distributors, its creation of a CBD-infused beverage, its merger with Ariix, or the

9

design and operation of NewAge's internal controls. Again, he was not. And Mr. Perkins does not, and cannot, assert that he was involved in the preparation of NewAge's public disclosures. Simply put, he does not purport to have *any* personal knowledge about *any* of the statements or conduct challenged in the AC. (*See* Perkins Decl. ¶ 4.) For Plaintiffs to nonetheless use Mr. Perkin's Declaration in an attempt to bolster their claims of scienter not only misconstrues the declaration; it repurposes out-of-court testimony in a case in which it does not belong.

## CONCLUSION

For the foregoing reasons, the Court should strike Exhibits A-C to the AC and the paragraphs of the AC that rely on those exhibits or the declaration of Lawrence Perkins.

DATED: July 30, 2024

Respectfully submitted,

<u>/s/ Michael J. Diver</u>

KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, Illinois 60661
Telephone:  312.902.5200

Michael J. Diver
Michael J. Lohnes
Lari A. Dierks
Jamie Noonan
michael.diver@katten.com
michael.lohnes@katten.com
lari.dierks@katten.com
Jamie.noonan@katten.com

50 Rockefeller Plaza
New York, New York 10020
Telephone: 212.940.8800

Sarah Eichenberger
Dillon Rodriguez
sarah.eichenberger@katten.com
dillon.rodriguez@katten.com

*Attorneys for Defendant Brent Willis*

10

**APPENDIX A**

| Paragraph of AC that Should be Stricken | Impermissible Source Document | Claim(s) the Source Document is used to Support in the AC |
|---|---|---|
| ¶ 5 | SEC Complaint ¶¶ 46-53 | Allegedly false statements regarding distribution relationship with U.S. military |
| ¶ 6 | SEC Complaint ¶ 52 | |
| ¶ 7 | SEC Complaint ¶¶ 32-36 | Allegedly false statements regarding distribution relationship with Canadian Retailers |
| ¶ 8 | SEC Complaint ¶¶ 32-36 | |
| ¶ 9 | SEC Complaint ¶¶ 32-41 | Allegedly false statements regarding distribution relationship with South Korean retailers |
| ¶ 10 | SEC Complaint ¶¶ 39-40 | |
| ¶ 11 | SEC Complaint ¶¶ 54-81 | Allegedly false statements regarding development of CBD-infused beverages |
| ¶ 12 | SEC Complaint ¶ 60 | |
| ¶ 13 | SEC Complaint ¶¶ 60-63 | |
| ¶ 14 | SEC Complaint ¶¶ 74-81 | |
| ¶ 15 | SEC Complaint ¶ 84 | Alleged motive |
| ¶ 16 | SEC Complaint ¶ 85 | |
| ¶ 17 | Adversary Complaint ¶ 294 | |
| ¶ 25 | AC Exhibit A | Alleged corrective disclosure |
| ¶ 26 | AC Exhibit B | |
| ¶ 52 | *See generally* SEC Complaint | Allegedly false statements; alleged inflation of NewAge stock price |
| ¶ 53 | SEC Complaint ¶ 48 | Allegedly false statements regarding distribution relationship with U.S. military |
| ¶ 54 | SEC Complaint ¶¶ 48, 53 | |
| ¶ 56 | SEC Complaint ¶ 32 | Allegedly false statements regarding distribution relationship with Canadian retailers |
| ¶ 59 | SEC Complaint ¶ 36 | Alleged inflation of NewAge stock price |
| ¶ 60 | SEC Complaint ¶ 37 | Allegedly false statements regarding distribution relationship with South Korean retailers |

2

| Paragraph of AC that Should be Stricken | Impermissible Source Document | Claim(s) the Source Document is used to Support in the AC |
|---|---|---|
| ¶ 61 | SEC Complaint ¶ 41 | Alleged inflation of NewAge stock price |
| ¶ 62 | SEC Complaint ¶¶ 55-81 | Allegedly false statements regarding development of CBD-infused beverages |
| ¶ 63 | SEC Complaint ¶ 82 | Alleged inflation of NewAge stock price |
| ¶ 64 | SEC Complaint ¶ 42 | Allegedly false statements regarding distribution relationship with Walmart |
| ¶ 65 | *See* SEC Complaint ¶ 45 | Alleged inflation of NewAge stock price |
| ¶ 66 | SEC Complaint ¶ 66 | Alleged inflation of NewAge stock price |
| ¶ 67 | SEC Complaint ¶ 85 | |
| ¶ 71 | SEC Complaint ¶ 86 | Alleged motive |
| ¶ 72 | SEC Complaint ¶ 86 | |
| ¶ 77 | Adversary Complaint ¶ 159 | Alleged failure to disclose information regarding internal controls |
| ¶ 79 | Adversary Complaint ¶ 164 | |
| ¶ 80 | Adversary Complaint ¶¶ 175, 177 | |
| ¶ 81 | Adversary Complaint ¶ 178 | |
| ¶ 82 | Adversary Complaint ¶¶ 182-193 | |
| ¶ 83 | Adversary Complaint ¶ 183 | |
| ¶ 84 | Adversary Complaint ¶ 187 | |
| ¶ 85 | Adversary Complaint ¶¶ 277-281 | |
| ¶ 86 | Adversary Complaint ¶ 391 | |
| ¶ 89 | AC Exhibit A | Alleged corrective disclosure |
| ¶ 90 | AC Exhibit B | |
| ¶ 92 | AC Exhibit B | |
| ¶ 94 | SEC Complaint ¶¶ 47, 48 | Allegedly false statements regarding distribution relationship with U.S. military |
| ¶ 95 | SEC Complaint ¶ 51 | |
| ¶ 96 | SEC Complaint ¶¶ 47, 48, 51 | |
| ¶ 97 | SEC Complaint ¶¶ 47, 48, 51 | |
| ¶ 98 | SEC Complaint ¶ 51 | |
| ¶ 99 | SEC Complaint ¶ 52 | |
| ¶ 100 | SEC Complaint ¶ 53 | |
| ¶ 101 | SEC Complaint ¶ 31 | Allegedly false statements regarding distribution relationship with South Korean retailers |
| ¶ 102 | SEC Complaint ¶ 34 | |
| ¶ 103 | SEC Complaint ¶ 35 | |
| ¶ 104 | SEC Complaint ¶ 36 | |
| ¶ 105 | SEC Complaint ¶ 37 | |

3

| Paragraph of AC that Should be Stricken | Impermissible Source Document | Claim(s) the Source Document is used to Support in the AC |
|---|---|---|
| ¶ 106 | SEC Complaint ¶ 37 | |
| ¶ 107 | SEC Complaint ¶¶ 39, 40 | |
| ¶ 108 | SEC Complaint ¶¶ 36, 41 | |
| ¶ 109 | SEC Complaint ¶ 56 | Allegedly false statements regarding development of CBD-infused beverages |
| ¶ 110 | SEC Complaint ¶¶ 55, 57 | |
| ¶ 111 | SEC Complaint ¶ 59 | |
| ¶ 112 | SEC Complaint ¶ 60 | |
| ¶ 113 | SEC Complaint ¶¶ 62-63 | |
| ¶ 114 | SEC Complaint ¶ 65 | |
| ¶ 115 | SEC Complaint ¶ 67 | |
| ¶ 116 | SEC Complaint ¶ 69 | |
| ¶ 117 | SEC Complaint ¶ 70 | |
| ¶ 118 | SEC Complaint ¶ 71 | |
| ¶ 119 | SEC Complaint ¶ 72 | |
| ¶ 120 | SEC Complaint ¶ 74 | |
| ¶ 121 | SEC Complaint ¶¶ 75, 77 | |
| ¶ 122 | SEC Complaint ¶ 78 | |
| ¶ 123 | SEC Complaint ¶ 79 | |
| ¶ 124 | SEC Complaint ¶81 | |
| ¶ 125 | SEC Complaint ¶ 82 | |
| ¶ 126 | SEC Complaint ¶ 42 | Allegedly false statements regarding distribution relationship with Walmart |
| ¶ 127 | *See* SEC Complaint ¶ 127 | |
| ¶ 128 | SEC Complaint ¶ 44 | |
| ¶ 129 | SEC Complaint ¶ 45 | |
| ¶ 130 | SEC Complaint ¶¶ 20, 25, 29, 33, 34, 38, 43, 49, 58, 61, 66, 68, 73 | |
| ¶ 132 | Adversary Complaint ¶ 272(a) | Alleged failure to disclose information regarding allegedly insufficient internal controls |
| ¶ 133 | Adversary Complaint ¶ 272(b) | |
| ¶ 134 | Adversary Complaint ¶ 272 | |
| ¶ 135 | Adversary Complaint ¶¶ 271-272 | |
| ¶ 136 | Adversary Complaint ¶¶ 273-274 | |
| ¶ 137 | Adversary Complaint ¶¶ 273-274 | |
| ¶ 138 | Adversary Complaint ¶¶ 273-274 | |
| ¶ 139 | Adversary Complaint ¶ 277 | |
| ¶ 140 | Adversary Complaint ¶ 275 | |
| ¶ 141 | Adversary Complaint ¶ 279 | |
| ¶ 142 | Adversary Complaint ¶ 280 | |
| ¶ 143 | *See* Adversary Complaint ¶ 280 | |
| ¶ 144 | Adversary Complaint ¶ 281 | |

4

| Paragraph of AC that Should be Stricken | Impermissible Source Document | Claim(s) the Source Document is used to Support in the AC |
|---|---|---|
| ¶ 152 | AC Exhibit A | Alleged corrective disclosure |
| ¶ 155(a) | AC Exhibit B | Alleged falsity of statements regarding distribution relationships; scienter regarding distribution relationships |
| ¶ 155(b) | AC Exhibit A | |
| ¶ 155(c) | AC Exhibit C | |
| ¶ 155(d) | Perkins Decl. | |
| ¶ 155(e) | AC Exhibit B | |
| ¶ 158 | SEC Complaint ¶¶ 42-45 | Alleged falsity of statements regarding distribution relationship with Walmart; scienter regarding distribution relationship with Walmart |
| ¶ 161 | SEC Complaint ¶ 52 | Alleged scienter and failure to disclose information regarding inventory |
| ¶ 170 | SEC Complaint ¶¶ 56, 63 | Alleged scienter regarding development of CBD-infused beverages |
| ¶ 171 | SEC Complaint ¶¶ 62-63 | |
| ¶ 172 | SEC Complaint ¶ 59 | |
| ¶ 176 | SEC Complaint ¶81 | |
| ¶ 177 | Perkins Decl. | Alleged scienter |
| ¶ 178 | Perkins Decl. | |
| ¶ 179 | Perkins Decl. | |
| ¶ 180 | SEC Complaint ¶ 50 | Alleged scienter regarding distribution relationship with U.S. military |
| ¶ 181 | SEC Complaint ¶ 74 | Alleged scienter regarding sales of CBD-infused beverages |
| ¶ 182 | SEC Complaint ¶ 80 | Alleged scienter regarding sales of CBD-infused beverages |
| ¶ 194 | SEC Complaint ¶ 16 | Alleged motive |
| ¶ 195 | SEC Complaint ¶¶ 14-16 | |
| ¶ 197 | SEC Complaint ¶ 84 | |
| ¶ 198 | SEC Complaint ¶ 84 | |
| ¶ 201 | SEC Complaint ¶85 | |
| ¶ 217 | Adversary Complaint ¶ 183 | Allegations arising from the Ariix merger |
| ¶ 218 | Adversary Complaint ¶ 173 | |
| ¶ 219 | Adversary Complaint ¶ 391 | |
| ¶ 220 | Adversary Complaint ¶ 391 | |
| ¶ 221 | Adversary Complaint ¶¶ 220, 251 | |

5

| Paragraph of AC that Should be Stricken | Impermissible Source Document | Claim(s) the Source Document is used to Support in the AC |
|---|---|---|
| ¶ 222 | Adversary Complaint ¶ 246 | |
| ¶ 223 | Adversary Complaint ¶¶ 86-87 | |
| ¶ 224 | Adversary Complaint ¶ 86 | |
| ¶ 225 | Adversary Complaint ¶¶ 239-241 | |
| ¶ 226 | Adversary Complaint ¶¶ 220, 246, 248, 344 | |
| ¶ 231 | Adversary Complaint ¶ 188 | Alleged motive |
| ¶ 237 | SEC Complaint ¶¶ 1-4; Adversary Complaint ¶¶ 2-17 | Alleged loss causation |
| ¶ 244 | AC Exhibit A | Alleged corrective disclosures |
| ¶ 245 | AC Exhibit B | |
| ¶ 267-288 | SEC Complaint ¶¶ 99-101 | Alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act |

6

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION AND

## MEET AND CONFER OBLIGATION

I hereby certify that the foregoing *Brent Willis's Motion to Strike Portions of Plaintiffs' Amended Consolidated Class Action Complaint and Exhibits A, B, and C Thereto* complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).  I further certify that the parties met-and-conferred before Mr. Willis filed the foregoing motion.

/s/ Michael J. Diver

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on July 30, 2024, he caused *Brent Willis's Motion to Strike Portions of Plaintiffs' Amended Consolidated Class Action Complaint and Exhibits A, B, and C Thereto* to be filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Michael J. Diver

7