## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03161-DDD-TPO

DENNIS CLIFTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

      Plaintiff,

      v.

BRENT WILLIS, FRED COOPER, TIM HAAS, REGINALD KAPTEYN, ALICIA SYRETT, GREGORY GOULD, CHUCK ENCE, CARL AURE, KEVIN MANION, ED BRENNAN, AMY KUZDOWICZ, and GREG FEA,

      Defendants.

---

### DEFENDANT BRENT WILLIS'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND THE EXHIBITS THERETO

---

Defendant Brent Willis ("Willis"), by and through undersigned counsel, respectfully submits this Motion to Strike Portions of Plaintiffs' Second Amended Consolidated Class Action Complaint and The Exhibits Thereto pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

SUMMARY OF RELEVANT FACTS ................................................................................. 2

      A.      Plaintiffs' Amended Complaint "Pervasively" Relied on Inadmissible
           Sources. ...................................................................................................... 2

      B.      Plaintiffs Improperly Acquired Discovery from the SEC Action. .......................... 3

      C.      Plaintiffs Filed a Second Amended Complaint that Inadmissibly Sources
           Material. ...................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

      A.      The SAC Continues to Rely on Allegations in the SEC and Adversary
           Complaints. ................................................................................................. 5

      B.      Plaintiffs Cannot Use Discovery Produced in the SEC Action to Plead
           Their Case. .................................................................................................. 7

      C.      Mr. Willis Will be Prejudiced if Plaintiffs Are Permitted to Rely on the
           Impermissible Source Materials. ................................................................. 9

CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. First Sec. Corp.*,
249 F. Supp. 2d 1256 (D. Utah 2002)..........................................................................................9

*DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*,
1992 WL 100908 (N.D. Ill. 1992) ...............................................................................................8

*Geinko v. Padda*,
2002 WL 276236 (N.D. Ill. Feb. 27, 2002) .................................................................................6

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
934 F. Supp. 2d 1219 (C.D. Cal. 2013) .......................................................................................5

*In re CRM Holdings, Ltd. Sec. Litig.*,
2012 WL 1646888 (S.D.N.Y. May 10, 2012) .............................................................................6

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) ...............................................................................................3, 5

*Kent v. AVCO Corp.*,
815 F. Supp. 67 (D. Conn. 1992)..................................................................................................5

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976)..........................................................................................................5

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
210 F. Supp. 2d 291 (S.D.N.Y. Dec. 26, 2001) ..........................................................................8

*Martindell v. Int'l Tel. & Tel. Corp.*,
594 F.2d 291 (2d Cir. 1979)..........................................................................................................8

*Masters v. Allstate Prop. & Cas. Ins. Co.*,
2020 WL 9424371 (D. Colo 2020) ..............................................................................................5

*NAI Liquidation Tr. v. Cooper et al.*,
No. 23-50393 (LSS) (Bankr. D. Del. 2023)..................................................................................1

*Radiant Sys., Inc. v. Am. Scheduling, Inc.*,
2005 WL 1586566 (S.D. Tex. July 1, 2005).................................................................................8

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009)..........................................................................................5

*SEC v. Merrill Scott & Assocs., Ltd.*,
   600 F.3d 1262 (10th Cir. 2010) ...................................................................................................7

*SEC v. Willis*,
   22cv2744, Dkt. 1 (D. Colo.) .......................................................................................................1

*Travelers Prop. Cas. Co. of Am. v. Bobrick Washroom Equip., Inc.*,
   2021 WL 6072707 (M.D. Pa. Dec. 23, 2021)...............................................................................8

*Whitehead v. Gateway Chevrolet*,
   2004 WL 316413 (N.D. Ill. Feb. 2, 2004) ...................................................................................8

*Yates v. Applied Performance Techs., Inc.*,
   205 F.R.D. 497 (S.D. Ohio Jan. 14, 2002)...................................................................................8

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ...........................................8

**Rules**

Fed. R. Civ. P. 11(b) .......................................................................................................................3

Fed. R. Civ. P. 12(f).........................................................................................................................5

Fed. R. Civ. P. 26(c) .......................................................................................................................7

**INTRODUCTION**

Plaintiffs have once again abdicated their pleading burden. This Court warned Plaintiffs that their case could only survive scrutiny if they independently investigated their claims. They have not done so and the only appropriate remedy is to strike significant portions of Plaintiffs' Second Amended Class Action Complaint ("SAC").

This case concerns NewAge, Inc. ("NewAge" or the "Company") and its former CEO, Defendant Brent Willis. NewAge was a fledgling health and wellness company that manufactured, marketed, and sold a portfolio of healthy beverages that it distributed through a network of retail partners. On August 30, 2022, NewAge announced that it was filing for Chapter 11 bankruptcy. Bankruptcy, however, was not the impetus for this case. The catalyst came shortly thereafter, when the Securities and Exchange Commission ("SEC" or "Commission") charged Mr. Willis with alleged violations of the federal securities laws (the "SEC Complaint"). *See SEC v. Willis*, 22cv2744, Dkt. 1 (D. Colo.) (the "SEC Action"). The SEC's allegations are unproven and vigorously disputed.

Nonetheless, shortly after the SEC filed its complaint, Plaintiffs repackaged the Commission's threadbare allegations into an equally threadbare suit for damages. Plaintiffs were transparent about the genesis of their claims, referencing the SEC's allegations throughout their Amended Complaint as "evidence" of what Plaintiffs must independently establish to plead a cause of action: falsity, scienter, and loss causation. That was not all. When Plaintiffs filed their Amended Complaint in 2024, they also invoked an adversary complaint ("Adversary Complaint") filed by NewAge's Liquidation Trust in *NAI Liquidation Trust v. Cooper et al.*, No. 23-50393 (LSS) (Bankr. D. Del. 2023)—itself duplicative of the SEC Complaint—to bolster their borrowed inference of "fraud."

1

By Order dated March 27, 2025, the Court rejected Plaintiffs' reliance on the "inadmissible" allegations repurposed from the SEC and Adversary Complaints, striking Plaintiffs' Amended Complaint its entirety. (Dkt. 112.)  Although this Court allowed Plaintiffs to replead their claims, Plaintiffs have squandered the opportunity to do so properly.  Indeed, Plaintiffs' SAC continues to rely on the *same* impermissible materials that doomed its predecessor, advancing the *same* theories, the *same* unadjudicated allegations, the *same* erroneous conclusions, and in many instances, the *same* language.  The only notable difference is that this time, the SAC appends numerous confidential documents that Plaintiffs obtained in violation of a protective order in the SEC Action.   For these reasons, and those below, the Court should strike the portions of the SAC that continue to rely on the SEC and Adversary Complaints, as well as the portions of the SAC that rely on discovery obtained from the SEC Action.

## SUMMARY OF RELEVANT FACTS

### A.    Plaintiffs' Amended Complaint "Pervasively" Relied on Inadmissible Sources.

Plaintiffs, former stockholders of NewAge, have alleged that the Company's "corporate officers" "engaged in a scheme to fraudulently inflate the price of [NewAge's] stock by making false and misleading statements about its distribution agreements, its line of CBD-infused beverages, and its internal controls and disclosure protocols." (Dkt. 112 at 1.)

Plaintiffs' first attempt to support these claims was deficient in several regards.  The Amended Complaint's most glaring deficiency was that it "repeatedly cite[d] to, paraphrase[d], and copie[d] from both the SEC complaint and an adversary complaint filed in the bankruptcy proceeding," purporting to allege a claim of "fraud" that the facts themselves do not support. (*Id.* at 2.)  Noting that litigants cannot leverage "preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits,'" this Court dismissed the

2

Amended Complaint in its entirety, faulting Plaintiffs for their "pervasive[]" references to claims that have not "proven to be true." (*Id.* 3 (quoting *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003)).

Although the Court permitted Plaintiffs to replead their allegations, it reminded them of their "duty to perform an independent investigation" of the alleged facts, warning Plaintiffs not to "shirk" their Rule 11 obligation by "bootstrapping [their] claims to allegations from other legal proceedings." (Dkt. 112 at 3-4 (citing Fed. R. Civ. P. 11(b).)

### B.    Plaintiffs Improperly Acquired Discovery from the SEC Action.

Plaintiffs, though, found a work-around. Before this Court had an opportunity to opine on the sufficiency of the allegations, Plaintiffs appear to have obtained from Craig Thibodeau, the former Senior Vice President of Sales at NewAge, numerous documents that were produced in the SEC Action. In May 2024, both Mr. Willis and the SEC sought Mr. Thibodeau's testimony, which he voluntarily agreed to provide. (Eichenberger Decl. ¶ 5.) Mr. Thibodeau obtained several documents from the SEC Action in connection with his July 17, 2024 deposition in that matter. As he explained during his deposition:

> Q: In what way did the SEC ask that you prepare for today's deposition?
> A: Just to remind my [sic] – refresh my memory on documents.
> Q: And so is it correct that you had conversations with the SEC prior to today?
> A: It is correct, yeah . . .
> Q: Okay. Can you describe those discussions?
> A: Just about the – the documents, so document sharing. Again, refresh memory, stuff like that.
> Q: Okay, so did the SEC send you specific documents to review?
> A: Yes.
> Q: What documents were those?
> A: There were over a hundred – over 60 documents that were sent and a lot of it was this [deposition exhibits].
> Q: Did you discuss any of those individual documents on your calls with the SEC?
> A: Yeah, I did.

Q: Can you recall which documents you discussed?
A: Specifically the e-mails. I don't have any records of anything. When I resigned from New Age I handed in my computer, so – just again refreshing my memory on e-mails that were sent."

(SAC Ex. 4 108:15-109:25.)

Mr. Thibodeau knew, or should have known, that there were restrictions on his use of the documents he received in connection with the SEC Action. First, the protective order in the SEC Action required the SEC to advise Mr. Thibodeau of his obligation to maintain the confidentiality of all documents marked confidential. (*See* Exhibit 1.) Second, notice of the documents' confidentiality could hardly have escaped Mr. Thibodeau's attention.[1] Third, Mr. Thibodeau knew, or should have known, that information communicated on NewAge's email servers, and to which he did not have access after his separation, was not "his" to disseminate. (*See* SAC Ex. 4 109:23-25.) Nonetheless, Mr. Thibodeau appears to have given Plaintiffs at least twenty-six documents he received in connection with the SEC Action.

## C.    Plaintiffs Filed a Second Amended Complaint that Inadmissibly Sources Material.

In an SAC filed approximately three weeks after the Court dismissed the Amended Complaint, Plaintiffs removed Mr. Thibodeau as a defendant, continued to invoke the claims in the SEC and Adversary Complaints as proof of "fraud," and relied extensively on the documents they received from Mr. Thibodeau to buttress their claims. Mr. Willis's counsel promptly advised Plaintiffs of their objection to the SAC's pleading tactics. (Eichenberger Decl. ¶ 17.) However, despite being on notice of the numerous improprieties in their amended pleading, Plaintiffs refused to modify the SAC, leaving Mr. Willis no choice but to renew his motion to strike.

---

[1] Although Mr. Willis's counsel is not privy to the exact selection of documents the SEC provided Mr. Thibodeau, based on their extensive knowledge of discovery in the SEC Action, Mr. Willis's counsel believes that most, if not all, of the documents Mr. Thibodeau received were branded with some variation of the phrase "CONFIDENTIAL TREATMENT REQUESTED." (Eichenberger Decl. ¶ 8.)

4

## ARGUMENT

Federal Rule of Civil Procedure 12(f) permits courts to strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This rule exists to be enforced. *See Masters v. Allstate Prop. & Cas. Ins. Co.*, 2020 WL 9424371, at *3 (D. Colo 2020) (explaining that Rule 12(f) "*has no teeth if the court is unwilling to enforce it*") (emphasis added). It is, moreover, appropriately deployed in situations where, as here, Plaintiffs' allegations are based on materials that are "as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 404 (S.D.N.Y. 2009) (granting motion to strike plaintiff's reliance on unadjudicated complaints in other actions); s*ee also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (adopting *RSM's* holding as a "general rule").

### A. The SAC Continues to Rely on Allegations in the SEC and Adversary Complaints.

The portions of the SAC that continue to rely on unproven claims in the SEC and Adversary Complaints are immaterial as a matter of law and should be stricken under Rule 12(f). This Court, like several of its peers, has held that Plaintiffs cannot meet their pleading burden by relying on allegations in proceedings that have not been "adjudicated on the merits or otherwise proven to be true." (Dkt. 112 at 3); *see Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("neither a complaint nor references to a complaint" which result in a consent judgment may properly be cited in the pleadings because it is "not the result of an actual adjudication of any of the issues."); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Secs. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial" under Rule 12(f)); *Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992)

("References to other litigation that [defendant] is presently or had previously been a party to are immaterial to this case" and "should be stricken"); *see also In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) ("Plaintiffs' citation to 'unproven allegations' made in [other complaints] do not constitute factual allegations," "[t]hus, Plaintiffs may not rely on these sources as evidence of the alleged fraud.").

Although the SAC omits the most overt references to the SEC and Adversary Complaints, nothing has substantively changed.  Indeed, the vestiges of both pleadings are everywhere.  Like its predecessor, the SAC continues to use the "existence" of the SEC and Adversary proceedings as evidence of a securities violation, acknowledging that Plaintiffs' claims are premised on "[t]he fact that Willis was sued by the SEC" and the fact that "Defendants were sued by the Liquidation Trust."  (SAC ¶ 62.)  That is not the only thing that has remained the same.  As demonstrated in the redlined version of their pleading, Plaintiffs have, in many instances, removed explicit references to the SEC and Adversary Complaints without modifying the facts alleged.  (*See* Dkt. 116 at 32-36 (re-alleging nearly identical claims about the U.S. military relationship); *id.* at 38-49 (re-alleging the nearly identical claims about NewAge's CBD-related statements).  This is illustrated, for example, in Plaintiffs' overview of their case, which makes stylistic rather than substantive changes to obfuscate the fact that their pleadings *remain the same*.  (Dkt. 116 at 2-10.) In fact, as illustrated in Appendix A, *every single* misstatement alleged in the SAC derives from the SEC or Adversary Complaints and, in some cases, from both, making it impossible to determine what Plaintiffs "directly allege as fact and what Plaintiffs are merely asserting that someone else has alleged." *See Geinko v. Padda*, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002) (dismissing amended complaint that attached "over 300 pages of additional material," including

6

an "SEC Complaint," from which plaintiffs had "extrapolated" their allegations).  This ambiguity, which condemned the Amended Complaint, dooms the SAC.  (*See* Dkt. 112.)

**B.      Plaintiffs Cannot Use Discovery Produced in the SEC Action to Plead Their Case.**

To deflect from their reliance on hearsay, Plaintiffs appended twenty-six "new" exhibits to the SAC, the majority of which they appear to have obtained from the SEC Action <u>in violation of a protective order.</u>  (Ex. 1.)  Section 17 of the protective order states that documents "produced by any person or entity to the SEC, bearing the language 'Requests That These Documents Be Accorded Confidential Treatment' or 'Confidential Treatment Requested By,' "***shall not be used by any Party other than for purposes of litigating this case***."  (Ex. 1 at § 17 (emphasis added).)

Most of the documents attached as Exhibits to the SAC are branded with precisely such language: "CONFIDENTIAL TREATMENT REQUESTED BY GREENBERG TRAURIG," identifying them as documents produced to the SEC on behalf of NewAge, and subsequently re-produced to Mr. Willis.  (*See* SAC Exs. 2, 5, 7, 8, 9, 11, 13, 14, 15, 17, 19, 20, 21, 22, 25, 26.)  While the transcripts memorializing Mr. Thibodeau's testimony are not themselves designated confidential, they make extensive use of confidential documents, referencing, quoting from, and paraphrasing numerous such documents, including certain of the "confidential" exhibits appended to the SAC.  (*See generally* SAC Exs. 3, 4.)  Plaintiffs' use of these "confidential" materials plainly contravenes the protective order in the SEC Action.[2]

---

[2] Although Plaintiffs are not parties to the protective order in the SEC Action, the Tenth Circuit has made clear that even non-parties are bound by terms that clearly "prohibited" the "further dissemination" of confidential documents.  *See SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1273-74 (10th Cir. 2010). As the Second Circuit explained, "[u]nless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. . . . [A]bsent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance compelling need . . . a witness should be entitled to

Courts have "broad discretion to impose whatever remedy they deem appropriate" when, as here, Plaintiffs have violated "protective orders." *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 500-01 (S.D. Ohio Jan. 14, 2002) (striking deposition testimony obtained in violation of protective order in separate proceeding stipulating that "confidential documents were not to be used for any purpose other than that judicial proceeding"). One such remedy is an order striking the offending materials. *Id*; *see, e.g.*, *Travelers Property Casualty Co. of Am. v. Bobrick Washroom Equipment, Inc.*, 2021 WL 6072707, at *8 (M.D. Pa. Dec. 23, 2021) (granting motions to strike and concluding that "prior arbitration testimony" was "protected under the parties' Confidentiality Agreement and may not be copied, summarized, or alluded to in any manner" in subsequent dispute involving the same defendant); *Radiant Sys., Inc. v. Am. Scheduling, Inc.*, 2005 WL 1586566, at *3 (S.D. Tex. July 1, 2005) (vacated in part on other grounds) (granting motion to strike, ordering clerk of court to "expunge from the public record" exhibits in reply brief that were subject to protective order in a separate action); *Whitehead v. Gateway Chevrolet*, 2004 WL 316413, at *4-5 (N.D. Ill. Feb. 2, 2004) (striking allegation in pleading that violated a protective order in separate case); *DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*, 1992 WL 100908, at *2 (N.D. Ill. 1992) (striking "over forty pages of confidential material" that defendant included in reply brief in violation of a protective order).

Accordingly, to remedy the Plaintiffs' violation of the protective order, the exhibits to the SAC, and the portions of the SAC that rely on those materials—which are listed in Appendix B—should be stricken.[3]

---

rely upon the enforceability of a protective order against any third parties." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295-96 (2d Cir. 1979).

[3] In all events, Plaintiffs' use of the documents represents the type of end run around the Private Securities Litigation Reform Act of 1995 that federal courts have long rejected at the pleading stage. *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 210 F. Supp. 2d 291, 293 (S.D.N.Y. Dec. 26, 2001) (denying Plaintiff's application to amend complaint with confidential information from another proceeding because

**C.      Mr. Willis Will be Prejudiced if Plaintiffs Are Permitted to Rely on the Impermissible Source Materials.**

Mr. Willis's motion to strike should be granted for an additional reason: Plaintiffs' conduct is highly prejudicial.  *See* 5C Wright & Miller Fed. Prac. & Proc. Civ. § 1382 (3d ed.) (motions to strike should be granted if the challenged material "may cause some form of significant prejudice to one or more of the parties to the action").

It is fundamentally unfair for Plaintiffs to ask this Court to assume the truth of third-party allegations that were neither "adjudicated on the merits [n]or otherwise proven to be true."  (*See* Dkt. 112, at 3.)  It is also inequitable for Plaintiffs to use portions of a discovery record in violation of a protective order.  Despite having had access to the thirty-five documents hyperlinked in Mr. Thibodeau's deposition transcript, and presumably every one of the "60" to "100" documents Mr. Thibodeau viewed in preparation for his testimony, Plaintiffs have culled and curated a narrative based on a handful of documents that are taken grossly out of context omitting the far more voluminous set of documents that undercut their theory of liability.  This, in turn, places Mr. Willis in a Catch-22 situation in moving to dismiss.  While plaintiffs cherry-pick from a record, defendants are forced to choose between letting obvious mischaracterizations stand and exposing even more confidential information to a party who has shown no regard for court-ordered limitations on their use.  For that additional reason, the paragraphs of the SAC enumerated in Appendices A and B should be stricken, along with the twenty-six exhibits to the complaint.

### CONCLUSION

This Court should grant Mr. Willis's Motion to Strike for the foregoing reasons.

---

doing so would violate the Private Securities Litigation Reform Act of 1995 discovery stay); *see also Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256, 1272 (D. Utah 2002) (granting motion to dismiss where Plaintiffs amended their complaint based on "information obtained through discovery after the prior Complaint had been filed but before this court had sustained the legal sufficiency of the Complaint").

DATED:  May 29, 2025

Respectfully submitted,

/s/ *Michael J. Diver*

KATTEN MUCHIN ROSENMAN LLP

Michael J. Diver
Michael J. Lohnes
Lari Dierks
Jamie N. Noonan
525 W. Monroe Street
Chicago, Illinois 60661
Telephone:  312.902.5200
michael.diver@katten.com
michael.lohnes@katten.com
lari.dierks@katten.com
jamie.noonan@katten.com

Sarah Eichenberger
Zoe Lo
50 Rockefeller Plaza
New York, New York, 10020
sarah.eichenberger@katten.com
zoe.lo@katten.com

*Attorneys for Defendant Brent Willis*

10

## APPENDIX A

| Paragraph of SAC that Should be Stricken | Source Document | Claim(s) the Source Document is used to Support in the SAC |
|---|---|---|
| ¶ 6 | SEC Complaint ¶ 47-48 | Allegedly false statements regarding distribution relationship with U.S. military |
| ¶ 7 | SEC Complaint ¶¶ 52 | |
| ¶ 8 | SEC Complaint ¶¶ 32, 36 | Allegedly false statements regarding distribution relationship with Canadian Retailers |
| ¶ 9 | SEC Complaint ¶¶ 35 | |
| ¶ 10 | SEC Complaint ¶ 37 | Allegedly false statements regarding relationship with South Korean distributor |
| ¶ 11 | SEC Complaint ¶ 39-41 | |
| ¶ 12 | SEC Complaint ¶ 57 | Allegedly false statements regarding development of CBD-infused beverages |
| ¶ 13 | SEC Complaint ¶¶ 59, 63 | |
| ¶ 14 | SEC Complaint ¶¶ 64, 74, 78 | |
| ¶ 17 | SEC Complaint ¶ 84 | Alleged motive |
| ¶ 18 | SEC Complaint ¶ 85 | |
| ¶ 19 | Adversary Complaint ¶ 294 | |
| ¶ 63 | SEC Complaint ¶ 48 | Allegedly false statements regarding distribution relationship with U.S. military |
| ¶ 64 | SEC Complaint ¶¶ 48, 53 | |
| ¶ 67 | SEC Complaint ¶ 32 | Allegedly false statements regarding distribution relationship with Canadian retailers |
| ¶ 70 | SEC Complaint ¶ 35 | |
| ¶ 75 | SEC Complaint ¶ 37 | Allegedly false statements regarding relationship with South Korean distributor |
| ¶ 79 | SEC Complaint ¶ 59 | Allegedly false statements regarding development of CBD-infused beverages |
| ¶ 80 | SEC Complaint ¶¶ 55-81 | |
| ¶ 82 | SEC Complaint ¶ 42 | Allegedly false statements regarding distribution relationship with Walmart |
| ¶¶ 93, 95 | SEC Complaint ¶ 86; Adversary Complaint ¶ 294 | Alleged motive |
| ¶ 94 | SEC Complaint ¶ 86 | |
| ¶ 99 | Adversary Complaint ¶ 159 | Alleged failure to disclose information regarding internal controls |
| ¶ 101 | Adversary Complaint ¶ 164 | |
| ¶ 102 | Adversary Complaint ¶ 177 | |
| ¶ 103 | Adversary Complaint ¶ 178 | |
| ¶ 104 | Adversary Complaint ¶¶ 182-193 | |

| Paragraph of SAC that Should be Stricken | Source Document | Claim(s) the Source Document is used to Support in the SAC |
|---|---|---|
| ¶ 105 | Adversary Complaint ¶ 183 | |
| ¶ 106 | Adversary Complaint ¶ 187 | |
| ¶ 108 | Adversary Complaint ¶¶ 277-281 | |
| ¶ 115 | SEC Complaint ¶¶ 48 | Allegedly false statements regarding distribution relationship with U.S. military |
| ¶ 116-121 | SEC Complaint ¶¶ 51, 52 | |
| ¶ 122 | SEC Complaint ¶ 32 | Allegedly false statements regarding distribution relationship with Canadian retailers |
| ¶ 123 | SEC Complaint ¶ 34 | |
| ¶ 124 | SEC Complaint ¶ 35 | |
| ¶ 125 | SEC Complaint ¶ 36 | |
| ¶ 126-127 | SEC Complaint ¶ 37 | Allegedly false statements regarding relationship with South Korean distributor |
| ¶ 128 | SEC Complaint ¶¶ 39, 40 | |
| ¶ 129 | SEC Complaint ¶¶ 36, 41 | |
| ¶ 130 | SEC Complaint ¶¶ 55, 57 | Allegedly false statements regarding development of CBD-infused beverages |
| ¶ 131 | SEC Complaint ¶ 59 | |
| ¶ 132 | SEC Complaint ¶ 60 | |
| ¶ 133 | SEC Complaint ¶¶ 63 | |
| ¶ 134 | SEC Complaint ¶ 65 | |
| ¶ 135 | SEC Complaint ¶ 67 | |
| ¶ 136 | SEC Complaint ¶ 69 | |
| ¶ 137 | SEC Complaint ¶ 70 | |
| ¶ 138 | SEC Complaint ¶ 71 | |
| ¶ 139 | SEC Complaint ¶ 72 | |
| ¶ 140 | SEC Complaint ¶¶ 74, 75 | |
| ¶ 141 | SEC Complaint ¶¶ 77 | |
| ¶ 142 | SEC Complaint ¶ 78 | |
| ¶ 143 | SEC Complaint ¶ 79 | |
| ¶ 144 | SEC Complaint ¶81 | |
| ¶ 145 | SEC Complaint ¶ 82 | |
| ¶ 146 | SEC Complaint ¶ 42 | Allegedly false statements regarding distribution relationship with Walmart |
| ¶ 148 | SEC Complaint ¶ 44 | |
| ¶ 149 | SEC Complaint ¶ 45 | |
| ¶ 150 | SEC Complaint ¶¶ 33, 34, 38, 43, 49, 58, 61, 66, 68, 73 | |
| ¶¶ 151-163 | Adversary Complaint ¶¶ 271-282 | Alleged failure to disclose information regarding allegedly insufficient internal controls |
| ¶ 221 | SEC Complaint ¶ 59 | Alleged scienter regarding development of CBD-infused beverages |

| Paragraph of SAC that Should be Stricken | Source Document | Claim(s) the Source Document is used to Support in the SAC |
|---|---|---|
| ¶ 248 | SEC Complaint ¶ 14 | Alleged motive |
| ¶ 250 | SEC Complaint ¶ 84 | |
| ¶ 251 | SEC Complaint ¶ 84 | |
| ¶ 254 | SEC Complaint ¶85 | |
| ¶ 261 | Adversary Complaint ¶ 127 | |
| ¶ 263 | Adversary Complaint ¶ 294 | |
| ¶¶ 267-268 | Adversary Complaint ¶¶ 293-294 | |
| ¶ 270 | Adversary Complaint ¶ 183 | Allegations arising from the Ariix merger |
| ¶ 271 | Adversary Complaint ¶ 173 | |
| ¶ 272 | Adversary Complaint ¶ 391 | |
| ¶ 275 | Adversary Complaint ¶ 391 | |
| ¶ 276 | Adversary Complaint ¶¶ 220, 251 | |
| ¶ 277 | Adversary Complaint ¶ 246 | |
| ¶ 278 | Adversary Complaint ¶¶ 237 | |
| ¶ 280 | Adversary Complaint ¶¶ 220; 221 | |
| ¶ 281 | Adversary Complaint ¶¶ 239-241 | |
| ¶ 282 | Adversary Complaint ¶¶ 248, 344 | |

13

**APPENDIX B**

| SAC Exhibit | Paragraph(s) of the SAC that Rely on SAC Exhibit(s) and Should be Stricken |
|---|---|
| Ex. 1 | ¶¶ 50; 60 |
| Ex. 2 | ¶¶ 54; 184 |
| Ex. 3 | ¶¶ 48; 57; 70; 71; 76; 85; 86; 150; 179; 183; 195; 198; 201 n. 11; 209; 210 n. 12; 218; 220; 261 n. 14; |
| Ex. 4 | ¶¶ 8 n. 1; 48; 56; 57; 58; 60; 72; 76; 77; 84; 85; 86; 109; 128; 177; 178 n.9; 180; 181; 184; 186; 188; 191; 198; 200; 215; 227; 228; 231 n. 13; 236 |
| Ex. 5 | ¶ 86 |
| Ex. 6 | ¶ 150 |
| Ex. 7 | ¶¶ 193; 231 |
| Ex. 8 | ¶ 177 |
| Ex. 9 | ¶¶ 183; 210 |
| Ex. 10 | ¶ 196 |
| Ex. 11 | ¶ 195 |
| Ex. 12 | ¶ 196 |
| Ex. 13 | ¶¶ 197; 199 |
| Ex. 14 | ¶ 200 |
| Ex. 15 | ¶ 201 |
| Ex. 16 | ¶¶ 177; 178; 182 |
| Ex. 17 | ¶¶ 187; 210 |
| Ex. 18 | ¶ 210 |
| Ex. 19 | ¶ 216 |
| Ex. 20 | ¶ 217 |
| Ex. 21 | ¶ 232 |
| Ex. 22 | ¶ 233 |
| Ex. 23 | ¶ 234 |
| Ex. 24 | ¶¶ 183; 192; 193 |
| Ex. 25 | ¶ 210 |
| Ex. 26 | ¶¶ 202; 203 |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION AND MEET AND CONFER OBLIGATION

I hereby certify that the foregoing *Brent Willis's Motion to Strike Portions of Plaintiffs' Second Amended Consolidated Class Action Complaint and The Exhibits Thereto* complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).  I further certify that the parties met-and-conferred before Mr. Willis filed the foregoing motion.

/s/ Michael J. Diver

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on May 29, 2025, he caused *Brent Willis's Motion to Strike Portions of Plaintiffs' Second Amended Consolidated Class Action Complaint and The Exhibits Thereto* to be filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Michael J. Diver

16