**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03161-DDD-TPO

DENNIS CLIFTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

Plaintiff,

                v.

BRENT WILLIS,
FRED COOPER,
TIM HAAS,
REGINALD KAPTEYN,
ALICIA SYRETT,
GREGORY GOULD,
CHUCK ENCE,
CARL AURE,
KEVIN MANION,
ED BRENNAN,
AMY KUZDOWICZ,
and GREG FEA

Defendants.

---

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
ALICIA SYRETT'S MOTION TO DISMISS THE SECOND AMENDED CLASS
ACTION COMPLAINT**

---

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 4

      A.     NewAge's Relationships With The Military, Retailers, and Distributors and
            Its CBD Beverage Portfolio ......................................................................... 4

      B.     Syrett Joins The Board And Benefits From NewAge's Soaring Stock Price ......... 4

      C.     The Ariix Merger ....................................................................................... 5

      D.     The Truth Begins To Emerge ..................................................................... 7

ARGUMENT .............................................................................................................. 8

I.     PLAINTIFFS HAVE STANDING.................................................................... 8

II.    THE SAC ADEQUATELY PLEADS FALSITY ............................................. 9

      A.     Syrett Was The Maker Of False And Misleading Statements ................................ 9

      B.     Syrett's Statements Were False And Misleading When Made ............................. 10

III.   THE SAC SUFFICIENTLY PLEADS A STRONG INFERENCE OF SCIENTER ....... 16

      A.     The Non-Existent/Grossly Exaggerated Agreements And CBD Portfolio ........... 17

      B.     The Ariix FCPA Investigation .................................................................... 20

      C.     Personal Financial Motive Bolsters Strong Inferences Of Scienter ..................... 23

IV.   THE SECOND AMENDED COMPLAINT STATES CONTROL PERSON
      CLAIMS UNDER SECTION 20(A) ................................................................. 24

CONCLUSION.......................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Adams v. Kinder-Morgan, Inc.*,
　340 F.3d 1083 (10th Cir. 2003) ........................................................................9, 27

*In re Alstom SA Sec. Litig.*,
　406 F. Supp 2d 433 (S.D.N.Y. 2005).......................................................................25

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
　827 F.3d 1229 (10th Cir. 2016)*, as amended* (July 6, 2016) ......................................19

*Arora v. HDFC Bank Ltd.*,
　671 F. Supp. 3d 305 (E.D.N.Y. 2023) ....................................................................13

*In re BioScrip, Inc. Sec. Litig.*,
　95 F. Supp. 3d 711 (S.D.N.Y. 2015)........................................................................18

*Blue Chip Stamps v. Manor Drug Stores*,
　421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975).................................................8

*Burges v. BancorpSouth Inc.*,
　2015 WL 4198795 (M.D. Tenn. July 10, 2015) .......................................................16

*City of Phila. v. Fleming Cos., Inc.*,
　264 F.3d 1245 (10th Cir. 2001) ...........................................................................22

*Croker v. Carrier Access Corp.*,
　2006 WL 2035366 (D. Colo. July 18, 2006) ...........................................................17

*Crowell v. Ionics, Inc.*,
　343 F. Supp. 2d 1 (D. Mass. 2004) .........................................................................3

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
　2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .........................................................12

*El Paso Fireman & Policemen's Pension Fund v. InnovAge Holding Corp.*,
　709 F. Supp. 3d 1296 (D. Colo. 2023).....................................................................26

*Emps. Ret. Sys. of City of Providence v. Embraer S.A.*,
　2018 WL 1725574 (S.D.N.Y. Mar. 30, 2018) .........................................................16

*In re Enron Corp. Sec., Deriv. & "Erisa" Litig.*,
　2003 WL 21418157 (S.D. Tex. 2003) .....................................................................24

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) .......................................................................................24

*Farlow v. Peat, Marwick, Mitchell & Co.*,
956 F.2d 982 (10th Cir. 1992) ...................................................................................................9

*In re Gold Res. Corp. Sec. Litig.*,
957 F. Supp. 2d 1284 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015) .......................20

*Hampton v. root9B Technologies, Inc.*,
897 F.3d 1291 (10th Cir. 2018) ...............................................................................................27

*Heller v. Goldin Restructuring Fund, L.P.*,
590 F. Supp. 2d 603 (S.D.N.Y. 2008)........................................................................................16

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017) ................................................................................14

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ...................................................................................................16

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................................................10

*IBT Emp. Grp. Welfare Fund v. Compass Minerals Int'l, Inc.*,
706 F. Supp. 3d 1225 (D. Kan. 2023)........................................................................................22

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).................................................................................................................9, 10

*Jun Zhang v. LifeVantage Corp.*,
2017 WL 2599883 (D. Utah June 15, 2017)..............................................................................22

*In re LDK Solar Securities Litigation*,
2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) .........................................................................25

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
667 F.3d 1331 (10th Cir. 2012) ...............................................................................................20

*In re Livent, Inc. Sec. Litig.*,
148 F. Supp. 2d 331 (S.D.N.Y. 2001)........................................................................................20

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
2011 WL 12627599 (N.D. Ala. Aug. 23, 2011) ........................................................................10

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
    2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ......................................................................14, 19

*Maher v. Durango Metals, Inc.*,
    144 F.3d 1302 (10th Cir. 1998) ......................................................................................24, 25

*Mart v. Tactile Sys. Tech., Inc.*,
    595 F. Supp. 3d 788 (D. Minn. 2022).............................................................................19, 23

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings,*
    *Inc.*,
    79 F.4th 1209 (10th Cir. 2023) ..............................................................................................22

*In re Molycorp, Inc. Sec. Litig.*,
    157 F. Supp. 3d 987 (D. Colo. 2016), *as amended* (Jan. 29, 2016).................................3, 9, 26

*Nakkhumpun v. Taylor*,
    782 F.3d 1142 (10th Cir. 2015) ......................................................................................17, 23

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) ..................................................................................23

*New Jersey & Its Division of Inv. v. Sprint Corp.*,
    314 F. Supp. 2d 1119 (D. Kan. 2004)....................................................................................25

*In re: NewAge, Inc., et al.*,
    No. 22 10819 (LSS) (D. Del. Bankr.)......................................................................................8

*In re: NewAge, Inc. et al.*,
    No. 22-50432 (LSS) (D. Del. Bankr.)......................................................................................7

*Nicholas v. Poughkeepsie Sav. Bank/FSB*,
    1990 WL 145154 (S.D.N.Y. Sept. 27, 1990)..........................................................................8

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..............................................................................................12, 13, 15

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    372 F. Supp. 3d 1139 (D. Colo. 2019)....................................................................................8

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015)....................................................................................13

*In re PetroChina Co. Ltd. Securities Litigation*,
120 F. Supp. 3d 340 (S.D.N.Y. 2015), *aff'd* (Mar. 21, 2016)...................................................13

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007).......................................................................................19

*Roots P'ship v. Lands' End, Inc.*,
965 F.2d 1411 (7th Cir. 1992) ...................................................................................................8

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.*,
2022 WL 3572474 (M.D. Pa. Aug. 18, 2022) ..........................................................................14

*SEC v. Curshen*,
372 F. App'x 872 (10th Cir. 2010) ...........................................................................................23

*In re SemGroup Energy Partners, L.P.*,
729 F. Supp. 2d 1276 (N.D. Okla. 2010)..................................................................................22

*In re Sprint Corp. Sec. Litig.*,
232 F. Supp. 2d 1193 (D. Kan. 2002)........................................................................................23

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
690 F. Supp. 2d 959 (D. Ariz. 2010) ........................................................................................26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................................................17, 23

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) .......................................................................10, 19, 23

*Tracinda Corp. v. DaimlerChrysler AG*,
197 F. Supp. 2d 42 (D. Del. 2002)............................................................................................25

*UA Loc. 13 Pension Fund v. Sealed Air Corp.*,
2021 WL 2209921 (S.D.N.Y. June 1, 2021) .......................................................................11, 12

*United Food & Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*,
2022 WL 684169 (D. Colo. Mar. 8, 2022) ................................................................................16

*In re Vivendi Universal, S.A. Sec. Litig.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ..................................................................................................9

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)...............................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003)..................................................................................15, 24

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
    426 F. Supp. 3d 864 (D. Kan. 2019).........................................................................................17

**Statutes**

15 U.S.C. §78u-4(b)(1)(B).................................................................................................................9

**Other Authorities**

17 C.F.R. §229.308(a)(3)...................................................................................................................5

17 C.F.R. §240.13a–15(e)..................................................................................................................5

17 C.F.R. §240.13a–15(f) ..................................................................................................................5

Fed. R. Civ. P. 15(a)(2)......................................................................................................................2

Fed. R. Evid. 801(d)(2) ......................................................................................................................8

Lead Plaintiffs Damian Betebenner and Cigdem Betebenner ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Alicia Syrett's ("Syrett") Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Motion" or "MTD") (Dkt. 129).[1, 2]

## INTRODUCTION

Syrett joined the NewAge Board of Directors ("Board") in January 2020 and served as an Audit Committee member in 2020 and 2021.  In that role, Syrett was required to monitor the Company's internal controls and "any fraud involving management or other employees with a significant role in such internal controls[.]"  By the time Syrett joined the Company, the SEC had been investigating NewAge for nearly a year.  The fraud that the SEC was investigating involved CEO Brent Willis ("Willis") and other management-level employees who had repeatedly disseminated false and misleading information to the market through press releases, conference calls, and interviews about distribution agreements for NewAge's beverages, a CBD beverage portfolio, and orders for the portfolio that either did not exist or were grossly exaggerated.  This conduct directly implicated the Company's internal and disclosure controls and procedures ("Disclosure Controls").  Either NewAge's controls were ineffective because Willis and others were able to repeatedly bypass them and disseminate materially false and misleading

---

[1]    Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; (3) "SAC" or "Second Amended Complaint" refers to Plaintiffs' Second Amended Class Action Complaint (Dkt. 114); (4) all "¶__" references are to the SAC; and (5) all capitalized terms have the same meaning as those used in the SAC.
[2]    Plaintiffs adopt and incorporate the arguments in their oppositions to the other defendants' motions to dismiss and motion to strike filed herewith, to the extent those arguments also pertain to defendant Syrett.

1

information, or the controls were nonexistent.  Nonetheless, Syrett signed NewAge's annual report for 2019 attesting to their effectiveness.

But those were not the only issues plaguing NewAge during Syrett's tenure.  Capitalizing on its inflated share price and seemingly improved prospects based on these lies, NewAge engaged in an acquisition spree that culminated in the ill-fated Ariix merger.  The merger closed in November 2020 without NewAge obtaining audited financials, which permitted Ariix to cherry-pick certain materially negative information to disclose only after closing.  Immediately post-closing, NewAge learned the truth about Ariix.  Not only did it have negative $18 million in working capital (a shortfall of $29 million compared to what it initially represented to NewAge), but it also received an order suspending Ariix from recruiting new brand partners in Japan due to fraudulent practices likely in violation of the FCPA.  The Audit Committee, as part of its duties and responsibilities, was necessarily involved in the FCPA investigation that ensued.  While Syrett and others would disclose in the 2020 Form 10-K that NewAge's Disclosure Controls were ineffective due to a material weakness in internal controls having to do with certain things related to the Ariix merger, they misled the market by failing to disclose the fact that NewAge was engaged in a ruinously expensive investigation into Ariix's possible FCPA violations.

In her Motion,[3] Syrett argues that she cannot be liable for securities fraud because she was not the "maker" of any statements in the two SEC filings discussed above.  Not so – she is considered a "maker" of false and misleading statements in documents that she signed.  Syrett

---

[3]    Syrett requests that the SAC as to Syrett be dismissed with prejudice.  MTD 15.  As detailed herein, the entire Motion should be denied; however, should the Court determine that the SAC should be dismissed in whole or in part, Plaintiffs respectfully request that the dismissal be without prejudice and that they be granted leave to amend, which should be given "freely ... when justice so requires."  Fed. R. Civ. P. 15(a)(2).

2

also seeks to skirt liability by arguing that the statements are nonactionable opinions.  However, as explained in detail herein, her statements are still actionable if considered to be "opinions." Syrett also challenges Plaintiffs' scienter arguments, but as a Board and Audit Committee member from 2020 to 2021, Syrett had a duty to monitor NewAge's internal and Disclosure Controls and knew or had access to the fact that they were ineffective.  Furthermore, a significant amount of her compensation from NewAge was stock-based and she was therefore motivated to keep the stock price artificially inflated.

Syrett also challenges loss causation, but relies on the loss causation arguments in the D&O Defendants'[4] motion to dismiss.  Accordingly, Plaintiffs' arguments with respect to this element are addressed in their opposition to that motion, filed herewith.[5]

Likewise, Syrett contests Plaintiffs' standing on grounds that they purchased NewAge shares before Syrett's misstatements about NewAge's internal and Disclosure Controls.  But, as "[n]umerous courts have stated[,] ... class representatives do have standing to assert claims under § 10(b) which arise from statements made after the class representative purchased shares as long as the statements allegedly were made in furtherance of a common scheme to defraud."  *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13 (D. Mass. 2004).  Here, Syrett's statements were made to

---

[4]    The "D&O Defendants" are Carl Aure, Ed Brennan, Chuck Ence, Greg Fea, Greg Gould, Tim Haas, Reginald Kapteyn, Amy Kuzdowicz, and Kevin Manion.

[5]    Syrett also challenges Plaintiffs' use of "deposition testimony from an SEC Action."  For reasons explained more fully in Plaintiffs' Opposition to Willis and the D&O Defendants' Motion to Strike, the Court may consider the deposition transcripts in the SEC Action.  In any event, Syrett has waived this challenge because it was raised "in a perfunctory manner" by including it "in a footnote in the opening brief."  *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1003, n.10 (D. Colo. 2016), *as amended* (Jan. 29, 2016).

perpetuate the illusion that NewAge had effective internal and Disclosure controls, when, in fact, they did not.

## STATEMENT OF FACTS

**A.     NewAge's Relationships With The Military, Retailers, and Distributors and Its CBD Beverage Portfolio**

On the first day of the Class Period, Willis and NewAge announced a "new distribution agreement" with the military.  ¶115.  Shortly thereafter, they claimed NewAge had "begun shipments" of certain brands "in expanded distribution throughout Loblaws and Sobeys, the largest grocery retailers across Canada," and "signed a major distribution agreement" with South Korea's "largest food and beverage distributor" "to expand to all major retail outlets throughout the country immediately."  ¶¶122-23, 126.  Willis also touted NewAge's "first national distribution" with Walmart, the "world's largest retailer."  ¶146.

Willis thereafter told the market that NewAge had tested and developed a portfolio of CBD-infused beverages that it planned to unveil in October 2018, overseen by its Health Sciences Division.  ¶130.  He and others then presented the portfolio's debut as a success, touting massive retail commitments and near-term launches.  ¶¶135-43.

NewAge's stock rose accordingly on these announcements.  ¶¶121, 125, 129, 145, 149.

**B.     Syrett Joins The Board And Benefits From NewAge's Soaring Stock Price**

Syrett joined the Board on January 7, 2020 and served on the Audit Committee in 2020 and 2021.  ¶¶45, 244.  Syrett signed two Form 10-Ks that contained false and misleading statements about the Company's internal and Disclosure Controls during her tenure at NewAge, explained in further detail below.

4

Internal controls are intended "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles."  17 C.F.R. §240.13a–15(f). Management cannot "conclude that the registrant's internal control over financial reporting is effective if there are ... material weaknesses[.]"  17 C.F.R. §229.308(a)(3).  Disclosure Controls "ensure that information required to be disclosed by the issuer in the reports [filed] under the [Exchange] Act is recorded, processed, summarized and reported, within the relevant "time periods[,]" and "accumulated and communicated to the issuer's management ... as appropriate to allow timely decisions regarding required disclosure."  17 C.F.R. §240.13a–15(e).  Disclosure Controls can be rendered ineffective by material weaknesses in internal controls.  ¶156.

When Syrett joined NewAge, its stock price was inflated from its seemingly improved prospects.  Benefitting from the market's positive perception of NewAge in 2020, Syrett was granted $100,000 in stock awards with a base salary of $67,500 to boot.  ¶267.

## C.    The Ariix Merger

Months after Syrett joined NewAge, in July 2020, its ill-fated merger with Ariix was announced.  ¶101.  Prior to closing, NewAge allowed the merger to close without Ariix's audited financials and other critical information.  ¶103.  This would prove disastrous.

First, the financials provided post-closing revealed that Ariix's targeted working capital was ***negative $18 million—a $29 million shortfall*** from what it previously represented to NewAge.  ¶105.  Second, immediately after closing, Ariix received an order from Japan's Consumer Affairs Agency suspending it from recruiting new brand partners due to fraudulent

5

practices likely in violation of the FCPA.  ¶106.  This caused NewAge to conduct a lengthy and ruinously expensive investigation into Ariix's business practices.  ¶167.

Despite its failure to ascertain this before the merger closed, and although Willis was able to repeatedly disseminate false and misleading statements concerning NewAge's relationships and CBD portfolio, Syrett falsely assured investors regarding NewAge's internal and Disclosure Controls.  ¶¶153-54.  Specifically, Syrett certified the truth and accuracy of NewAge's March 16, 2020 SEC filing representing that NewAge's internal and Disclosure Controls were adequate and effective because Willis's "evaluation" found them to be.  ¶¶152-53.  But Willis's "evaluation" was nothing more than an illusion that Syrett knew she could not rely on because an ongoing SEC investigation raised concerns that Willis had regularly evaded these controls to issue false and misleading statements about NewAge's relationships and CBD portfolio.  ¶¶109-14, 153-54.

Once the inadequacy and ineffectiveness of NewAge's internal and Disclosure Controls was conceded, it was falsely attributed to "[in]sufficient resources to adequately monitor the consolidation of the financial information and purchase allocation of Ariix in order to prevent or detect material misstatements" due to "the size and timing of the acquisition of Ariix[.]"  ¶157. These misleading statements were also based on Willis's purported "evaluation" of NewAge's internal and Disclosure Controls, which Syrett had even more reason to question as the SEC investigation picked up speed.  ¶156.  Furthermore, they said nothing about the costly FCPA investigation the Company was involved in.  Notwithstanding, Syrett signed the Form 10-K containing these misleading statements on March 18, 2021.  ¶155.

#### D.    The Truth Begins To Emerge

The SEC began to investigate NewAge in or around 2019 related to its claims regarding the distribution agreements and CBD portfolio. ¶¶109-10. Willis abruptly resigned without explanation on January 10, 2022, sending NewAge's stock down 6%. ¶22.

With the SEC closing in and the Ariix investigation ongoing, NewAge was unable to file its Form 10-Q on time, causing NASDAQ to send it a notice that it was not in compliance with listing rules. ¶23. On this news, NewAge's stock dropped 8%. *Id*. NewAge again shocked the market on June 8, 2022 by announcing that it was considering "strategic alternatives," leading its stock to plummet 12%, 11%, and 7% over three days. ¶24. Two months later, it filed for Chapter 11 bankruptcy, which the Wall Street Journal reported on in an article titled, "New Age Says Cost of Internal Probe Contributed to Bankruptcy," exposing the enormous costs NewAge incurred while investigating Ariix. ¶25. On this news, NewAge stock dropped 26%. *Id*. The bankruptcy led NASDAQ to delist NewAge, leading to another 9% drop the next trading day. ¶26.

Finally, on October 18, 2022, the SEC sued Willis for violating §10(b), among other statutes, for making many of the statements challenged in the SAC. ¶169. The next day, the SEC issued its C&D Order against NewAge, setting forth the Company's and Willis's misconduct. ¶¶111-13. On this news, NewAge stock dropped *93%*. ¶¶169-70.

NewAge thereafter sued Willis, Cooper, and others in an adversary proceeding captioned *In re: NewAge, Inc. et al.*, No. 22-50432 (LSS) (D. Del. Bankr.) ("NewAge Adversary Action"). The complaint in the NewAge Adversary Action is a different complaint from that which was

filed by NewAge's Liquidation Trust[6] and contains separate allegations made directly by NewAge that strongly support Syrett's knowledge of NewAge's internal and Disclosure Control failures.  NewAge's allegations are appropriately referenced herein because they constitute an admission against interest under Fed. R. Evid. 801(d)(2).

## ARGUMENT

### I.    PLAINTIFFS HAVE STANDING

Syrett's argument that Plaintiffs lack standing to pursue claims against her because they purchased NewAge stock on October 4, 2018%—prior to her misstatements about NewAge's controls%— is without merit.  MTD 6-7.  To hold otherwise would imply that "only someone who bought on the last day of [the] Class Period" could bring an action.  *Nicholas v. Poughkeepsie Sav. Bank/FSB*, 1990 WL 145154, at *6 (S.D.N.Y. Sept. 27, 1990).  Numerous courts "apply a 'common course of conduct analysis' to standing questions," considering whether plaintiffs made a purchase after the defendant made ***any statements*** in furtherance of their "scheme of fraud."  *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1150 (D. Colo. 2019) (disagreeing with *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992)).[7]

Even if Plaintiffs technically purchased NewAge shares before Syrett made false certifications about the Company's internal and Disclosure controls, Plaintiffs' have standing

---

[6]    "Liquidation Trust" refers to the NAI Liquidation Trust that filed an action captioned *In re: NewAge, Inc., et al.*, No. 22 10819 (LSS) (D. Del. Bankr.).

[7]    Defendant's reliance on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 726–27, 95 S. Ct. 1917, 1921, 44 L. Ed. 2d 539 (1975) is misplaced, because there, the allegations were that class members were misled to ***not*** purchase any securities, so no standing exists for the plaintiffs who are neither buyers or sellers of *any* security.

because "their losses were the result of a sustained course of conduct that propped up [NewAge's] stock price throughout the class period." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007).[8]

## II.    THE SAC ADEQUATELY PLEADS FALSITY

To state a Rule 10b-5 claim, a plaintiff must plead that the defendant made an untrue or misleading statement of fact or failed to state a fact necessary to make a statement not misleading. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1099-100 (10th Cir. 2003). The PSLRA requires that the complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading[.]" 15 U.S.C. §78u-4(b)(1)(B). If "a reasonable person would find the defendant's statements to be false or misleading, 'the plaintiff has sufficiently pled with particularity facts supporting his belief in the misleading nature of the defendant's statements.'" *Molycorp*, 157 F. Supp. 3d at 1003.

### A.    Syrett Was The Maker Of False And Misleading Statements

Syrett repeats the same unfounded arguments she and the D&O Defendants make—she was not the "maker" of the false and misleading statements attributed to her in the SAC. As Syrett acknowledges, "the maker of a statement [for purposes of §10(b) liability] is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Syrett's selective reading of *Janus*, however, does not change the logical conclusion here: Syrett

---

[8]    *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986-87 (10th Cir. 1992) (MTD 7) says nothing about standing and unlike here, lacked sufficient detail to determine what misrepresentations were made when or how they furthered the alleged scheme.

had ultimate authority over certain statements to investors, qualifying her as a maker of misstatements within the meaning of *Janus*.

Plaintiffs have pled four separate categories of false and misleading statements Syrett made by certifying and signing two SEC filings. ¶¶153(e), 155. These documents misrepresented the: (1) existence and/or effectiveness of NewAge's Disclosure Controls and procedures; (2) existence and/or effectiveness of NewAge's internal controls over financial reporting; (3) reasons why NewAge's Disclosure Controls and procedures had material weaknesses; and (4) reasons why NewAge's internal controls over financial reporting had material weaknesses. ¶¶153-58. These statements are plainly attributable to Syrett because as a corporate official and director who "sign[ed] a[n] SEC filing containing misrepresentations[,]" Syrett had the requisite authority and "ma[d]e[] a statement so as to be liable ... under §10(b)." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1046-47 (N.D. Cal. 2016) (outside and inside directors who signed SEC filings were "makers."); *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2011 WL 12627599, at *1 (N.D. Ala. Aug. 23, 2011) (signatures on Sarbanes-Oxley certifications can be basis for primary liability).

Indeed, Syrett offers no authority relinquishing a signer from liability. MTD 7-8.

## B.   Syrett's Statements Were False And Misleading When Made

The Form 10-K Syrett signed on March 16, 2020, which covered the year ended December 31, 2019, stated that (1) the CEO and CFO "have concluded that ... [NewAge's] disclosure controls and procedures are effective" and (2) that "[t]here have been no changes in our internal controls over financial reporting" that have "or are reasonably likely to materially

affect, our internal controls over financial reporting[.]"  ¶¶152, 153(e).  The Disclosure Controls

were not effective because Willis and others were able to issue written and oral public statements

*on multiple occasions* about fake/exaggerated agreements and a CBD portfolio that he implied

or outright stated were "expected to have a material impact on [NewAge's] financial results ..."

¶115; *see also* ¶¶116-49.  Either NewAge had Disclosure Controls in place to prevent the

unilateral publication of blatant falsehoods regarding NewAge's finances and prospects that

Willis continuously bypassed, or no such Disclosure Controls existed.  Alternatively, NewAge

had material weaknesses in its internal controls that rendered its Disclosure Controls ineffective.[9]

*See UA Loc. 13 Pension Fund v. Sealed Air Corp.*, 2021 WL 2209921, at *3 (S.D.N.Y. June 1,

2021) (sustaining claim that the Disclosure Controls were ineffective and/or inadequately

designed where company was able to file reports that misstated and/or omitted material facts).

Syrett and others also misled the market by attesting to the accuracy and truthfulness of

the March 18, 2021 Form 10-K while stating that NewAge's Disclosure Controls were

ineffective as of December 31, 2020 due to a material weakness in internal controls.  ¶¶155-57.

Specifically, the filing stated that NewAge had "[in]sufficient resources to adequately monitor

the consolidation of the financial information and purchase allocation of Ariix in order to prevent

or detect material misstatements" due to the acquisition's "size and timing."  ¶¶156-57.

These statements were false and misleading because they omitted the real reasons

NewAge's internal controls were materially weak, which included the non-existent/repeatedly

bypassed Disclosure Controls or internal controls that allowed Willis to unilaterally publish lies

---

[9]    As NewAge acknowledged, Disclosure Controls can be rendered ineffective by material
weaknesses in a company's internal controls.  ¶156.

11

about NewAge's business agreements and the CBD beverage portfolio.  In addition, following the Ariix merger's closing in November 2020, NewAge was forced to commence an investigation into Ariix's potential FCPA violations.  ¶106.  This late discovery was enabled by NewAge's weak internal and Disclosure Controls that permitted the merger to close without obtaining critical information about Ariix.  ¶¶102-04.  Thus, the truth about *why* NewAge's internal and Disclosure Controls were weak and ineffective conflicted with what a reasonable investor would take from the 10-K's statements about it—that they were due *solely* to the size and timing of NewAge's acquisition of Ariix.  ¶157; *see Sealed Air Corp.*, 2021 WL 2209921, at *3 (sustaining plaintiffs' allegation that the disclosure controls and procedures were ineffective and/or inadequately designed where company was able to file reports that misstated and/or omitted material facts).

Syrett's sole challenge to Plaintiffs' allegations of falsity is that her statements about NewAge's internal and Disclosure Controls and procedures were "statements of opinion."  MTD 9-11.  Not so.  Statements that "our disclosure controls and procedures are effective" or that "[t]here have been no changes in our internal controls over financial reporting," ¶¶151-52, are statements of fact—not opinions.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) ("[A] statement of fact ('the coffee is hot') expresses certainty about a thing, whereas a statement of opinion ('I think the coffee is hot') does not.").[10]

---

[10]    Syrett's authorities are inapposite because none involved allegations that the specific defendant charged with the misstatements was aware of its control deficiencies through a responsibility for "designing and evaluating ... controls and procedures" or "review[ing] the adequacy and effectiveness of the [c]ompany's internal controls" as Syrett was here.  ¶¶45, 244-46; *cf. In re Diebold Nixdorf, Inc., Sec. Liti*g., 2021 WL 1226627, at *12 (S.D.N.Y. Mar. 30, 2021) (MTD 10); *In re Qiwi plc Sec. Litig.*, 2023 WL 7283619, at *13 (E.D.N.Y. Nov. 3, 2023) (MTD 10).

To the extent either one of Syrett's statements are opinions, they are still actionable.  An opinion is false if it contains an embedded statement of untrue fact or if the speaker does not hold the stated belief.  *Omnicare*, 575 U.S. at 185.  An opinion is misleading, even if believed by the speaker, if it "omits material facts about the [speaker's] inquiry into or knowledge concerning [the opinion], and if those facts conflict with what a reasonable investor would take from the statement itself[.]"  *Id.* at 189.

Contrary to Syrett's assertion that the SAC lacks particularity, MTD 8-9, Syrett and the other defendants were well aware of the internal investigation conducted into Ariix for FCPA violations, ¶¶269-81, and the misleading statements Willis and Gould "made repeatedly" about NewAge's business agreements and CBD beverage portfolio during the Class Period.  ¶¶239-43. *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 377, 380-81 (S.D.N.Y. 2015) (finding allegations regarding the effectiveness of internal controls "sufficient to infer that the Company disbelieved the alleged statements at the time they were made").[11]

Syrett was uniquely positioned to learn of NewAge's ineffective controls because as an Audit Committee member she was required to "review with management, the internal audit department and the Company's independent auditors the adequacy and effectiveness of the Company's internal controls, including any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls ... and any

---

[11]    Syrett's authority is inapposite.  *See Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 314-15 (E.D.N.Y. 2023) (no explanation of how or why internal controls were ineffective).  *In re PetroChina Co. Ltd. Securities Litigation*, 120 F. Supp. 3d 340, 359 (S.D.N.Y. 2015), *aff'd* (Mar. 21, 2016), is also distinguishable because that case involved third-party auditors and the plaintiffs failed to allege whether or what role the third-party may have had regarding the disclosure of any internal control weaknesses—i.e., whether any fraud was disclosed to those auditors.

fraud involving management or other employees with a significant role in such internal controls[,]" and "review and discuss with management and the Company's independent auditors disclosures relating to the Company's ... internal control over financial reporting and disclosure controls and procedures[.]"  ¶244; *see In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *5 (S.D.N.Y. Jan. 27, 2014) (knowledge of ineffective controls imputed on audit committee members where members were involved in its oversight).

The remainder of Syrett's authorities contain allegations that fail to establish how the officers who certified the controls were aware that they were deficient.  Here, Plaintiffs have set forth an abundance of factual allegations to show that Syrett was aware of NewAge's deficient controls when she certified their effectiveness.  *See* ¶¶242-43 ("[T]he Audit Committee held 9 meetings" in 2020.).  In light of the frequency of the meetings, and the importance of the purported relationships and CBD-portfolio announced to the public, it is highly likely that these issues came to the Board's and Audit Committee's attention in a timely fashion.  *See also* ¶¶244-46; *cf. Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.*, 2022 WL 3572474, at *11, 50 (M.D. Pa. Aug. 18, 2022) ("to the extent SEPTA claims that the representations and SOX Certifications omitted 'known contradictory evidence,' such a claim fails as well because the TAC does not contain particular facts suggesting that the certifying officers knew, prior to the issuance of the Offering Documents, of any evidence that contradicted the opinions expressed in the SOX Certifications"); *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *12 (D.N.J. Apr. 27, 2017) ("Plaintiffs have failed to plead facts which would create a strong inference that Defendants knew their financials were not GAAP compliant when the statements were issued[.]").

Relatedly, it defies common sense to suggest that as a member of the Board and Audit Committee, Syrett would have been unaware of matters so crucial to NewAge as internal and Disclosure Controls, particularly when an ongoing SEC investigation that started in 2019 called these controls into question. ¶¶45 ,109; *see In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1213 (W.D. Wash. 2009) (knowledge of false and misleading statements about company's internal controls imputed to board).

Indeed, "[t]he very fact that [Syrett] sign[ed] these critical documents charge[d her] with power over the documents and represent[ed] to the corporation, its shareholders, and the public that [Syrett] ... performed her role with sufficient diligence [and] that she [wa]s willing and able to stand behind the information contained in those documents." *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 420 (S.D.N.Y. 2003).

Thus, Syrett's statement in ¶153(e) is false because she knew press releases and other public statements containing blatant lies had been published in 2019—to which the Form 10-K she signed pertained—and therefore the Disclosure Controls were not effective. Alternatively, her statement is misleading because she "omit[ted] material facts about [her] inquiry into or knowledge concerning [the opinion]"—*e.g.*, to the extent Disclosure Controls existed at all, the CEO who supposedly affirmed their effectiveness had bypassed them on numerous occasions. *Omnicare*, 575 U.S. at 189.

Syrett's statements in ¶¶155-57 were false or misleading opinions for the same reasons, as well as those related to the Ariix merger. That is, these statements were false for the additional reason that Syrett knew the "size and timing" of the Ariix merger was not the real issue; rather, the issue was the fact that NewAge was engaging in a ruinously expensive

15

investigation into Ariix's FCPA violations due to its ineffective internal and Disclosure Controls. *See* ¶¶101-06.

Syrett argues that she was not required to disclose the information related to the pending FCPA investigation. Syrett is wrong. First, Syrett was under an obligation to disclose NewAge's failure to ascertain and disclose Ariix's likely FCPA violations **to sufficiently explain why** its controls were ineffective. Second, by choosing to speak in depth about NewAge's internal and Disclosure Controls in its SEC filings and link the Ariix merger to it, Syrett put NewAge's compliance and financial reporting in play and "without some qualification or accompanying disclosure of their non-compliance" and/or the pending FCPA investigation, these statements "were misrepresentations because they were, at a minimum, incomplete." *Burges v. BancorpSouth Inc.*, 2015 WL 4198795, at *5 (M.D. Tenn. July 10, 2015); *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 608 & n.5, 614 (S.D.N.Y. 2008) (holding that defendants' failure to reveal investigation was material omission).[12]

## III.    THE SAC SUFFICIENTLY PLEADS A STRONG INFERENCE OF SCIENTER

A plaintiff may satisfy the scienter standard by showing either an intent to deceive or that "defendant acted with a reckless disregard of a substantial likelihood of misleading investors."

---

[12]    Syrett's authorities on this point miss the mark because each presents fact patterns distinct from the one at issue that otherwise negated defendants' duty to disclose each respective investigation. *United Food & Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*, 2022 WL 684169, at *5 (D. Colo. Mar. 8, 2022) (MTD 11) (finding that topic was never brought up and was "insufficiently tied to any statements or omissions made during the class period"); *Emps. Ret. Sys. of City of Providence v. Embraer S.A.*, 2018 WL 1725574, at *7 (S.D.N.Y. Mar. 30, 2018) (MTD 11) (no duty to disclose subsidiaries' pre-Class Period FCPA violations that did not render their financial statements inaccurate); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 760-61 (7th Cir. 2007) (MTD 12) (failed to show how defendants were aware of potentially unlawful conduct of its business partner when statements failing to disclose it was made).

*Nakkhumpun v. Taylor*, 782 F.3d 1142, 1150 (10th Cir. 2015).  When considering scienter allegations, a court must "assess all the allegations holistically."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).

Here, "plaintiff's allegations in their entirety, without regard to whether those allegations fall into defined, formalistic categories" and "plaintiffs' allegations, taken as a whole, give rise to a strong inference of scient[e]r," *Croker v. Carrier Access Corp.*, 2006 WL 2035366, at \*9 (D. Colo. July 18, 2006), that is "at least as compelling as any opposing inference[.]" *Tellabs*, 551 U.S. at 324 ("The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the smoking-gun genre or even the most plausible of competing inferences[.]").

### A.    The Non-Existent/Grossly Exaggerated Agreements And CBD Portfolio

Syrett either failed to check information she had a duty to monitor, or knew or had access to facts suggesting that NewAge's internal and Disclosure Controls were inadequate.  *See Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 876 (D. Kan. 2019) (finding defendants' failure to disclose information that they would have been closely monitoring to support inference of scienter); *see also Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) ("Under certain circumstances, we have found allegations of recklessness to be sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud.").

Specifically, Syrett signed the 2019 Form 10-K, filed on March 16, 2020 (¶153(e)) and the 2020 Form 10-K, filed on March 18, 2021 (¶¶155-57), both of which contain false or misleading statements about NewAge's internal and Disclosure Controls.  As an Audit Committee member from 2020 to 2021, Defendant Syrett's duties and responsibilities required

17

her to monitor internal controls and "any fraud involving management or other employees with a significant role in such internal controls[.]"  ¶¶244-45.

Here, Willis had a significant role in internal controls (as evidenced by the fact that he and the CFO were responsible for evaluating them, ¶¶151-53, 159), and with others, published press releases and made public statements regarding a "new distribution agreement" with the military, an expanded distribution with the largest grocery retailers across Canada, "a major distribution agreement" with South Korea's "largest food and beverage distributor," and NewAge's "first national distribution" with Walmart.  ¶¶115-18, 122-23, 126, 146.  Willis and others also told the market in 2018 and throughout 2019 that NewAge had tested and developed a CBD-beverage portfolio, and announced massive retail commitments and near-term launches. ¶¶135-42.  Numerous analysts and media outlets reported on the public statements about those relationships and CBD portfolio, and questioned Willis and other defendants about them during conference calls.  ¶¶66, 74, 141, 239.

The SEC investigation into the false and misleading statements concerning NewAge's business relationships and CBD portfolio had been ongoing for about a year by the time Syrett signed the false and misleading SEC filings.  *See* ¶109.  Thus, it is inconceivable that Syrett, as a Board and Audit Committee member, was unaware that the investigation was ongoing and why NewAge was being investigated.[13]

---

[13]    The fact that the SEC was actively investigating Willis and other Defendants for false and misleading statements about NewAge's business operations undermines Syrett's argument that the "inventory and sales reports" weakens the inference of her scienter (MTD 13-14).  *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 731 (S.D.N.Y. 2015) (finding that defendants "knew facts or had access to information suggesting their public statements were not accurate[,]" based on company's receipt of subpoena and pendency of regulatory investigations at that time).

This is particularly true considering that the dissemination of accurate information is highly relevant to whether a company's internal and Disclosure Controls are effective. *See Longwei*, 2014 WL 285103, at *5 (finding scienter where audit committee members failed to further investigate falsity of public statements despite various indications of fraud). Accordingly, if Syrett checked information she had a duty to monitor prior to making the statements in ¶¶153(e), 155-57—*i.e.*, whether the agreements and CBD portfolio existed as described in light of the SEC investigation and Willis's role in it—she would have discovered that NewAge's internal and Disclosure Controls were ineffective because falsehoods about the agreements and CBD Portfolio were able to be disseminated repeatedly. If she made those statements without checking, she therefore "failed to check information [she] had a duty to monitor" and "thereby knowingly or recklessly allowed dissemination of false" statements. *Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 811, 822 (D. Minn. 2022) (where defendants' position on audit and compliance committees and access to documentation about kickback risks were sufficient to find scienter); *see also Thomas*, 167 F. Supp. 3d at 1043-44 (finding scienter where "responsible members of an Audit Committee should have noticed significant errors ... and that at the very least, a failure to do so was reckless on their part"). This is not fraud by hindsight, as Plaintiffs have "identif[ied] information that reached the Audit Committee and that they either knew about or were reckless in ignoring."[14] *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 653-54

---

[14] Distinct from Syrett's fraud-by-hindsight authorities which were focused on progress or projections, Syrett's access as a Board and Audit Committee member gave Syrett **contemporaneous** knowledge of contrary information about the actual distribution agreements and relationships, the current manufacturing status of the CBD beverages, and the already-existing complications of the Ariix merger and FCPA violations. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1246 (10th Cir. 2016)*, as amended* (July 6, 2016)

19

(S.D.N.Y. 2007) (the court noted that an audit committee's failure to prevent fraud may be shown where plaintiffs identify specific actions that members should have taken).

### B.    The Ariix FCPA Investigation

On November 16, 2020, NewAge closed on a merger with Ariix without receiving Ariix's audited financials. ¶103. Immediately post-merger, NewAge discovered that Ariix had **negative** $18M in working capital, which was a ***$29M shortfall*** from what it previously told NewAge, and that Japan suspended Ariix from recruiting new brand partners due to fraudulent practices that likely violated the FCPA. ¶¶104-06, 270. This latter revelation caused NewAge to launch an extremely expensive investigation into Ariix's FCPA violations. ¶¶20, 25, 167.

Given the foregoing, NewAge's internal controls and Disclosure Controls were not effective at the time Syrett signed off on the March 18, 2021 Form 10-K for the year ended 2020. ¶155. Rather than disclose the truth, however, Syrett and others prevaricated, blaming the ineffective Disclosure Controls on having "[in]sufficient resources to adequately monitor the consolidation of the financial information and purchase allocation of Ariix in order to prevent or detect material misstatements" due to the acquisition's "size and timing." ¶¶156-57.

Syrett necessarily knew or recklessly disregarded that these statements were false or misleading when made for the same reasons discussed in §II.A, and those related to the FCPA investigation. *See In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 372 (S.D.N.Y. 2001) (the

---

(MTD 13) (where some defendants may not have known about underlying data used in projections); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1346 (10th Cir. 2012) (MTD 13) (where defendants may not have known the integration progress of an acquisition); *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1299 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015) (MTD 13) (where defendants may not have known production results did not match growth rate).

court noted that an audit committee's awareness of a material weakness and failure to take steps to ensure manipulations were not being performed, such as a review of work of external auditors—coincidentally, also named Deloitte & Touche (*see* MTD 10)—could "constitute recklessness sufficient to support an inference of scienter").  Specifically, as an Audit Committee member, Syrett was necessarily involved in the investigation because the committee was responsible for "review[ing] and discuss[ing] with management and the Company's independent auditors disclosure relating to the Company's ... internal controls ... and disclosure controls and procedures" (¶244), which included retaining outside auditors, counsel and accountants to perform an independent investigation into Ariix's international business practices (¶246).

Thus, it is inconceivable that Syrett, as a Board and Audit Committee member, was unaware that NewAge closed on the Merger Agreement without Ariix providing audited financials.  ¶103.  But even if Syrett was unaware of this when it happened, she necessarily knew about it immediately after closing when NewAge received information about Ariix's financial problems and the FCPA violations.  ¶¶105-06.  Syrett affirmed her awareness of the Ariix merger's circumstances when she signed the 2020 10-K (¶155), which claimed there were material weaknesses because NewAge had "insufficient resources" due to the acquisition's "size and timing" (¶¶156-57).  As explained above, even if the statements were partially true, in that those were some of the issues related to the Ariix merger, the statements were misleading for omitting other reasons why NewAge's internal controls had material weaknesses—specifically, that NewAge was conducting an investigation into Ariix for FCPA violations (¶159) which threatened to bankrupt NewAge (¶167).

21

That the internal investigation was so enormously materially costly that those costs posed a substantial risk that jeopardized the Company as a going concern (¶161) would have been apparent *at that time* because the investigation was preceded by actual regulatory action by Japan.  ¶¶20, 270.  Thus, Syrett had "access to material non-public information" and was "in a position to know" information such as the FCPA issue, "understand its materiality, and realize that failure to provide complete and accurate information with regard to these subjects would likely mislead investors."  *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1298 (N.D. Okla. 2010), *on reconsideration in part* (July 30, 2010)); *see also IBT Emp. Grp. Welfare Fund v. Compass Minerals Int'l, Inc.*, 706 F. Supp. 3d 1225, 1260 (D. Kan. 2023) (finding scienter where defendants had access to internal reports which contained facts contrary to representations "made for well over a year").  This goes beyond Defendant Syrett's authorities about "access to [a] 'broad swath of information,'" *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1217 (10th Cir. 2023) (MTD 13), such as small-scale transactions effecting less than 10% of the company's revenue, *Jun Zhang v. LifeVantage Corp.*, 2017 WL 2599883, at *9 (D. Utah June 15, 2017) (MTD 13), or potential damages reflecting approximately 2.4-3.5% of company's total assets, *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1264 (10th Cir. 2001) (MTD 13).

Accordingly, if Syrett checked information she had a duty to monitor prior to making the statements in ¶¶155-57, she would have discovered that NewAge's internal and Disclosure Controls were ineffective due to the FCPA investigation as well.  ¶159.  If she made those statements without checking, she therefore "failed to check information [she] had a duty to

22

monitor" and "thereby knowingly or recklessly allowed dissemination of false" statements. *Mart*, 595 F. Supp. 3d at 822; *see also Thomas*, 167 F. Supp. 3d at 1043-44.

Even assuming, *arguendo*, Defendant Syrett did not have an independent duty as a Board and Audit Committee member to monitor the Company's internal controls, she "incurred a duty to disclose" the full truth "when [s]he chose to explain" why the internal controls were inadequate. *Nakkhumpun*, 782 F.3d at 1152-53; *see also SEC v. Curshen*, 372 F. App'x 872, 880 (10th Cir. 2010) ("[W]here a party without a duty elects to disclose material facts, he must speak fully and truthfully, and provide complete and non-misleading information ...."). Failure to do so was either an intentional deception to conceal material information or a reckless disregard for disseminating misleading statements.

### C.    Personal Financial Motive Bolsters Strong Inferences Of Scienter

Motive is not required to show scienter. *Tellabs*, 551 U.S. at 325. Nevertheless, Syrett had a compelling motive for making the false and misleading statements alleged herein. Her compensation was largely dependent on NewAge's stock price, which would have caused her to monitor NewAge's business and be aware of issues that may threaten NewAge's financial position and stock price. Syrett's stock award was over 148% greater than her base salary, making her stock award over 59% of her total compensation, ¶267, which was "not a generalized motive shared by all companies but is, rather, specifically and uniquely related to each individual [NewAge] defendant and is particularly probative in light" of the unique circumstances surrounding the consummation of the Ariix merger that allowed it to close without furnishing critical information to NewAge. *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1225 (D. Kan. 2002); *see also In re New Century*, 588 F. Supp. 2d 1206, 1232 (C.D. Cal. 2008) ("A

motive to defraud based on compensation incentives ... may strengthen an inference of scienter"); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019) (finding the fact that "executives' compensation from stock and cash awards far outstripped their base salaries" supported scienter).

**IV.    THE SECOND AMENDED COMPLAINT STATES CONTROL PERSON CLAIMS UNDER SECTION 20(A)**

Syrett challenges Plaintiffs' "control person" claims under §20(a), but the SAC sufficiently pleads: (1) NewAge's primary §10(b) violation; and (2) that Syrett was a control person over NewAge.  Accordingly, Plaintiffs' §20(a) claims cannot be overcome at the pleading stage.  *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304-05 (10th Cir. 1998).  Section 20(a) claims are subject to the lower pleading standard of Rule 8(a)(2).  *WorldCom*, 294 F. Supp. 2d at 415.

The SAC contains repeated references to knowingly false and misleading press releases and SEC filings that NewAge co-authored, signed and/or issued during the Class Period such that their primary violation of §10(b) is self-evident.  *See, e.g.,* ¶¶115, 120, 122, 130-35, 139, 146; *see In re Enron Corp. Sec., Deriv. & "Erisa" Litig.*, 2003 WL 21418157, at *3 (S.D. Tex. 2003) ("an individual who signs an SEC filing at a time when he knows, or exhibits reckless disregard toward warnings, that it is false or misleading, has 'made' a statement for purposes of a primary violation of §10(b).").

Syrett's perfunctory challenges to the element of "control" also fail.  The Tenth Circuit construes "control person" liability claims liberally and allows plaintiffs to sustain such claims without a showing that they "actually or culpably participated in the primary violation." *Maher*, 144 F.3d at 1305.  Only in the rare case where a "plaintiff does not plead ***any facts*** from which it

24

can be inferred the defendant was a control person" would dismissal be appropriate at the pleading stage. *Id.* Here, Plaintiffs' SAC pleads numerous facts to support Syrett's direct control over NewAge during her tenure.

For example, Syrett certified and signed her name to two false and misleading SEC filings —including two separate 10-Ks on March 16, 2020 and March 18, 2021—one failing to disclose the active existence of material weaknesses in NewAge's internal and Disclosure Controls and the other falsely and misleadingly stating the reasons why the internal and Disclosure Controls were ineffective. ¶¶153-55; *see, e.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 72 (D. Del. 2002) (plaintiffs sufficiently pled elements of controlling person's claim to withstand dismissal by alleging that directors signed misleading SEC filings).

Additionally, from January 7, 2020 until January 31, 2022, Syrett served as a member of the Board where day-to-day matters such as employee relations and bigger picture issues such as NewAge's agreements and product portfolio, were routinely discussed. ¶¶19, 22, 239-43, 278-79. While Syrett's position on an involved Board is sufficient to establish her liability as a control person, *In re LDK Solar Securities Litigation*, 2008 WL 4369987, at *12 (N.D. Cal. Sept. 24, 2008), signing several false and misleading SEC filings further cements the control necessary for §20(a) liability. *New Jersey & Its Division of Inv. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1144 (D. Kan. 2004) ("the majority of district courts that have addressed this issue have held that an allegation that a board member signed an SEC filing that contains a misleading or fraudulent statement can raise a sufficient inference of control ....").

If the Court was not already convinced of the control Syrett had over NewAge, her membership on the Audit Committee from 2020 to 2021 confirms it. ¶244; *see In re Alstom SA*

*Sec. Litig.*, 406 F. Supp 2d 433, 488 (S.D.N.Y. 2005) ("[A]n outside director and audit committee member who signs an SEC filing can be presumed to have the power to control those who write the report, within the meaning of Section 20(a)."). As part and parcel of Syrett's involvement in the Audit Committee, she was required to "review [and discuss] with management ... the adequacy and effectiveness of the Company's internal controls, including any significant deficiencies or material weaknesses in the design or operation…and any fraud involving management or other employees with a significant role in such internal controls, and ... disclosure[s] relating to the Company's financial reporting processes, internal control over financial reporting and [Disclosure Controls]," like those that existed in relation to the false and misleading statements regarding NewAge's distribution agreements, CBD portfolio, and the FCPA investigation following the Ariix merger. ¶¶242, 244-45; *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 976 (D. Ariz. 2010) (sustaining a §20(a) claim where the complaint alleged audit committee duties, such as "reviewing and discussing the audited financial statements ... with management" and holding that "more than ... [defendant's] position as an outside director ... [t]he [complaint] also allege[d] that [defendant] was a member of the Audit Committee."); *Molycorp*, 157 F. Supp. 3d at 1014 (§20(a) control person liability sufficiently alleged for officers who signed SEC filings and had "power to direct or cause the direction of the management and policies[.]" ).

Syrett's case law dismissing control person allegations is easily distinguishable from this case because here, Plaintiffs have set forth numerous factors supporting Syrett's control over the false and misleading statements that NewAge made during her tenure. In *El Paso Fireman & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F. Supp. 3d 1296, 1350 (D. Colo.

2023), and *Adams*, 340 F.3d at 1107, plaintiffs premised their control person claims exclusively on a defendant's board membership without alleging any further facts establishing their control. Similarly, in *Hampton v. root9B Technologies, Inc.*, 897 F.3d 1291, 1303 (10th Cir. 2018), the court dismissed plaintiffs' control person claims because defendants failed to allege any actionable false or misleading statements.

## CONCLUSION

For the foregoing reasons, Syrett's motion should be denied in its entirety.

Dated:  July 10, 2025

Respectfully submitted,


By: s/ James M. Wilson, Jr.

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: jwilson@faruqilaw.com

Robert W. Killorin
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
E-mail: rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiffs Damian Betebenner
and Cigdem Betebenner and Lead Counsel for the
Class*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I hereby certify that the foregoing Lead Plaintiffs' Memorandum in Opposition to

Defendant Alicia Syrett's Motion to Dismiss the Amended Class Action Complaint complies

with the type-volume limitation set forth in Judge Domenico's Practice Standards III(A)(1), and

modified by the Court's April 29, 2025 order, Dkt. 121.

/s/ James M. Wilson, Jr.
James M. Wilson, Jr.

**CERTIFICATE OF SERVICE**

I, James M. Wilson, Jr., hereby certify that on July 10, 2025, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

s/ James M. Wilson, Jr.
James M. Wilson, Jr.

1