**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03161-DDD-TPO

DENNIS CLIFTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

Plaintiff,

v.

BRENT WILLIS,
FRED COOPER,
TIM HAAS,
REGINALD KAPTEYN,
ALICIA SYRETT,
GREGORY GOULD,
CHUCK ENCE,
CARL AURE,
KEVIN MANION,
ED BRENNAN,
AMY KUZDOWICZ,
and GREG FEA,

Defendants.

---

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
BRENT WILLIS, CARL AURE, ED BRENNAN, CHUCK ENCE, GREG FEA, GREG
GOULD, TIM HAAS, REGINALD KAPTEYN, AMY KUZDOWICZ, AND KEVIN
MANION'S MOTIONS TO STRIKE PORTIONS OF PLAINTIFFS' SECOND
AMENDED CLASS ACTION COMPLAINT
AND THE EXHIBITS THERETO**

---

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFFS' INDEPENDENT INVESTIGATION CORROBORATES THE
        ALLEGATIONS IN THE SAC ............................................................................ 5

II.     PLAINTIFFS' USE OF THESE MATERIALS DOES NOT VIOLATE THE
        PROTECTIVE ORDER ........................................................................................ 8

        A.      ████████ And Plaintiffs Are Not Bound By The Protective Order In The
                SEC Action ............................................................................................... 8

        B.      The Transcripts And Documents Do Not Contain The Designations That
                Would Subject Them To The Protective Order In Any Event ................. 9

III.    WILLIS WILL SUFFER NO LEGAL PREJUDICE ......................................... 13

CONCLUSION ................................................................................................................ 14

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Allen v. City of N.Y.*,
    420 F. Supp. 2d 295 (S.D.N.Y. 2006)..........................................................................8

*Anderson v. First Security Corp.*
    249 F. Supp. 2d 1256 (D. Utah 2002)........................................................................12

*Beltran v. Interexchange, Inc.*,
    2017 WL 4418709 (D. Colo. June 9, 2017)..................................................................4

*Burke v. Lakin Law Firm, PC*,
    2007 WL 917380 (S.D. Ill. Mar. 26, 2007) ...............................................................13

*In re CFS-Related Sec. Fraud Litig.*,
    256 F. Supp. 2d 1227 (N.D. Okla. 2003)...................................................................13

*In re Connetics Corp. Securities Litigation*
    2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ............................................................7

*In re CRM Holdings, Ltd. Sec. Litig.*,
    2012 WL 1646888 (S.D.N.Y. May 10, 2012) .............................................................7

*DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*,
    1992 WL 100908 (N.D. Ill. May 4, 1992)..................................................................12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ......................................................................13

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    255 F.R.D. 308 (D. Conn. 2009)................................................................................9

*In re Fannie Mae 2008 Sec. Litig.*,
    891 F. Supp. 2d 458 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013)..........................7

*Garmin Corp. v. NCR Corp.*,
    2005 WL 375663 (D. Kan. Jan. 19, 2005)..................................................................8

*Geinko v. Padda*,
    2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ...............................................................7

*Gonzales v. City of Castle Rock*,
    366 F.3d 1093 (10th Cir. 2004) ................................................................................8

*Herman v. PBIA & Co.*,
    2023 WL 2824318 (D. Colo. Jan. 23, 2023)..............................................................................13

*IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*,
    706 F. Supp. 3d 1225 (D. Kan. 2023)...................................................................................8, 11

*K-TEC, Inc. v. Vita-Mix Corp.*,
    2007 WL 9657986 (D. Utah June 20, 2007)..............................................................................9

*Kent v. AVCO Corp.*,
    815 F. Supp. 67 (D. Conn. 1992)...............................................................................................7

*Lako v. loanDepot, Inc.*,
    2023 WL 444151 (C.D. Cal. Jan. 24, 2023) ..............................................................................6

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)......................................................................................................7

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    210 F. Supp. 2d 291 (S.D.N.Y. 2001).....................................................................................12

*Martindell v. International Telephone & Telegraph Corp.*
    594 F.2d 291 (2d Cir. 1979)......................................................................................................9

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) .................................................................................................7

*In re Mindbody, Inc. Sec. Litig.*,
    489 F. Supp. 3d 188 (S.D.N.Y. 2020)......................................................................................11

*Pesce v. First Credit Servs., Inc.*,
    2012 WL 8668279 (N.D. Ill. June 6, 2012) ............................................................................10

*Radiant Systems, Inc. v. American Scheduling, Inc.*
    2005 WL 1586566 (N.D. Tex. July 1, 2005)...........................................................................12

*S.E.C. v. Merrill Scott & Assocs., Ltd.*,
    600 F.3d 1262 (10th Cir. 2010) .............................................................................................8, 9

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001)......................................................................................................9

*Sawo v. Drury Hotels Co., LLC*,
    2011 WL 3611400 (D. Kan. Aug. 15, 2011) .............................................................................4

*Travelers Property Casualty Co. of America v. Bobrick Washroom Equipment, Inc.*
 2021 WL 6072707 (M.D. Pa. Dec. 23, 2021).............................................................................12

*United States ex rel. Schroeder v. Medtronic, Inc.*,
 2024 WL 1095664 (D. Kan. Mar. 13, 2024) .............................................................................8

*United States v. Hardman*,
 297 F.3d 1116 (10th Cir. 2002) ...............................................................................................13

*In re Warren*,
 2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020)............................................................................8

*Whitehead v. Gateway Chevrolet*,
 2004 WL 316413 (N.D. Ill. Feb. 2, 2004) ...............................................................................12

*Yates v. Applied Performance Technologies, Inc.*,
 205 F.R.D. 497 (S.D. Ohio 2002)............................................................................................12

Plaintiffs respectfully submit this memorandum of law in opposition to the motions to strike made by Defendants (i) Willis ("Willis MTS") (Dkt. 127), and (ii) Aure, Brennan, Ence, Fea, Gould, Haas, Kapteyn, Kuzdowicz, and Manion's ("D&Os") ("D&O MTS") (Dkt. 130) (collectively "Motions").[1]

## INTRODUCTION

The Motions lack merit and support and should be denied in their entirety.[2]  Both Motions recycle now obsolete arguments that the SAC relies solely on allegations in the SEC and Adversary Actions.  **It plainly does not**.  Indeed, while certain of the SAC's allegations reflect the other Actions, Willis and the D&Os appear to have completely ignored this Court's guidance:

> [t]o the extent Plaintiffs' allegations premised on third-party complaints are **also supported by independent investigation**, Plaintiffs **may reallege the same or similar** facts in a second amended complaint."

Order 4 n.1 (emphasis added), Dkt. 112.

Much to their chagrin, that is exactly what Plaintiffs have done in the SAC after exhaustive additional investigation.  The allegations that are made in the SEC and Adversary Actions are now also fully supported by independent sources, which are identified in the SAC. The fruit of the new investigation includes ███████████████████████████ ████████████████████████████████████████ and NewAge's own allegations

---

[1]    Unless stated otherwise: (1) all citations, internal quotation marks and footnotes are omitted; (2) "SAC" or "Second Amended Complaint" refers to Dkt. 114; (3) all "¶_" references are to the SAC; (4) all "Ex_" references refer to the exhibits attached to the SAC; and (5) capitalized terms have the same meaning as those used in the SAC.

[2]    Defendants Fred Cooper and Alicia Syrett have not moved to strike any portion of the SAC or join in the other Motions.

against Willis. All of this completely independently supports Plaintiff's allegations regarding

materiality, falsity, and scienter. Specifically, the new allegations in the SAC incorporate:



- Information from four confidential witnesses ("CWs"), ¶¶206, 211-13, 223-24, 286; and

- NewAge's *own* allegations in the Adversary Action it filed against Willis, Cooper, and others, ¶¶99, 102-03, 106-07, 270, 272, 275-76, 281-82.

Neither Willis nor the D&Os properly acknowledge that Plaintiffs have offered

*independent sources* for these allegations in rehashing their same old arguments, *which have*

*now been obsoleted*. For the Court's convenience, Plaintiffs also have created a chart identifying

the independent sources for each SAC allegation that Willis argues should be stricken based on

the purported lack of an independent source. Appendix A. Thus, the argument that the SAC

relies on evidence that could never be admitted at trial is demonstrably incorrect and should be

rejected out of hand.

Willis – but not the D&Os – also argues that Plaintiffs cannot rely on documents and

testimony obtained from Thibodeau based on prohibitions in a protective order in the SEC

2

Action ("Protective Order" or "PO").[3]  Willis MTS 8.  Willis' argument must be rejected.  The

Protective Order does not apply to and/or bind Plaintiffs or their counsel.  Dkt. 128-1 at 1, 15.

Plaintiffs obtained the documents from Thibodeau voluntarily after Plaintiff's counsel and

Thibodeau consulted with counsel for the SEC who had no objection.  Full disclosure was made

that the information would be utilized in this case.  Indeed, Plaintiffs' counsel conferred with

counsel for the D&Os about the use of this information in the SAC – the same counsel that had

reviewed and produced the documents in the SEC Action with the designation

"CONFIDENTIAL TREATMENT REQUESTED BY GREENBERG TRAURIG."  *See*

Declaration of James M. Wilson, Jr. ("Wilson Decl.", submitted herewith).  No objection was

made to the use of this information and none is being made now to the use of this information by

the D&Os.

Moreover, Willis concedes that the Thibodeau investigative testimony (Ex. 3) and

deposition testimony (Ex. 4) were ***not designated confidential at all***.  Willis MTS 7.  This

testimony is clearly not covered by the PO.  Moreover, Thibodeau's testimony at Ex. 3 ***predates***

the PO and therefore would not be bound by it anyway.  Certain other documents relied on in the

SAC appear not to have confidentiality designations at all.  *See* Exhibits 1, 6, 10, 12, 14, 16, 18,

23 and 24.  Exhibits 2, 5, 7-9, 11, 13, 15, 17, 19-22 and 25-26 were stamped only

"CONFIDENTIAL TREATMENT REQUESTED BY GREENBERG TRAURIG."  To the

extent the PO would apply to these few documents — and it does not — the PO provides that

such documents "shall not be used by any ***Party*** other than for purposes of litigating" the SEC

Action, and "Party" refers only to Willis and the SEC, not Thibodeau or the Plaintiffs in this

---

[3]    *See* Willis MTS, Dkt. 128-1.

case.  Dkt. 128-1 at 1, 12 ¶17.

Finally, Willis argues that Plaintiffs' conduct is highly prejudicial to Willis because they ask the Court to assume the truth of third-party allegations and to rely on certain information obtained from the SEC Action.  Willis MTS 9.  This argument is baseless.  As mentioned above, the SAC's allegations *are independently sourced* and do not improperly rely on third party allegations.  Indeed, it is axiomatic that the issue at hand is the sufficiency of Plaintiffs' allegations, not the ultimate truth of allegations made in other lawsuits.  Under the Federal Rules and the PSLRA, Plaintiffs are well within their rights to utilize the information they determine supports the allegations in the SAC.

For the reasons explained above and in further detail below, the motions to strike should be denied.

## ARGUMENT

Rule 12(f) provides that a "court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."  Indeed, "[c]ourts generally disfavor the drastic remedy of striking" material from a pleading and should do so "only when the material may be prejudicial to a party and lacks any possible relation to the controversy." *Sawo v. Drury Hotels Co., LLC*, 2011 WL 3611400, at *2 (D. Kan. Aug. 15, 2011).

Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous for purposes of a Rule 12(f) motion to strike should be resolved in favor of the non-moving party. *Beltran v. Interexchange, Inc.*, 2017 WL 4418709, at *1 (D. Colo. June 9, 2017).  None of the Defendants have met their heavy burden to demonstrate any grounds to strike under Rule 12(f).

4

I.    **PLAINTIFFS' INDEPENDENT INVESTIGATION CORROBORATES THE ALLEGATIONS IN THE SAC**

Plaintiffs' allegations rely on, among other things "four confidential witnesses … numerous public documents and analyst reports, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉" all of which were derived from Plaintiffs' counsel's expansive independent investigation.  ¶2; *see also* ¶62 (providing additional sources of corroboration for the SAC's allegations).

Nonetheless, having nowhere else to run, Willis and the D&Os argue that Plaintiffs improperly rely on the SEC's Complaint and the Adversary Complaints.[4]  For example, Willis incorrectly argues that Plaintiffs' allegations that he misrepresented NewAge's commercial relationship with the military (¶¶115-20) are based on the SEC's Complaint.  Willis MTS App'x A at 11, 12.  However, the SAC makes clear that those allegations are based on Plaintiffs' counsel's submission of a Freedom of Information Act ("FOIA") request to the Defense Commissary Agency, which operates the military commissaries at issue, and a search of the Federal Procurement Data System, which is a real-time database that contains contracts worth at least $10,000 that the federal government has entered into.  ¶65.  Both sources yielded no agreements, and confidential witnesses ("CWs") were aware of no such agreement.  ¶¶65, 206.

Plaintiffs' other allegations are also based on their independent investigation, including, but not limited to:

---

[4]    Plaintiffs do not rely on the allegations from the Adversary Complaint filed by the NAI Liquidation Trust.  Rather, Plaintiffs cite to the Adversary Complaint that NewAge filed against Willis and certain others, which should be treated as an admission against interest under Rule 801(d)(2) of the Federal Rules of Evidence.



These sources provide direct support for Plaintiffs' allegations that NewAge's retail and

distribution agreements were less expansive and more uncertain than Willis and others

represented, that NewAge had no finished CBD beverage portfolio, that Defendants did not tell

the truth about the status of NewAge's internal and disclosure controls, and that Defendants

knew or had access to the true facts concerning the foregoing representations. *See, e.g., Lako v.*

*loanDepot, Inc.,* 2023 WL 444151, at *5–6 (C.D. Cal. Jan. 24, 2023) (finding sufficient

corroboration where plaintiffs had additional documentary evidence).

Plaintiffs also noted that Willis has been sued by the SEC and the NAI Liquidation Trust

for making many of the same misrepresentations the SAC alleges, and he was denied nearly $3

million that he claimed to be owed in NewAge's bankruptcy because of those allegations. ¶62.

---

5    *See* Appendix A for a complete list of the independent sources relied on in the SAC for
every allegation Willis argues should be stricken.

However, Willis never produced any of the agreements he is accused of lying about. *Id.* Relying on Willis's reaction to an allegation is different than relying on the allegation itself. One does not need to assume the truth of the allegations to draw conclusions from his responses in his own words.

*In re Connetics Corp. Securities Litigation* is illustrative. There, the court initially struck several allegations because plaintiffs had not personally investigated their claims. 2008 WL 3842938, at *2 (N.D. Cal. Aug. 14, 2008). However, the court denied a subsequent motion to strike the amended complaint because "plaintiffs have [now] explained what other sources they rely on to formulate their factual allegations and have explained how these other sources corroborate some, though not all, of the allegations from the SEC complaint." *Id.* at *4.

In stark contrast, Willis's authorities involve complaints whose allegations relied exclusively on information drawn from unadjudicated third-party complaints. *See, e.g.*, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 79 (S.D.N.Y. 2003); *Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992); *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012); *Geinko v. Padda*, 2002 WL 276236, at *1 (N.D. Ill. Feb. 27, 2002). Willis MTS 5-7.

Numerous courts have refused to strike allegations predicated on unadjudicated pleadings in separate proceedings when there is corresponding "documentary support" for their allegations. *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) (finding that "*Lipsky* does not … stand for the proposition that any factual allegation derived from a government investigation or pleading must be stricken from a

7

private plaintiff's complaint" particularly where there is "evidence in support of the factual allegations contained within these documents …"); *see also IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 706 F. Supp. 3d 1225, 1246-47 (D. Kan. 2023) (denying motion to strike and finding "internal reports, communications, and presentations within [company]—not publicly available information" to constitute "a reasonable investigation" that "corroborated the events contained within the SEC Order").

## II.    PLAINTIFFS' USE OF THESE MATERIALS DOES NOT VIOLATE THE PROTECTIVE ORDER

### A.    Thibodeau And Plaintiffs Are Not Bound By The Protective Order In The SEC Action

"The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010).  Indeed, "[t]he court's analysis of any alleged violation thus begins with the [] [p]rotective [o]rder … itself." *United States ex rel. Schroeder v. Medtronic, Inc.*, 2024 WL 1095664, at *10 (D. Kan. Mar. 13, 2024); *see also Allen v. City of N.Y.*, 420 F. Supp. 2d 295, 300-01 (S.D.N.Y. 2006).  Numerous courts have recognized the principle that a protective order "cannot bind … non-parties." *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1119 (10th Cir. 2004), *rev'd on other grounds sub nom. Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005); *see also In re Warren*, 2020 WL 6162214, at *10 (S.D.N.Y. Oct. 21, 2020) ("Warren is not a signatory to the protective order issued by the Chapter 15 court and is not bound by that order").

Here, the PO's plain language provides that it was "[s]tipulated and agreed to" by Willis and the SEC only.  Dkt. 128-1 at 15.  Thibodeau, Plaintiffs, and their respective counsel never signed the PO, were not referenced therein, and were not otherwise bound by its terms.  *See Garmin Corp. v. NCR Corp.*, 2005 WL 375663, at *1 (D. Kan. Jan. 19, 2005) ("[O]rders of a

court…cannot bind non-parties; thus any provision within a proposed protective order providing otherwise is inaccurate."); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233-34 (2d Cir. 2001).[6]

Willis's authority is not to the contrary. *Merrill Scott*, 600 F.3d at 1273-74 (providing that "[t]he U.S. Attorney/DOJ was specifically named in the protective orders" and was therefore "bound by its terms"). Willis MTS 7 n.2.

### B.    The Transcripts And Documents Do Not Contain The Designations That Would Subject Them To The Protective Order In Any Event

Courts evaluate whether a party has reasonably relied on a designation of confidentiality by considering: (1) the scope of the protective order; (2) the language of the order; (3) the extent of the court's inquiry before entry of the order; and (4) the nature of the reliance on the order. *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009); *see also K-TEC, Inc. v. Vita-Mix Corp.*, 2007 WL 9657986, at *4 (D. Utah June 20, 2007). Pursuant to §6 of the PO:

> Deposition testimony shall be deemed CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER *only if designated as such within thirty (30) days after receipt of the final transcript*. Such designation shall be specific as to the portions of the transcript or any exhibit to be designated as CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER…. *All depositions will be deemed to be confidential Discovery Material until the expiration of the thirtieth day after counsel receive a copy of the final transcript thereof*, after which time such deposition will be treated in accordance with its confidentiality designation, if any.

Dkt. 128-1 at 4.

---

[6]    *Martindell v. International Telephone & Telegraph Corp.*, is inapposite because there, the government sought to use deposition testimony in a criminal action that the deponents gave in a civil action "in reliance on [a] protective order." 594 F.2d 291, 295 n.4 (2d Cir. 1979). Willis MTS 8 n.2.

Willis's contention that Thibodeau's transcripts (Exs. 3 and 4) are subject to the PO although they "are not themselves designated confidential" fails.  Willis MTS 7.  The PO (dated June 8, 2023), Dkt. 128-1 at 15, was not in effect when Thibodeau provided his ████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Willis's argument that Thibodeau "knew, or should have known, that there were restrictions on his use of the documents he received in connection with the SEC Action" is premised on a misapplication of the PO.  Willis MTS 3-4.  Specifically, §7(b)(6) of the PO provides that: "**Witnesses, deponents, and their respective counsel** shall have access to Discovery Material designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER only to the extent necessary to conduct or prepare for depositions or testimony in the litigation[.]" Dkt. 128-1 at 5.  Exhibits 1, 6, 10, 12, 14, 16, 18, 23 and 24 contain no confidentiality designation at all, so they are not subject to this provision.

Accordingly, Thibodeau, "Plaintiff[s and their respective counsel] did not violate the [P]rotective [O]rder because the document in question was not marked confidential as required to be protected by the [Protective O]rder." *Pesce v. First Credit Servs., Inc*., 2012 WL 8668279, at *1 (N.D. Ill. June 6, 2012).

The only documents containing any confidentiality designation were marked "CONFIDENTIAL TREATMENT REQUESTED BY GREENBERG TRAURIG."  *See* Exs. 2, 5, 7-9, 11, 13, 15, 17, 19-22, 25-26.  Confidential designations that did not refer to the PO, like those made to the documents in question, applied only to the parties in the SEC case.  Dkt. No.

10

128-1 at 1, 12.  Notably, Greenberg Traurig represents the D&Os in this case, who have not

sought to strike these materials or otherwise claimed that their use violates the PO.[7]

Additionally, Willis's claim that Thibodeau "knew, or should have known that information

communicated on NewAge's email servers…was not his to disseminate," Willis MTS 4, is

contradicted not only by the PO's own terms, ███████████████████████████

██████████████████████████████████████████████████████.

Moreover, the documents were obtained after consulting with the SEC, which produced the

documents to Thibodeau, and Thibodeau's counsel.

In support of his contention, Willis cites to Thibodeau's testimony that "[w]hen [he]

resigned from New Age, [he] handed in [his] computer[.]"  Willis MTS 4.  This sort of far-

reaching conclusion is divorced from well-accepted case law.  To preclude plaintiffs from

introducing documents because they were not in their original possession would place a

wholesale restriction on using internal reports to establish a violation of federal securities laws,

which courts routinely consider when adjudicating securities actions.  *See, e.g.*, *Compass

Minerals*, 706 F. Supp. 3d at 1246, 1260 (considering "not publicly available information"

including "internal reports, communications and presentations" that "consistently contained facts

contrary to [defendants'] representations" as evidence of scienter); *In re Mindbody, Inc. Sec.

Litig.*, 489 F. Supp. 3d 188, 206 (S.D.N.Y. 2020) (considering "internal communications"

including defendants' "email[s]" to evaluate scienter).

---

[7]    Plaintiffs' counsel contacted Greenberg Traurig, LLP to meet and confer about filing a
motion to seal these documents because of the designation.  The firm had no objection to
Plaintiffs' motion to seal and said nothing about these documents being subject to a Protective
Order.  *See* Dkt. 113 at 2.

Willis's authorities are inapposite as they share a common theme not present here: the party who sought to introduce the discovery was a signatory to the protective order and/or bound by its terms.  For example, in *Yates v. Applied Performance Technologies, Inc.*, 205 F.R.D. 497, 500-01 (S.D. Ohio 2002), the deposition transcripts were marked as confidential and included the testimony of several parties who were bound by the protective order.  Willis MTS 8.  Likewise, the court in *Travelers Property Casualty Co. of America v. Bobrick Washroom Equipment, Inc.*, prevented parties who "signed the [protective order] on behalf of the parties, ***indicating their intent to be bound by the agreement***" from introducing prior testimony subject to that protective order.  2021 WL 6072707, at *5 (M.D. Pa. Dec. 23, 2021).  Willis MTS 8.  In *Radiant Systems, Inc. v. American Scheduling, Inc.,* the party who had its exhibits struck was bound by the terms of the protective order seeking to prevent its disclosure.  2005 WL 1586566, at *1-3 (N.D. Tex. July 1, 2005), *order vacated in part on reconsideration*, 2005 WL 2105953 (N.D. Tex. Aug. 31, 2005); *see also Whitehead v. Gateway Chevrolet*, 2004 WL 316413, at *4 (N.D. Ill. Feb. 2, 2004) (similar); *DEV Indus., Inc. v. Rockwell Graphic Sys., Inc*., 1992 WL 100908, at *2 (N.D. Ill. May 4, 1992) (similar); *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C*., 210 F. Supp. 2d 291, 292-93 (S.D.N.Y. 2001) (similar).  Willis MTS 8-9 & n.3.  In *Anderson v. First Security Corp.*, the court issued an order lifting a discovery stay in the ***same case*** and held that "[p]laintiffs could not seek discovery beyond their previously alleged theories of liability," but plaintiffs improperly did so anyway.  249 F. Supp. 2d 1256, 1271-73 (D. Utah 2002).[8]  Willis MTS 9 n.3.

---

[8]    Willis cursorily states, in a footnote, that Plaintiffs' use of these materials violates the PSLRA's discovery stay.  Willis MTS 8 n.3.  Willis waives any argument regarding this claim,

### III.    WILLIS WILL SUFFER NO LEGAL PREJUDICE

Willis claims he will be prejudiced if his motion to strike is not granted.  Willis MTS 9.

Willis's argument is meritless.

"Prejudice occurs when the challenged pleading or allegation confuses the issues or is so

lengthy and complex that it places an undue burden on the responding party."  *Herman v. PBIA*

*& Co.*, 2023 WL 2824318, at *1 (D. Colo. Jan. 23, 2023).  Willis's claims of "prejudice" are

disposed of for the reasons set forth above.  Plaintiffs are not using discovery evidence in

violation of a protective order, *see* §II.  Moreover, Willis is not prejudiced because the SAC does

not attach every document alluded to in Thibodeau's testimony.  Plaintiffs are "the master of

[their] complaint and the [d]efendant cannot simply re-write the complaint via motion to strike."

*Burke v. Lakin Law Firm, PC*, 2007 WL 917380, at *2 (S.D. Ill. Mar. 26, 2007); *In re Enron*

*Corp. Sec., Derivative & "ERISA" Litig.*, 258 F. Supp. 2d 576, 611 n.32 (S.D. Tex.

2003) ("Plaintiff is the master of its complaint and may assert or not assert claims against its

defendants as it chooses, as long as the claims against each defendant satisfy the pleading

standards of the relevant law and rules.  **The focus is on the adequacy of what [l]ead [p]laintiff**

**does allege, not on what it does not**.").  Obviously, Willis does not like the mountain of

---

and he is wrong anyway.  *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)
("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").  Moreover, the
PSLRA discovery stay does not preclude a plaintiff from independently investigating claims and
obtaining documentary evidence in support of claims without utilizing any of the Federal Rules'
discovery devices.  *See, e.g., In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1240-
41 (N.D. Okla. 2003) (discovery stay inapplicable to litigant seeking to introduce documents
from parallel action).

evidence in the SAC supporting the allegations of his guilt.  But that does equate to being "disadvantaged" in any legal sense.

**CONCLUSION**

For the foregoing reasons, Willis and the D&O Defendants' motions to strike should be denied.

Dated:  July 10, 2025

Respectfully submitted,

By: s/ James M. Wilson, Jr.

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: jwilson@faruqilaw.com

Robert W. Killorin
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
E-mail: rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiffs Damian Betebenner and Cigdem Betebenner and Lead Counsel for the Class*

14

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I hereby certify that the foregoing Lead Plaintiffs' Memorandum of Law in Opposition to Defendants Brent Willis, Carl Aure, Ed Brennan, Chuck Ence, Greg Fea, Greg Gould, Tim Haas, Reginald Kapteyn, Amy Kuzdowicz, and Kevin Manion's Motions to Strike Portions of Plaintiffs' Second Amended Class Action Complaint and the Exhibits Thereto complies with the type-volume limitation set forth in Judge Domenico's Practice Standards III(A)(1).

s/ James M. Wilson, Jr.
James M. Wilson, Jr.

**CERTIFICATE OF SERVICE**

I, James M. Wilson, Jr., hereby certify that on July 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

s/ James M. Wilson, Jr.
James M. Wilson, Jr.

1