**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-03161-DDD-TPO

DENNIS CLIFTON, INDIVIDUALLY AND ON
BEHALF OF ALL OTHER SIMILARLY
SITUATED,

      Plaintiff,

      v.

BRENT WILLIS, FRED COOPER, TIM HAAS,
REGINALD KAPTEYN, ALICIA SYRETT,
GREGORY GOULD, CHUCK ENCE, CARL
AURE, KEVIN MANION, ED BRENNAN, AMY
KUZDOWICZ, GREG FEA, and CRAIG
THIBODEAU,

      Defendants.

---

**DEFENDANT BRENT WILLIS'S REPLY IN SUPPORT OF HIS MOTION TO STRIKE
PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT AND THE EXHIBITS THERETO**

---

Defendant Brent Willis ("Mr. Willis"), by and through undersigned counsel, respectfully

submits this Reply in Support of Defendant Brent Willis's Motion to Strike Portions of Plaintiffs'

Second Amended Consolidated Class Action Complaint and The Exhibits Thereto, (Dkt. 127)

("MTS"), and in response to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants'

Motions to Strike Portions of Plaintiffs' Second Amended Class Action Complaint and The

Exhibits Thereto filed July 10, 2025 (Dkt. 137) ("Opp"), pursuant to Rule 12(f) of the Federal

Rules of Civil Procedure.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

A.   The Opposition Glosses Over the SAC's Reliance on Unproven
Allegations. ...................................................................................................... 2

B.   The Opposition Confirms That the SAC's "Independently" Sourced
Documents Violate a Protective Order. ........................................................... 5

1.   This Court has Broad Discretion in Construing the Protective
Order. ................................................................................................... 5

2.   The Protective Order Prohibits the Use of all of the SAC Exhibits
Regardless of their "Confidentiality" Designation. ............................ 8

C.   The Opposition Confirms That Plaintiffs Circumvented the PSLRA's
Discovery Stay. ................................................................................................ 8

D.   Mr. Willis Will be Prejudiced if His MTS is Not Granted. ............................ 9

CONCLUSION ................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boulter v. Noble Energy, Inc.*,
2025 WL 947480 (D. Colo. Mar. 28, 2025) ................................................................................5

*Brave Law Firm, LLC v. Truck Accident Laws. Grp., Inc.*,
843 F. App'x 134 (10th Cir. 2021) ............................................................................................5

*Eli Lilly & Co. v. Gottstein*,
617 F.3d 186 (2d Cir. 2010) ......................................................................................................7

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*,
2009 WL 4730471 (D. Colo. Dec. 7, 2009) ..............................................................................7

*Geinko v. Padda*,
2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ..............................................................................3

*Gonzales v. City of Castle Rock*,
366 F.3d 1093 (10th Cir. 2004) ................................................................................................8

*Hunt v. Enzo Biochem, Inc.*,
904 F. Supp. 2d 337 (S.D.N.Y. 2012) .......................................................................................7

*In re CFS-Related Sec. Fraud Litig.*,
256 F. Supp. 2d 1227 (N.D. Okla. 2003) ..................................................................................9

*In re Connectics Corp. Sec. Litig.*,
2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ..........................................................................4

*In re CRM Holdings, Ltd. Sec. Litig.*
2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...........................................................................4

*In re Fannie Mae 2008 Sec. Litig.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012) .......................................................................................5

*In re Merrill Lynch & Co., et al.*,
1:02-md-01484-JFK, Dkt. 303 ...................................................................................................4

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) .................................................................................................4

*In re Warren*,
2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020) ...........................................................................8

*Kaufman v. Am. Fam. Mut. Ins. Co.*,
601 F.3d 1088 (10th Cir. 2010) ...............................................................................................5

*Lambright v. Ryan*,
698 F.3d 808 (9th Cir. 2012) ...................................................................................................8

*S.E.C. v. Merrill Scott & Assocs., Ltd.*,
600 F.3d 1262 (10th Cir. 2010) ..........................................................................................5, 7

*S.E.C v. TheStreet.Com*,
273 F.3d 222 (2d Cir. 2001)......................................................................................................8

*United States v. Hardman*
297 F.3d 1116 (10th Cir. 2002) ...............................................................................................9

*Webb v. CBS Broad., Inc.*,
2011 WL 111615 (N.D. Ill. Jan. 13, 2011).............................................................................6

**Statutes**

PSLRA, 15 U.S.C. § 78u-4 ...............................................................................................8, 9

## **INTRODUCTION**[1]

The SAC has not cured the deficiencies identified in this Court's March 27, 2025 Order. Instead, it compounds them, reaffirming Plaintiffs' reliance on secondhand claims and recycled logic. Deflecting from this reality, the Opposition touts the SAC's use of documents "independently" obtained from former defendant Craig Thibodeau, who, himself obtained the documents in connection with the parallel SEC Action. Coincidentally—as Plaintiffs would have this Court believe—Mr. Thibodeau was dismissed from the SAC shortly after providing these documents to Plaintiffs. (*See* Dkt. 144 ("Wilson Decl.") ¶ 7.) Plaintiffs' use of these documents, even putting aside the numerous problems with the manner in which they were obtained, are problematic because they have violated a Protective Order. Rather than dispute this fact, Plaintiffs try to argue around it, averring that they can use the documents both because they did not sign the Protective Order and because certain exhibits are not marked "confidential." Plaintiffs are wrong. The Protective Order, which prohibits the use of *all* discovery in the SEC Action in this and other litigation, whether branded "confidential" or not, unambiguously applies to Plaintiffs and precludes their use as support for the SAC.

There remains an additional reason to grant the MTS: Plaintiffs have circumvented the PSLRA's discovery stay. Plaintiffs retort that they did not violate the stay because they did not use the "Federal Rules' discovery devices" to obtain the documents—they leveraged Mr. Thibodeau's desire to escape liability. (*See* Wilson Decl. ¶¶ 6-7.) Mr. Willis is unaware of any authority supporting Plaintiffs' rewriting of Congressional intent, and Plaintiffs, tellingly, cite none.

Accordingly, for these reasons, and those below, this Court should grant Mr. Willis's MTS.

---

[1] Unless otherwise stated, all capitalized terms are as defined in Mr. Willis's MTS.

## ARGUMENT

### A.    The Opposition Glosses Over the SAC's Reliance on Unproven Allegations.

The Opposition suggests that because Plaintiffs found "independent" support for some of the challenged statements, this Court should overlook their reliance on the SEC and Adversary Complaints to gin up a cause of action. (*See* Opp. at 1–2.) It should not. (MTS at 5–7.) Despite the Opposition's efforts to re-write the genesis of Plaintiffs' claims, SAC makes clear that both complaints remain a cornerstone of the pleading. (SAC at ¶ 62.) Indeed, most of Plaintiffs' changes to the SAC are stylistic or semantic; others simply remove overt references to the SEC and Adversary Complaints, presumably to obfuscate the true "source" of Plaintiffs' allegations. (*See, e.g.*, Dkt. 116 at 10, 27, 34, 38, 44, 47, 52, 62):

> 109.    According to the SEC, during a September 5, 2018 investor presentation, Defendant Willis made the false and misleading claim that NewAge had been testing a CBD beverage over the previous six months. In fact, NewAge had only been distributing a CBD-infused water that was developed and controlled by a third-party supplier, not developing a proprietary beverage. SEC Compl. ¶ 56.

> 131.    According to the Liquidation Trust, all of the Defendants were responsible for the statements made in ¶¶94, 101-02, 109-10, 114-15, 119, 126. *See* Liq. Compl. ¶¶107-09, 112-13, 116, 119, 124-25, 129-32, 134, 138-39, 141-43, 155, 158, 271, 275, 318, 426.

2

> 154.   Defendants Willis, and Gould, and Thibodeau necessarily knew that the
> agreements with the military, Walmart, Sobeys, Safeway, Loblaws, and/or the South Korean
> distributor did not exist or were less expansive than represented because they spoke about them
> *but did not have agreements with those terms.* See Section II.A–C, E, *supra.*
>
> 155.   The fact that those agreements do not exist is confirmed by the following facts:
>
> - The SEC's Cease had possession of and Desist Order against NewAge,
>   which states that there was no factual basis for those statements;
> - The fact that Willis was sued by the SEC for making many of the same
>   false and misleading statements regarding the distribution agreements
>   alleged herein and submitted documents in support of his motionaccess to
>   dismiss, *none of which included any of*information about the true nature
>   of various NewAge agreements;

Removing citations to unproven allegations from other actions does not solve Plaintiffs' foundational reliance on what "someone else has alleged." *See Geinko v. Padda*, 2002 WL 276236, at *5–6 (N.D. Ill. Feb. 27, 2002) (dismissing amended complaint attaching "300 pages of additional material," including an SEC Complaint). Indeed, even if the Court were to overlook Plaintiffs' creative re-write, the allegations, whether expressly attributed to third parties or not, remain substantively unchanged and, most importantly, unsupported. For example:

- NewAge's statements about its relationship with the U.S. military. *Compare* SAC ¶¶ 63–64, 66, 115–121, *with* AC ¶¶ 53–55, 94-100.[2]

- NewAge's statements relating to the Ariix Merger. *Compare* SAC 98-108, *with* AC 76-86.

- NewAge's CBD-infused beverages, including statements made on:

---

[2] Although Plaintiffs argue that their claims are based on the absence of information from a FOIA request and a search of the Federal Procurement Data System, (Opp. at 5), Appendix A suggests that the SEC Complaint is a key "independent" source for the military-related allegations (SAC at ¶ 62).

- o   September 19, 2018 (*compare* SAC ¶¶ 130–131 *with* AC ¶¶ 110–111);

- o   October 10, 2018 (*compare* SAC ¶¶ 132–133 *with* AC ¶¶ 112–113);

- o   October 16, 2018 (*compare* SAC ¶ 134, *with* AC ¶ 114);

- o   November 14, 2018 (*compare* SAC ¶¶ 135–136, *with* AC ¶¶ 115–116);

- o   December 6, 2018 (*compare* SAC ¶¶ 138, *with* AC ¶ 118);

- o   December 12, 2018 (*compare* SAC ¶ 139, *with* AC ¶ 119);

- o   January 16, 2019 (*compare* SAC ¶ 140–142, *with* AC ¶ 120–122).

Plaintiffs argue that the Court should ignore this fact because their pleading leverages multiple sources, thereby attempting to draw a distinction between their tactics and the MTS's authorities, which they claim "involve complaints whose allegations relied exclusively on information drawn from unadjudicated third-party complaints." (*See* Opp. at 7.)  That is not true. The court in *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 79 (S.D.N.Y. 2003), for example, dismissed a complaint premised on "pleadings filed in other proceedings" as well as "public statements" and "internal documents."  *See In re Merrill Lynch & Co., et al.*, 1:02-md-01484-JFK, Dkt. 303 at 1.  Similarly, the court in *In re CRM Holdings, Ltd. Securities Litigation* dismissed a complaint relying on unproven third-party claims *and* confidential witness statements.  2012 WL 1646888 at *26 (S.D.N.Y. May 10, 2012).[3]  Accordingly, the MTS's authorities support striking the SAC's recycled allegations.

---

[3] *In re Connectics Corp. Securities Litigation*, 2008 WL 3842938, at *2 (N.D. Cal. Aug. 14, 2008) is inapposite.  There, the court allowed plaintiffs to rely on facts taken from the SEC complaint in part because Defendants had "admitted to the accuracy of many of the facts set forth" by the Commission.  No. 3:07-cv-02940, Dkt. 111 at 4. (N.D. Cal. June 20, 2008).  Here, Mr. Willis vehemently denies the SEC's claims.

4

**B.      The Opposition Confirms That the SAC's "Independently" Sourced Documents Violate a Protective Order.**

Undeterred, Plaintiffs argue that their reliance on 26 "new" exhibits salvages their pleading.  (Opp. at 6.)  It does not for several reasons, including because Plaintiffs obtained them in violation of the Protective Order in the SEC Action.[4]  (MTS at 7–8.)  The Opposition does not meaningfully dispute this.   Instead, Plaintiffs argue that the Court should overlook their transgression because they did not sign the order, "were not referenced therein, and were not otherwise bound by its terms."  (Opp. at 8.)  Plaintiffs are incorrect.

1.      _This Court has Broad Discretion in Construing the Protective Order._

While "the starting point for interpretation of a protective order lies in its plain language," no interpretation should "undermine" its purpose.  _S.E.C. v. Merrill Scott & Assocs., Ltd._, 600 F.3d 1262, 1271–72 (10th Cir. 2010); _Boulter v. Noble Energy, Inc._, 2025 WL 947480, at *3, *5 (D. Colo. Mar. 28, 2025).  As such, District Courts have broad discretion interpreting protective orders to ensure that they uphold the parties' legitimate expectations.  _See, e.g._, _Brave Law Firm, LLC v. Truck Accident Laws. Grp., Inc._, 843 F. App'x 134, 138 (10th Cir. 2021) (decisions regarding protective orders are reviewed for abuse of discretion); _Kaufman v. Am. Fam. Mut. Ins. Co._, 601 F.3d 1088, 1093 (10th Cir. 2010) (similar).  Here, the Protective Order's plain language makes clear that it _does_ apply to Plaintiffs' use of documents and _does_, moreover, prohibit use of the 26 ill-gotten SAC exhibits in this litigation. (_See_ Dkt. 128-1, Ex. 1, at §§ 2, 17.)

By its terms, the Protective Order covers the parties to the SEC Action (that is, the SEC and Mr. Willis) _and_ "_any other person_ in active concert or participation with any of the foregoing"

---

[4] This case is therefore distinguishable from _In re Fannie Mae 2008 Securities Litigation_, 891 F. Supp. 2d 458, 471–72 (S.D.N.Y. 2012) and _Lako v. LoanDepot, Inc._, 2023 WL 444151, at *5–6 (C.D. Cal. Jan. 24, 2023), where plaintiffs' "independent sources" were not obtained in violation of a protective order.  (_See_ Opp. at 6–7.)

as well as "*all persons* with actual notice" of the Order.  (Dkt. 128-1, Ex. 1, at 1 (emphasis added).)

Mr. Thibodeau, who was "cooperating with the SEC," falls within the first category of covered

non-signatories because he was in "active concert" with the SEC.  (*See* Wilson Decl. at ¶ 5.)[5]  And

Plaintiffs, as "persons" with "actual notice" of the Protective Order's restrictions, fit within the

second category of covered non-signatories.[6]  (Dkt. 128-1, Ex. 1, at 1.) *See Webb v. CBS Broad.,*

*Inc.*, 2011 WL 111615, *10 (N.D. Ill. Jan. 13, 2011) (counsel's use of documents from a separate

proceeding was "contrary to the protective order" where counsel "knew the documents were

subject to the protective order because the documents [were] stamped 'confidential'").

As "persons" to whom the Protective Order applies, Plaintiffs must adhere to its terms,

which state as follows:

1.  **Scope**.  All documents produced by a Party or non-party in the course of
    discovery in this action, including initial disclosures, all responses to
    discovery requests, all deposition testimony, transcripts, and exhibits, other
    materials which may be subject to restrictions on disclosure for good cause
    and any information derived therefrom (hereinafter collectively 'Discovery
    Material'), shall be subject to this Order concerning confidential
    information as set forth below . . . .

2.  ***Discovery Material, or any information derived therefrom, shall be used***
    ***solely for purposes of this action and shall not be used for any other***
    ***purpose including any other proceeding***; provided, however, that the
    foregoing shall not apply to Discovery Material that is or becomes part of
    the public record without violation of the Order.

---

[5] There is, moreover, no reasonable dispute that Mr. Thibodeau knew that the documents provided
to him were subject to "confidentiality" restrictions.  (MTS at 4.)  Plaintiffs respond with a non-
sequitur, citing Mr. Thibodeau's testimony that "he did not expect his communications with the
SEC to be kept confidential" as evidence that he did not know any of the materials were protected.
(Opp. at 11.)  But Mr. Thibodeau's statement was referring to his conversations with the SEC.
(SAC Ex. 4 at 206:9–207:14.)

[6] It would be disingenuous for Plaintiffs to argue otherwise, given that they knew Mr. Thibodeau
was producing documents "he had been provided by the SEC in the SEC's case against Mr. Willis"
(*see* Wilson Decl. ¶¶ 7–8), many of which were branded "confidential."

(Dkt 128-1, Ex. 1 §§ 1–2 (emphasis added); *see also* § 17; MTS at 7.)  Simply put, regardless of whether they signed the agreement, Plaintiffs cannot use any documents that they obtained from the SEC Action here.

Apparently aware that the documents were subject to restrictions, Plaintiffs attempted to inoculate themselves from a motion to strike by consulting counsel for the SEC, the D&Os, and Mr. Thibodeau about the documents' use.  (Opp. at 11, n.7.)  Not only does this evidence Plaintiffs' concern about the propriety of their actions, it is also an admission that Plaintiffs never consulted *counsel for Mr. Willis*, likely because they feared that Mr. Willis would have sought—and likely obtained—an injunction prohibiting the documents' use.

Even if the Court credits Plaintiffs' narrow reading of the Protective Order (it should not), this Court, like all federal courts, has inherent authority to effectuate its purpose by binding Plaintiffs to its terms.  (MTS at 8); *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 2009 WL 4730471, *1 (D. Colo. Dec. 7, 2009) (recognizing court's inherent power over a protective order); *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1273–74 (10th Cir. 2010)[7]; *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010).  Although Plaintiffs seek to dissuade the Court from exercising such discretion (Opp. at 8–9), the case law makes clear that the Court is well within its right to do so.  *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337 (S.D.N.Y. 2012) is illustrative.  There, a third party obtained confidential files that were subject to a protective order to which he was not a signatory.  *Id.* at 347.  He then used those confidential files to revive a related

---

[7] Plaintiffs argue that *Merrill Scott* is distinguishable because the "U.S. Attorney/DOJ was specifically named in the protective orders."  (Opp. at 9.)  However, the "U.S. Attorney/DOJ" was bound by the terms of the protective order because it was permitted to act "in concert with" the SEC in sharing information.  *Merrill Scott & Assocs., Ltd.*, 600 F.3d at 1274.  Here, Mr. Thibodeau is in "'active concert' with the SEC."  (*See* Wilson Decl. at ¶ 5.)

litigation and the court, citing the protective order, enjoined his use of the documents. *Id.* at 341, 349.[8]  The same result is warranted here.

2.    *The Protective Order Prohibits the Use of all of the SAC Exhibits
Regardless of their "Confidentiality" Designation.*

As a backstop, Plaintiffs argue that even if the Protective Order applies (it does), it only covers documents marked "confidential."  (Opp. at 10.)  However, all of the documents produced in the SEC Action—and obtained by Plaintiffs' Counsel via Mr. Thibodeau—qualify as "Discovery Material" whose use outside of the SEC Action is restricted irrespective of its confidentiality designation.  (Dkt. 128-1 Ex. 1 § 2.)  Plaintiffs, who do not dispute this, argue in the alternative that, at a minimum, Mr. Thibodeau's SEC testimony is exempt because the Protective Order was not in effect when he testified.  (Opp. at 10.)  However, "Discovery Material" encompasses "*all* deposition testimony, transcripts and exhibits" produced in connection with the SEC Action, regardless of *when* the documents were created.  *See Lambright v. Ryan*, 698 F.3d 808, 817–20 (9th Cir. 2012) (district court abused its discretion by limiting protective order to "materials produced after its issuance" because that it explicitly applied to "all discovery").

**C.    The Opposition Confirms That Plaintiffs Circumvented the PSLRA's Discovery Stay.**

Plaintiffs' use of the documents is also improper because they circumvented the PSLRA's mandatory discovery stay.  (MTS at 8 n.3); 15 U.S.C. § 78u-4(b)(3)(B).  Plaintiffs filed the AC on May 31, 2024.  (Dkt. 82.)  Mr. Willis moved to dismiss the AC on July 30, 2024.  (Dkt. 93.)  And

---

[8] Plaintiffs' authorities do not prohibit courts from enforcing protective orders against non-signatories.  (Opp. at 8–9.)  *S.E.C v. TheStreet.Com*, 273 F.3d 222, 227, 233–34 (2d Cir. 2001) discusses whether the media had an interest in obtaining confidential documents.  The portion of *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1119 (10th Cir. 2004) referenced by Plaintiffs is a non-binding "concurrence in part."  And the protective order in *In re Warren*, 2020 WL 6162214, at *10 (S.D.N.Y. Oct. 21, 2020) was irrelevant because the non-signatory was not seeking documents covered by its terms.

8

Plaintiffs obtained the protected discovery material in "August 2024"—*after* the discovery stay was firmly in place. (Wilson Decl. ¶ 7.) This violated the PSLRA. *See* 15 U.S.C. § 78u-4(b)(3)(B).

In response, Plaintiffs assert that Mr. Willis "waived" this argument because it appeared in a footnote. (Opp. at 12 n.8.) That is not, nor has it ever been, the standard for "waiver." And Plaintiffs' reliance on *United States v. Hardman* is misplaced (Opp. at 12 n.8) because it holds that an issue was waived when it was raised for the first time on appeal. 297 F.3d 1116, 1131 (10th Cir. 2002). The same is not true here.

In the alternative, the Opposition suggests that Plaintiffs did not circumvent the PSLRA's discovery stay because they did not "utiliz[e] any of the Federal Rules' discovery devices" to obtain the documents. (*See* Opp. at 12 n.8.) But as explained in the MTS, and ignored in the Opposition, courts *have* enforced the stay by restricting plaintiffs from obtaining any discovery, whether obtained through Federal discovery "devices" or otherwise. (MTS at 8, n.3.) The Opposition's cited authority, *In re CFS-Related Securities Fraud Litigation*, 256 F. Supp. 2d 1227, 1240–41 (N.D. Okla. 2003) (Opp. at 12 n.8), is not remotely analogous to the facts here because it concerns a defendant's request to a stay of his deposition—*after* the PSLRA stay had expired—in deference to a parallel criminal matter against him. *Id.* at 1235.

### D. Mr. Willis Will be Prejudiced if His MTS is Not Granted.

Plaintiffs, who do not dispute that they have cherry-picked documents made available to them, justify their actions as "master[s] of [their] complaint." (*See* Opp. at 13.) "Masters" or not, Plaintiffs do not have carte blanche to use documents in violation of the Protective Order, circumvent the PSLRA discovery stay, and use their ill-gotten gains to cry "fraud." This is prejudicial and nothing in the Opposition shows otherwise.

**CONCLUSION**

For these, and the reasons in Mr. Willis's opening brief, this Court should grant the MTS.


DATED: August 7, 2025                              Respectfully submitted,

                                                  /s/ *Michael J. Diver*

                                                  KATTEN MUCHIN ROSENMAN LLP

                                                  Michael J. Diver
                                                  Michael J. Lohnes
                                                  Jamie Noonan
                                                  525 W. Monroe Street
                                                  Chicago, Illinois 60661
                                                  Telephone:  312.902.5200
                                                  michael.diver@katten.com
                                                  michael.lohnes@katten.com
                                                  jamie.noonan@katten.com

                                                  Sarah Eichenberger
                                                  Zoe Lo
                                                  50 Rockefeller Plaza
                                                  New York, New York, 10020
                                                  sarah.eichenberger@katten.com
                                                  zoe.lo@katten.com


                                                  *Attorneys for Defendant Brent Willis*

10

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that the foregoing *Defendant Brent Willis's Reply in Support of His Motion to Strike Portions of Plaintiffs' Second Amended Consolidated Class Action Complaint and The Exhibits Thereto* complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Michael J. Diver*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on August 7, 2025, he caused the foregoing *Defendant Brent Willis's Reply in Support of His Motion to Strike Portions of Plaintiffs' Second Amended Consolidated Class Action Complaint and The Exhibits Thereto* to be filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael J. Diver*