**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:22-cv-03161-DDD-SKC

DENNIS CLIFTON, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

      Plaintiffs,

v.

BRENT WILLIS, et al.,

      Defendants.

---

**ORDER ON MOTIONS TO STRIKE
AND MOTIONS TO DISMISS**

---

Plaintiffs in this securities-fraud class action purchased the shares of NewAge, Inc., a developer of "organic and healthy" beverage products, between January 18, 2018, and October 18, 2022. Doc. 114 at 5, ¶ 3.[1] The crux of their allegations is that the corporate officers of NewAge engaged in a scheme to fraudulently inflate the price of its stock by making false and misleading statements about its distribution agreements, its line of CBD-infused beverages, and its internal controls and disclosure protocols. *Id.* at ¶¶ 321–332. Plaintiffs allege that Defendants, twelve of NewAge's current and former directors and officers, profited off their scheme by selling their stock at opportune moments and by increasing their own salaries. *Id.* at ¶¶ 17, 19.

---

[1] In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

The Defendants have all moved to dismiss, each arguing that Plaintiffs have failed to meet the heightened pleading standard in securities fraud cases. Mr. Willis and the current directors and officers of NewAge have also moved to strike most of the Plaintiffs' complaint for relying on a complaint filed against Mr. Willis by the SEC.

## BACKGROUND

The Plaintiffs allege that the scheme began in 2018 when CEO Brent Willis and NewAge announced a distribution agreement with the U.S. military to place NewAge products in all military commissaries worldwide. *Id.* at ¶ 6. This was the beginning of what seemed like a hot streak. NewAge subsequently announced expanded distribution through the largest grocery retailers in Canada, *id.* at ¶ 8, an agreement with the largest food and beverage distributor in South Korea, *id.* at ¶ 10, and that it had begun shipments to Walmart distribution centers, *id.* at ¶ 15. NewAge also announced the development of a new line of cannabidiol (CBD) products. *Id.* at ¶ 12.

This run of good news led to significant increases in NewAge's stock price. NewAge used its increased capital to acquire other beverage companies and the multi-level-marketing company, Ariix, LLC. After closing, NewAge discovered that Ariix did not have $11 million in working capital, as it had represented, but instead had negative $18 million. *Id.* at ¶ 20. Ariix had also been suspended from recruiting new partners in Japan and was potentially in violation of the Foreign Corrupt Practices Act. *Id.* NewAge began a lengthy investigation into Ariix while continuing to assure the market of NewAge's adequate internal controls.

NewAge's hot streak came to an end. Mr. Willis announced his resignation. *Id.* at ¶ 22. NewAge failed to file its Form 10-Q on time and received a notice from NASDAQ. *Id.* at ¶ 23. NewAge announced that it was pursuing "strategic alternatives." *Id.* at ¶ 24. NewAge announced it

was filing for Chapter 11 bankruptcy. *Id.* at ¶ 25. And finally, the SEC announced legal action against Mr. Willis and a Cease and Desist order against New Age. *Id.* at ¶¶ 27, 28. Each of these events lead to a further slip in NewAge's stock price.

Plaintiffs allege that NewAge's hot streak was nothing more than a series of false and misleading statements that artificially inflated New-Age's stock price, and that the Defendants knew of their falsity. *Id.* at ¶¶ 321–332. They claim that they relied upon these statements and their reliance and the subsequent revelation of NewAge's true state re-sulted in their economic loss. *Id.*

They have sued the following defendants: (1) Brent Willis, NewAge's CEO and a director from March 24, 2016 through January 10, 2022; (2) Gregory Gould, NewAge's CFO from October 12, 2018 through July 2, 2021; (3) Kevin Manion, NewAge's CFO from July 19, 2021 through July 1, 2022; (4) Chuck Ence, NewAge's CFO from September 15, 2016 through August 15, 2018, then the company's Controller; (5) Carl Aure, NewAge's Chief Accounting Officer and Senior Vice President from De-cember 2018 through October 2021; (6) Ed Brennan, a member of New-Age's Board of Directors since 2017, Chairman of the Board since Janu-ary 1, 2022, and the company's interim CEO since March 2022; (7) Fred Cooper, a member of NewAge's Board since November 13, 2020, (8) Greg Fea, a member the Board since 2017 and Non-Executive Chairman of the Board from 2018 to January 1, 2022, (9) Tim Haas, a member of the Board from 2017 until January 30, 2022; (10) Reginald Kapteyn, a mem-ber the Board from 2017 until November 2020; (11) Amy Kuzdowicz, a member of the Board since February 25, 2019 and the Audit Committee Chair; and (12) Alicia Syrett, a member of the Board from January 7, 2020 until January 31, 2022. *See id.* ¶¶ 34–45.

Plaintiffs assert that Defendants violated Section 10(b), and Rule 10b–5 promulgated thereunder, and Section 20(b) of the Exchange Act. *See id.* at ¶¶ 322, 334; 15 U.S.C. §§ 78j(b), 78t(a).

Defendants filed four motions to dismiss: Mr. Cooper, Doc. 122; Mr. Willis, Doc. 125; and Ms. Syrett, Doc. 129, each filed a Motion to Dismiss individually. The remaining defendants, the current directors and officers of NewAge, filed a joint Motion to Dismiss, Doc. 132. Mr. Willis and the directors and officers also each filed a motion to strike most of the allegations in the complaint. Docs. 127, 130.

## DISCUSSION

### I.  Motions to Strike

The Court previously struck large portions of the Plaintiffs' First Amended Complaint and dismissed the remainder without prejudice for relying, almost entirely, on the SEC's complaint against Mr. Willis, the SEC's cease-and-desist order, and the adversary complaint filed by New-Age's liquidation trust. *See generally* Doc. 112.

Both Mr. Willis and the Directors and Officers of NewAge argue I should do so again. Docs. 127, 130. Both motions argue that, despite removing most of the explicit references to the other cases, the Second Amended Complaint is nearly identical to the first. *See* Doc. 127 at 6; Doc. 130 at 2. They argue that this shows clear reliance on the inadmissible evidence that the previous order rejected.

But these arguments overread the Court's order. The Court struck allegations where Plaintiffs "bootstrapp[ed] [their] claims to allegations from other legal proceedings" because that evidence was both inadmissible at trial and shirked counsel's Rule 11(b) obligations to certify their factual contentions. Doc. 112 at 3–4. But I also explicitly noted "[t]o the extent Plaintiffs' allegations premised on third-party complaints are

also supported by independent investigation, Plaintiffs may reallege the same or similar facts in a second amended complaint." *Id.* at 4 n.1.

That is what Plaintiffs have done here. The Second Amended Complaint lists the additional investigation performed by Plaintiffs and verify that their allegations are supported by other sources: "the accounts of four confidential witnesses (former NewAge employees), numerous public documents and analyst reports, internal company documents, and the sworn testimony of Craig Thibodeau—NewAge's Vice President of Sales and Senior Vice President of National Accounts during the relevant period." Doc. 114 at ¶ 2. The Court granted the Defendants first motion to strike, because relying *solely* on these pleading documents meant relying *solely* on inadmissible evidence. *See* Doc. 112 at 2–3 (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). That is not to say Plaintiffs cannot rely on the other filings at all. "*Lipsky* does not, as defendants argue, stand for the proposition that any factual allegation derived from a government investigation or pleading must be stricken from a private plaintiff's complaint." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). Now that Plaintiffs have supported their claims with independent investigation and citations to that evidence, the Court can be assured there is a factual basis for their claims, which the Plaintiffs certify. *See* Fed. R. Civ. P. 11(b).

Mr. Willis adds to his claims that the new investigation led to largely inadmissible evidence because it violates a protection order in the SEC action. Specifically, he claims that Mr. Thibodeau's testimony relied on confidential documents that will not be admissible in this case. Doc. 127 at 11–12. But it is Mr. Thibodeau's testimony, not the underlying documents that Plaintiffs claim to rely upon. Likely some of this testimony is admissible and some is not, but that is not for us to decide at this

stage. Even *Lipsky* reminds us that "[u]sually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." 551 F.2d at 893. Mr. Thibodeau and the confidential witnesses do not raise the same inadmissibility problems as the other filings, and so I do not find good reason to strike the new complaints.

## II.    Motions to Dismiss

### A.    Applicable Law

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), "prohibit[s] making any material misstatement or omission in connection with the purchase or sale of any security." *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). To recover damages for a violation of Section 10(b), Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton*, 573 U.S. at 267.

The Private Securities Litigation Reform Act of 1995, Pub. L. No. 104–67, 109 Stat. 737, applies a heightened pleading standard to both the material misrepresentation and scienter elements. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). "In order to overcome a motion to dismiss, a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(1)). And "it is not enough for a plaintiff to allege generally that the defendant acted with scienter. . . a plaintiff

must, 'with respect to each act or omission alleged . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). But as with any other motion to dismiss, the Court takes all well pled factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

### B. Standing

Two of the Defendants argue the Lead Plaintiffs lack standing to challenge statements made after October 4, 2018. *See* Docs. 125 at 16 and 129 at 11.

In general, "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quotations omitted). Relief under Rule 10b-5 is limited to harm "in connection with the purchase or sale" of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 728 (1975). The Supreme Court held that relief is limited to actual purchasers or sellers, not just holders. *Id.*

Defendants' arguments, and the Plaintiffs' in response, are largely the same as to each motion. Defendants argue that Plaintiffs cannot challenge any statements made after their last stock purchase because those statements could not have affected the actual purchase or sale of the stock. Plaintiffs respond that several district courts have held that lead plaintiffs have standing to challenge all of the statements made in furtherance of the common scheme of fraud.

I agree with the Defendants and the two Circuit Courts who have reached this issue. Plaintiffs cannot show that post-purchase statements caused them actual economic injury "because the statements

could not have affected the price at which plaintiff actually purchased." *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992).

As Plaintiffs point out, Judge Wang recognized that "when multiple material misrepresentations form part of a common course of fraudulent conduct, courts have not strictly applied the 'post-purchase' rule identified in *Roots Partnership*." *Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW, 2018 WL 6307868, at *7 (D. Colo. Dec. 3, 2018) (citing *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13–14 (D. Mass. 2004)). But, as *Crowell* recognized, a lead plaintiff "who purchased his stock before *any* allegedly false or misleading statements were made" lacks standing. 343 F. Supp. 2d at 13. And it makes little sense that a plaintiff should suddenly gain standing to challenge *all* statements simply because he may have been affected by *some* statements.

I am persuaded by the Seventh and Third Circuits that "it is still necessary for the lead plaintiff to establish its own standing based on a purchase or sale of stock, and not merely the decision to retain stock." *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 325–26 (3d Cir. 2007). Here, the Lead Plaintiffs last purchased NewAge stock on October 4, 2018, Doc. 141 at 17 (citing Doc. 20-2), and so lack standing for statements made after that date.

This ruling is dispositive as to some of the Defendants. Plaintiffs allege that Mr. Cooper "made false and misleading statements in only one document, the 2020 Form 10-K." Doc. 139 at 14. The 2020 10-K was filed on March 18, 2021, Doc. 114 at ¶ 155.

Similarly, Ms. Syrett is only alleged to have made false statements "by certifying and signing two SEC filings." Doc. 140 at 17 (citing Doc. 114 at ¶¶ 153(e), 155). Those two statements were filed on March 16, 2020, Doc. 114 at ¶ 153(e), and March 18, 2021, *id.* at ¶ 155, respectively.

Mr. Fea, Mr. Brennan, Mr. Haas, Mr. Kapteyn, and Ms. Kuzdowicz are alleged only to have signed the April 1, 2019, March 16, 2020, and March 18, 2021, 10-Ks, *id.* at ¶¶ 153–155; Mr. Aure is alleged only to have signed the May 10, 2021, 10-Q, *id.* at ¶ 153; and Mr. Manion is alleged only to have signed the August and November 2021 10-Qs, *id.* at ¶¶ 160, 162. Mr. Gould is alleged to have made several oral statements and signed several filings, but none occurred before October 4, 2018. He made statements about NewAge's CBD products on January 16, 2019, *id.* at ¶ 140; about distribution in Walmart on May 9, 2019, *id.* at ¶ 147; and in several signed SEC forms between November 14, 2018, and March 18, 2021, *id.* at ¶¶ 153–155; *see also* Doc. 142 at 14 ("To be clear, Plaintiffs ***only*** allege that the D&Os are makers of statements in documents they signed or made orally and are not using 'improper group pleading.'" (double emphasis in original)).

Because the Plaintiffs cannot show that they were actually harmed by any of these statements, the claims against Mr. Cooper, Ms. Syrett, Mr. Fea, Mr. Brennan, Mr. Haas, Mr. Kapteyn, Ms. Kuzdowicz, Mr. Aure, Mr. Manion, and Mr. Gould are dismissed without prejudice.

### C. Internal Controls

Plaintiffs also assert that statements Mr. Ence and Mr. Willis signed about the company's internal controls in its May 15, 2018, and August 14, 2018, 10-Q filings were actionable. Doc. 114 at ¶¶ 151, 152. The filings both generally state that NewAge had effective internal controls and disclosure procedures. The May filing assures investors that the company had appropriate procedures in place and that they had not changed, *id.* at ¶ 151, and the August filing states that Mr. Willis and Mr. Ence had "evaluated the effectiveness of our disclosure controls and procedures" and "concluded that, as of the end of the period covered by this report, our disclosure controls and procedures are effective," *id.* at

¶ 152.

These statements are actionable only if Plaintiffs show that the Defendants knew they were false when they were made. *In re Level 3*, 667 F.3d at 1341. Plaintiffs argument is that they have proven to be false because Mr. Willis was not stopped from making the other challenged statements discussed below. Doc. 141 at 28–29.[2]

But Plaintiffs do not allege any reason to conclude these statements were known to be false when made. They do not point to any specific failures in financial reporting or disclosure and only assert that ineffectiveness was shown by later-realizing harm. This is insufficient "fraud by hindsight." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997). Where statements do not guarantee "controls will perform perfectly in every instance," but instead speak to reasonable assurance, courts require more than just "the inference that the internal controls *must* have been inadequate." *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018). Plaintiffs do not describe the systems they allege to be deficient, "let alone to identify why that system was inadequate." *Id.*

So although Plaintiffs contend otherwise, they attempt only the kind of "must-have-been-deficient" circular reasoning that courts frequently reject. *Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 315 (E.D.N.Y. 2023) (collecting cases). In *Arora*, the court explicitly rejects the reasoning that "certifications of 'effective' internal controls were false and misleading because they did not prevent or detect the GPS bundling scheme." *Id.* That is the exact reasoning the Plaintiffs deploy here, and

---

[2] Plaintiffs also allege later 10-Q and 10-K filings were deficient because they failed to adequately monitor the Ariix merger, but Plaintiffs lack standing to challenge these filings as previously explained.

I am not persuaded.

Because this is the only remaining statement by Mr. Ence or any of the other Directors and Officers, their motion to dismiss is granted.

### D. The Remaining Allegations Against Mr. Willis

The remaining statements fall into four categories: statements about distribution to (1) the U.S. military, (2) Canada, and (3) South Korea[3] and (4) statements about NewAge's CBD beverages.

On January 18, 2018, Mr. Willis announced in a press release that NewAge was "expanding distribution of its portfolio of healthy beverages into all of the Military Commissaries worldwide." Doc. 114 at ¶ 115. He further claimed that "[t]he new distribution agreement is expected to have a material impact on the financial results of New Age." *Id.* The statement further describes NewAge's expanded distribution of its "entire portfolio," and innovative displays "in each commissary." *Id.* In a June 6, 2018, interview, Mr. Willis further touted new channel expansion into the "military worldwide in a very significant way." *Id.* at ¶ 118. On an earnings call, he emphasized that they had placed 21 core Stock Keeping Units (products with unique barcode) into the military channel, which they "believe is as big as Walmart in total sales." *Id.* at ¶ 119.

Plaintiffs believe that these statements were false because NewAge never entered into a distribution agreement or even a partnership with the military, never had plans to sell in commissaries worldwide, and lacked the inventory to do so.

---

[3] The Second Amended Complaint also contains allegations about a distribution agreement with Walmart, Doc. 114 at ¶¶ 146–150, but the first allegedly misleading statement about Walmart was made on April 8, 2019, *id.* at ¶ 146. So Plaintiffs lack standing. *See supra* Section II.B.

On February 1, 2018, Mr. Willis issued another press release, this time announcing expanded distribution through the largest grocery retailers in Canada, Sobeys and Loblaws. The statement claimed that the company had "expanded distribution throughout Loblaws and Sobeys" and "is now expanding to all banners within Loblaws and expanding throughout both Sobeys and Safeway." *Id.* at ¶ 122.[4] Similarly, on February 13, 2018, Willis claimed the Búcha Live Kombuca product had expanded into "all major retailers throughout Canada." *Id.* at ¶ 123.

Plaintiffs claim these statements were false or misleading because the products did not reach all banners within Loblaws and throughout Sobeys, Sobeys never sold certain NewAge beverages, and Búcha Live did not expand to all major retailers in Canada.

A February 13, 2018, press release announced a deal with the largest food and beverage distributor in South Korea, and that Búcha Live would "expand to all major retail outlets throughout the country immediately." *Id.* at ¶ 126. The press release named several stores in which NewAge products would be sold.

Plaintiffs allege that these statements were false and misleading because the South Korean distributor had only acquired the right to distribute NewAge products. And neither the distributor nor any of the named stores had made any commitments to purchase product. No orders were placed until November 2018. *Id.* at ¶ 128.

Plaintiffs take issue with several statements defendants made about a newly developed CBD beverage. But, as discussed above, Plaintiffs have standing only to challenge statements made before October 4, 2018. *See supra* Section II.B. The only statement Plaintiffs have

---

[4] Banners are the regional brands that large supermarket chains operate. A Colorado example is King Soopers, a regional banner of Kroger.

standing to challenge is NewAge's September 19, 2018 press release. The release announced that NewAge intended to debut a line of CBD infused beverages at the North American Convenience Store show. Doc. 114 at ¶ 130. It further states that it had been testing produces and had "developed a portfolio" of CBD beverages. *Id.*

These statements are allegedly false because NewAge had only taken preliminary steps toward development and had no finished product.

### 1. Falsity

Section 10(b) makes actionable "a material misrepresentation or omission." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).

First, Plaintiffs allege Mr. Willis's statements about a "distribution agreement" to expand NewAge beverages into "all of the military commissaries worldwide," Doc. 114 at ¶ 115, were false because the agreement did not exist and NewAge did not have enough inventory to fulfill such an agreement, *id.* at ¶ 120. They point to the fact that they could not locate any agreement with NewAge through a FOIA search with the Defense Commissary Agency, *id.* at ¶ 65; statements from CW-2 that allege that nothing in his job reflected the reality of such a large agreement, *id.* at ¶ 206; and that the agreement has not been produced in this lawsuit, the SEC litigation, or the bankruptcy proceedings, *id.* at ¶ 62.

Mr. Willis argues only that Plaintiffs' claim is speculative because it assumes that the agreement is written and confuses authorization with purchase orders. Such an unwritten authorization would not produce a written agreement and would not affect CW-2's work in shipping and storing products.

But if the agreement, as Mr. Willis describes, is merely an unwritten authorization that did not affect inventory at all, then the press release materially overstates the significance of the agreement. The statement

itself announces "[t]he new distribution agreement," not a mere author-ization. Doc. 126-4 at 2. It announces twenty-one NewAge products "*shipping out now* and throughout the 1st quarter to *all* commissary lo-cations worldwide" and even describes "disruptive displays and other in-store activities and offers to connect with the consumers at the point of purchase." *Id.* (emphasis added). If the actual agreement was a mere authorization that included no immediate orders, a reasonable jury could find that Mr. Willis materially misrepresented the nature and sig-nificance of the military agreement.

While the heightened pleading standard applies, at this stage the Court still "accept[s] as true all well-pleaded facts" and "[d]raw[s] all reasonable inferences in favor of plaintiff." *In re Level 3*, 667 F.3d at 1333, 1343. Plaintiffs have pleaded sufficient facts to infer that the mil-itary agreement either did not exist or at least was materially less sig-nificant than Mr. Willis claimed.

Next, Mr. Willis's press release claimed that two NewAge beverages, Coco-Libre and Búcha Live, would be sold "throughout Loblaws and So-beys," that the Búcha Live product had expanded into "all major retail-ers throughout Canada." Doc. 114 at ¶ 123. In Plaintiffs' telling, these statements were false because the products were not expanding to all banners and Búcha Live did not expand to all major retailers in Canada. *Id.* at ¶ 114.

Plaintiffs point to Mr. Thibideau's testimony that he suggested to Mr. Wills that they change "expanding to all banners" to "we anticipate ex-pansion to all banners with natural sections in Q1 2018" because the brand was not currently expanding. Doc. 114-4 at 9–10. He suggested these changes becasue the difference between all banners and all ban-ners *with natural sections* is "a big distinction," and comprises only "a handful of stores." He noted that "all banners don't have a natural

section." *Id.* at 10–11. Mr. Willis rejected Mr. Thibideau's proposed changes. *Id.* Mr. Willis argues only that all banners does not mean all stores, and that Mr. Thibideau said that the press release was ok even without the change. But regardless, Plaintiffs have sufficiently pleaded, based on the testimony of Mr. Thibideau, that "'all banners' is not accurate." *Id.* at 11.

Similarly, Plaintiffs argue Mr. Willis overstated NewAge's progress in South Korea. The February 2018 press release stated that distribution would begin "effective immediately" and after initially expanding to the top five department stores, would expand into other hypermarkets "in the second quarter." Doc. 126-6 at 22–23. Because of South Korean regulatory delays, no orders were placed until November 2018. Doc. 114 at ¶ 128. Mr. Willis does not dispute this delay but states that they fully expected to meet this schedule. Doc. 148 at 15. Plaintiffs cite only to Mr. Thibideau's testimony that Mr. Willis knew of the regulatory barrier, but his testimony also states that he told Mr. Willis he expected to clear regulatory issues by March 1. Doc. 114-4 at 48. Given this context, there is no evidence that the statement was materially false when Mr. Willis made it.

Finally, Plaintiffs fail to show falsity for the one remaining CBD product statement. Plaintiffs argue the CBD statements were false because NewAge did not have a "developed" product to "debut." Doc. 114 at 131. But the Plaintiff acknowledges that NewAge did "debut" CBD-infused beverages in Las Vegas, even if they were "lab samples." *Id.* at ¶ 133. Any difference between a "developed" product and the "lab samples" that NewAge debuted, it is insufficient to render the statement materially false.

### 2. Scienter

For the military and Canadian statements, the question remains whether Mr. Willis had "a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *In re Level 3*, 667 F.3d at 1343. In this context, recklessness is a high bar—"conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (quoting *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001)). A complaint will be dismissed unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 1202.

Plaintiffs' scienter theory for the military statements is straightforward: "the agreement did not exist, and therefore Willis necessarily lied about it." Doc. 114 at ¶ 205. They also point out that Mr. Willis would have known that the company could not have begun "immediately" fulfilling orders "worldwide" to a market "as big as Walmart," *id.* at ¶¶ 115, 119, because he knew that some of NewAge's products were out of stock beginning January 12, 2018, *see* Doc. 114-17 at 3.

Taking as true Plaintiffs allegations that Mr. Willis either invented the military agreement or significantly exaggerated it, they are more than sufficient to suggest intentional deception. *See Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 665 (8th Cir. 2001) ("One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate."). If the agreement did not exist, or was significantly exaggerated, that fact is "so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure

- 16 -

would likely mislead investors." *Weinstein v. McClendon*, 757 F.3d 1110, 1113 (10th Cir. 2014) (quoting *City of Phila.*, 264 F.3d at 1261). Although Mr. Willis argues that he thought the inventory issues were not as severe as they later turned out to be, he does not offer a plausible opposing inference as to the existence or significance of the agreement.

Plaintiffs further argue that Mr. Willis knew that his statement about Loblaws and Sobeys was inaccurate because Mr. Thibideau had told him so. They point to Mr. Thibideau's suggested edits to the press release, Doc. 114 at ¶ 177, and an email from Mr. Willis to Mr. Thibideau asking if the orders included "all lob laws [sic] banners" and "Sobeys too right?" despite Mr. Thibideau describing a "soft rollout" into "natural section," Doc 114-16 at 2.

Mr. Willis argues that his statement mirrors the information he was given internally, but that is contradicted by the evidence. Mr. Thibideau never told Mr. Willis that the products were rolling out to all banners. In the email Mr. Willis points to, Mr. Thibideau says NewAge is expanding into "all 400 natural value sets" in Loblaws and "into [the] Natural section" of Sobeys. Doc. 114-16 at 2. Mr. Willis asks if these are "all lob laws [sic] banners," but does not seem to receive a response. *Id.* Tellingly, Mr. Thibideau tries to correct the press release to avoid saying "all banners." Doc. 114-4 at 9–10.

Plaintiffs have adequately pleaded that Mr. Willis "had access to information suggesting [his] public statements were materially inaccurate." *Fla. State Bd. Of Admin.*, 270 F.3d at 664. And, as already noted, the difference between all banners and all banners *with natural sections* as "a big distinction," Doc. 114-4 at 10–11. A reasonable person could infer that Mr. Willis was reckless as to the truth of his statement—or that this inference is "at least as compelling as any opposing inference." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d at 1202.

### 3.   Loss Causation

Finally, Plaintiffs have sufficiently pleaded loss causation. Mr. Willis argues that the only disclosures with a nexus to this case are the SEC Complaint and Cease-and-Desist Order. And he argues that these disclosures do not qualify as corrective disclosures because they are "unproven allegations." Doc. 124 at 39 (citing *Sapssov v. Health Mgmt. Assocs. Inc.*, 608 F. App'x 855, 863 (11th Cir. 2015).

*Sapssov* cites *Meyer v. Greene* for the proposition that an SEC investigation is not a corrective disclosure because it reveals only the fact of the investigation, not the certainty of outcome. *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013). They introduce risk, which may affect stock price, but they do not prove a statement to be fraudulent. *Id.*

In contrast here, the Cease-and-Desist order came with a settlement offer that the SEC accepted. Doc. 114 at ¶ 299. This is not the same as the beginning of an investigation that reveals risk; it is the end of an investigation that includes revelations. Because this is Mr. Willis's only argument against loss causation, his motion to dismiss is denied.

### 4.   Section 20(a) Violation

Mr. Willis's only argument to dismiss Plaintiffs' Section 20(a) claim is that they fail to plead a primary Section 10(b) violation. Doc. 124 at 31. As explained above, I disagree.

### CONCLUSION

It is ORDERED that:

This Order references various documents that the parties have filed under restriction. The Clerk of Court is therefore **DIRECTED** to temporarily docket this Order at **Level 1 restriction**. To maintain that restriction, any affected party must file a motion to restrict pursuant to

Local Civil Rule 47.1 on or before **March 26, 2026**. Any such motion must attach as an exhibit a public redacted version of the Order that redacts any reference to the material sought to be restricted;

The Motions to Strike, **Docs. 127 and 130**, are **DENIED**;

The Motions to Dismiss at **Doc. 122, 129**, and **132** are **GRANTED**;

Claims against defendants Fred Cooper, Alicia Syrett, Chuck Ence, Tim Haas, Reginald Kapteyn, Amy Kuzdowicz, Gregory Gould, Kevin Manion, Carl Aure, Ed Brennan, and Greg Fea are **DISMISSED without prejudice**;

Defendant Brent Willis's Motion to Dismiss, **Doc. 125**, is **DENIED except to the extent described above**.

DATED: March 11, 2026            BY THE COURT:

_____
Daniel D. Domenico
Chief United States District Judge

- 19 -